UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| IN RE: PE CORPORATION SECURITIES LITIGATION | : : : : : : : | Master File No. 3:00CV705(CFD)<br><br>MAY 13, 2004 |

**LEAD PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT
OF THEIR MOTION FOR CLASS CERTIFICATION**

**PRELIMINARY STATEMENT**

Defendants'[1] opposition to Lead Plaintiffs'[2] motion for class certification is built around an attempt to confuse two important issues. Although Lead Plaintiffs have the burden to demonstrate that class certification is appropriate (which has been amply done), it is Defendants' burden at trial to establish any affirmative defense (such as that plaintiffs had knowledge of the material information that was omitted from Celera Genomics Group's ("Celera") prospectus). Because *Defendants* cannot prove that defense and because the motion for class certification is unquestionably the improper place to assert it, Defendants then leap to the conclusion that *Lead Plaintiffs* have not met their burden on this motion. That argument is simply wrong. Every element of class certification has been met and *Defendants'* inability to demonstrate *their* affirmative defense does not change that fact.

Moreover, contrary to Defendants' contention, the dissemination of general information concerning the potential collaboration between Celera and the Human Genome Project ("HGP") to map the human genome, which did not disclose the disastrous December 29, 1999 meeting at Dulles International Airport, did not excuse Defendants from complying with federal securities laws.

---

[1] PE Corporation (n/k/a Applera Corporation), Tony L. White, Dennis L. Winger and Vikrom Jog will be referred to collectively as "Defendants."

[2] David Berlin ("Berlin") and Vinh Vuong ("Vuong") will be referred to collectively as "Lead Plaintiffs."

Indeed, Section 11 of the Securities Act of 1933 (the "1933 Act") imposes liability on any party who engages in a registered offering if that party makes a material misstatement or omission of fact in connection therewith.

As set forth below, every argument Defendants make is the latest in a series of attempts to turn a relatively simple motion into a trial on the merits. Defendants will surely have the opportunity to have the merits of this case heard, but this is not the time or place.

In sum, because the arguments espoused by Defendants in their opposition papers and at the hearing do not refute that Lead Plaintiffs have met all of Rule 23's requirements to maintain this case as a class action, and because Section 11 cases like this one are routinely certified in this and other districts, Lead Plaintiffs' motion for class certification should be granted.

## ARGUMENT

**I. AT THE CLASS CERTIFICATION STAGE, COURTS MAY NOT INQUIRE INTO THE MERITS OF PLAINTIFFS' CLAIMS**

The law is clear that merits-based inquiries such as those being advocated by Defendants are improper at the class certification stage. As noted by the Supreme Court:

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). To the extent that Defendants' challenges to class certification are "intertwined with a disposition of the merits of the case, . . . the court should rely on well-pleaded facts alleged in the complaint . . . ." 3 Conte, Newberg, NEWBERG ON CLASS ACTIONS § 7.02 (4th ed. 2002). *See In re Boardwalk Marketplace Sec. Litig.*, 122 F.R.D. 4, 5 (D. Conn. 1988)(Eginton, D.J.)(relying on the complaint's allegations for purposes of ruling on a class certification motion). "Since Rule 23 is generally required to be liberally construed, these presumptions, arising at an early stage of the litigation, are invoked for the most part in favor of upholding the class." *Id.* § 7.17.

2

Here, the Complaint pleads that Defendants did not disclose in their offering materials, among other things, the failed talks of December 29, 1999. The Complaint pleads that this information was material and therefore was required to be disclosed by the federal securities laws. Importantly, because this is a securities case in which each class member was uniformly affected by Defendants' conduct via a single, uniform offering document, common issues concerning Defendants' conduct toward individual class members will predominate over any individual issues that Defendants now improperly try to inject into the class certification determination. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

Analyzing the predominance requirement in a Section 11 case, the court in *In re Turkcell Iletisim Hizmetle r, A.S. Securities Litigation*, 209 F.R.D. 353, 360 (S.D.N.Y. 2002), noted:

> In this case, the claims all arise out of a common nucleus of operative fact, namely whether defendants violated the securities laws in the issuance of the registration statement. Any individual questions of law or fact are clearly subordinate . . . .

In addition, even assuming that some curative information was released relating to the alleged omission, "that would not eliminate the alleged misrepresentations that [were] disseminated." 7 NEWBERG ON CLASS ACTIONS, *supra*, § 22:23. Indeed, "the true issue here involved is whether false statements or misleading omissions were made by the defendants in contravention of federal securities laws." *Id*. "In this Circuit there is no serious question that sections 11 and 12(2) impose strict liability for [the type of] materially false statements or omissions," alleged to have been made by Defendants here. *Degulis v. LXR Biotech., Inc.*, 95 Civ. 4204 (RWS), 1997 U.S. Dist. LEXIS 381, at *9 (S.D.N.Y. Jan. 16, 1997).

Even if this Court were permitted to make a factual determination at this stage of the proceedings concerning the "curative" information offered by Defendants, the Court's inquiry is made more problematic by the fact that ***none*** of the offered information addresses the core omission in this case: the failed negotiations at the disastrous meeting on December 29, 1999. Indeed, when

3

asked by the Court to elucidate how the news articles cited in Defendants' brief, and those quoted at the hearing, were relevant to the Complaint's allegations concerning the failed negotiations, Defendants could not provide a meaningful answer to the Court's question.

Nevertheless, in their opposition briefs, Defendants argued that generic information concerning Celera's relationship with the HGP, which was intermittently released at various times during the months *prior* to the Secondary Offering, informed "an overwhelming number" of class members concerning the false and misleading statements contained in the Prospectus. Deft. Opp. Mem. at 15.[3] Accordingly, Defendants argued that a class could not be certified because individual issues concerning whether each class member knew about the alleged "curative information" (which Defendants believe forms the basis of an affirmative defense to Lead Plaintiffs' Section 11 claim) would predominate over any issues common to the Class.

Tellingly, in making this argument, Defendants did not cite a single case in which a Section 11 class was not certified because information released *prior* to the Offering cured a defective prospectus. Instead, in support of their argument that an affirmative defense exists against Lead Plaintiffs' Section 11 claim, Defendants rely on *Klein v. A.G. Becker Paribas, Inc.*, 109 F.R.D. 646 (S.D.N.Y. 1986). Defendants cite this case to support the unremarkable argument that a person may not bring a Section 11 case if they had knowledge of an alleged deficiency in the offering materials. In *Klein*, the court properly limited the class period to the time between the date of the defendant company's defective offering through, and including, the date on which the defendant company's *post-offering* press release cured the information omitted from the defective prospectus, i.e., when the truth concerning the misleading prospectus was revealed. *Id*. at 652-53. Thus, *Klein* has nothing to do with Defendants' clever argument. Indeed, it is often true that, at some point *after* the offering, information revealing that a prospectus was false or misleading will come to light as

---

[3] "Deft. Opp. Mem." refers to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification dated December 29, 2003.

occurred in *Klein*. This is usually how plaintiffs are alerted that they have a potential claim. However, *Klein* does not allow Defendants to omit material information from a prospectus and then argue that such omission was permissible because articles in local newspapers or on the internet discussing a topic generally were published prior to the offering. Thus, contrary to Defendants' contentions, *Klein* cannot be interpreted to permit a finding (i) that the type of information Defendants present here could constitute an affirmative defense against a Section 11 claim and (ii) that individual issues would predominate if absent class members had been exposed to the purported "curative" information Defendants offer here.

In sum, because the Court may not properly make factual determinations and merits-based inquiries concerning the claims alleged in the Complaint at the class certification stage, the Court may not consider Defendants' meritless affirmative defense that an "overwhelming number of class members" were aware of the very information that Lead Plaintiffs' alleged was omitted from Defendants' offering materials.

## II.     RULE 23(B)(3)'S PREDOMINANCE REQUIREMENT IS AMPLY MET

As noted above, Defendants argued in their opposition papers that Rule 23(b)(3)'s predominance requirement could not be established because "an overwhelming number of proposed class members had knowledge of the alleged omission." *See* Deft. Opp. Mem. at 15. Subsequently, faced with the fact that courts routinely certify classes where the false statements and material omissions are embodied in a single, uniform document, Defendants conveniently asserted at the hearing that due process requires that class certification should be denied because they never will have the opportunity to question *every* potential class member concerning whether he or she had

knowledge of the alleged omission.[4]

Not surprisingly, Defendants cite no case, and Lead Plaintiffs are not aware of any, in which a court refused to certify a class in Section 11 securities case involving defective offering materials because a defendant claimed a due process right to question every potential class member. In fact,

> "courts have uniformly found it appropriate to certify a securities class on the common liability issues and to defer consideration of individual reliance by class members on standardized misrepresentations until after disposing of the common class questions. The fact that the representative plaintiff and the class members may have relied on different documents does not prevent a finding of predominance of common questions when the alleged misrepresentations are similar or present a nucleus of facts common to the class."

7 NEWBERG ON CLASS ACTIONS, *surpa*, § 22:56.

In *In re IGI Securities Litigation*, 122 F.R.D. 451 (D.N.J. 1988), the court rejected predominance arguments very similar to those made here. There the defendants argued that other information available to the investing public would have corrected any misimpressions left by the defendants' allegedly false and misleading press releases. *Id*. at 460. The court found that "***individual issues such as the actual extent of reliance [on defendants' statements] arise in most, if not all, class actions. But where, as in this case, all class members are united in their desire to establish the defendants' complicity and liability, the individual issues are secondary and the class should be certified***." *Id*. at 460 (emphasis added). *See also Boardwalk*, 122 F.R.D. at 6 (finding that variations in prospectuses issued to different class members did not create individual issues of reliance when plaintiffs had alleged that all prospectuses failed to disclose material

---

[4] As noted above, at the May 6, 2004 hearing, Defendants changed their predominance argument. In their briefs, they asserted that this case could not be certified because the individual issue of whether class members knew that the prospectus was false and misleading would predominate. At the hearing, Defendants admitted that they would not be able to question every class member about such purported knowledge and therefore they would be denied due process. Ironically, Defendants' new argument invalidates their original argument. That is, it is impossible for Defendants to assert that individual issues will predominate at trial when they have admitted that they ***could never test*** this allegation because they are unable to examine all class members. Thus, because Defendants' argument that individual issues will predominate is (by Defendants' own admission) clearly unsupported, it should be rejected.

financial data and information); *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 142 (D.N.J. 1984)("To be sure, individual issues arise in all cases requiring a class action, especially one involving . . . a unitary scheme or course of conduct as a common question.  But, to allow various secondary issues of the plaintiff's claim to destroy the institution of a class action would render the rule an impotent tool for private enforcement of the federal securities laws.").

Undeniably, the argument that Defendants make here, if accepted by the Court, would make it impossible for *any* securities class actions to be certified.  That is because defendants would always argue that due process allows them to test whether defendants can assert *any defense* against any class member.  Because a class in a securities case could very well be comprised of hundreds, if not thousands, of members, a defendant's inability to depose each member would result in denial of plaintiff's class certification motion every time.

Indeed, Defendants' argument is very similar to an argument that could be made against certifying classes asserting claims under Section 10(b) of the Securities Exchange Act of 1934 that rely on the fraud-on-the-market doctrine, which was adopted by the Supreme Court in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).  For example, in such cases, plaintiffs are allowed to presume reliance in light of the fraud-on-the-market doctrine.  The fraud-on-the-market doctrine creates a rebuttable presumption that (1) misrepresentations by an issuer affect the price of securities traded in the open market, and (2) investors rely on the market price of securities as an accurate measure of their intrinsic value.  *Id.* at 245-47.  Thus, in those types of cases, defendants would argue, as Defendants do here, that in order to exercise their right to rebut the fraud-on-the-market presumption, *they must be permitted to question every class member concerning whether they relied on the market price of securities as an accurate measurement of the securities' intrinsic value*.  Consequently, because it would be impossible to depose what could amount to thousands of class members, defendants would argue that securities cases alleging fraud-on-the-market reliance cannot be maintained as a class action.  Undoubtedly, this outcome would not be tolerated by the

7

Court in *Basic*, nor by the drafters of Rule 23. This is especially true since the class action mechanism has been uniformly recognized as an effective method by which to seek redress for violations of securities laws. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999); *Data Access*, 103 F.R.D. at 142; *In Re Harnischfeger Indus., Inc.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002); *In re Alco Int'l Group Sec. Litig.*, 158 F.R.D. 152, 155 (S.D. Cal. 1994).

Importantly, Defendants have had an opportunity to obtain documentary discovery, and deposition testimony, from Lead Plaintiffs. To their disappointment, Defendants were unable to establish their unsupported theory that "an overwhelming number of proposed class members had knowledge of the alleged omission." Deft. Opp. Mem. at 15. For purposes of the Court's inquiry into whether this case may be properly maintained as a class action, Defendants' examination concerning whether individual issues of reliance will predominate at trial has been exhausted. Because based on the record before this Court there exist no individual issues that will predominate, class certification may properly issue in this case.

In sum, because Defendants' predominance (and due process) arguments (i) are unsupported by case law, (ii) invite an impermissible inquiry into the merits of Lead Plaintiffs' claims and (iii) would prevent the certification of any class action under the securities laws, they should be wholly rejected. Lead Plaintiffs have amply established that issues concerning the false and misleading offering materials predominate and, therefore, this case may be certified under Rule 23(b)(3).

### III. LEAD PLAINTIFFS' SHARES ARE TRACEABLE TO THE OFFERING

Defendants conceded at the hearing that plaintiff David Berlin bought in the Secondary Offering. Accordingly, all other adequacy requirements having been met, Berlin may be properly certified as a class representative.

With regard to Vuong, Defendants continue to argue that his shares may not be traced to the Secondary Offering. In particular, Defendants argued that because Vuong's purchase price of

Celera stock did not coincide with the stock's offering price of $225 per share, his shares cannot be traced to the Secondary Offering. Defendants' argument is without merit. First, Defendants did not dispute at the hearing the fact that it is possible for someone's shares to be traced to an offering. Indeed, *DeMaria v. Andersen*, 318 F.3d 170 (2d Cir. 2003), held that tracing is proper in this Circuit. Second, Defendants' argument that Vuong could not have purchased in the Secondary Offering because he paid more for his shares than the offering price is simply unfounded. While paying the offering price for a share may serve as proof that a person bought *in* the offering, a person who purchased stock at a price that deviates from the offering price can still trace their shares to the offering. *Id.* at 177; *Lee v. Ernst & Young, LLP*, 294 F.3d 969, 977 (8th Cir. 2002). Indeed, as noted in Lead Plaintiffs' class certification papers, "an expert can nevertheless, through the examination of stock transfer records and use of recognized statistical methodology, render an opinion to a reasonable degree of statistical certainty that [Vuong's] shares are traceable to [the Secondary Offering]." Plaintiffs' Reply at 21.[5]

In addition, a large part of the Class, as pointed out by Defendants at the hearing, is made up of institutional investors. They will undoubtedly possess the type of records that will evidence that they purchased shares traceable to the Secondary Offering. *See* Exhibit D to filing entitled Defendants' Oral Argument on Plaintiffs' Motion for Class Certification dated May 6, 2004.[6]

## IV.    DEFENDANTS' RENEWED SECTION 12 TYPICALITY ARGUMENT GOES TO THE MERITS OF THE CASE AND THUS IS IMPROPER AT THIS STAGE

Defendants' second typicality argument is rooted in a rehash of the Section 12 standing argument they made at the motion to dismiss stage. This argument was already decided by the

---

[5] "Plaintiffs' Reply" refers to Plaintiffs' Reply Memorandum in Further Support of Their Motion for Class Certification dated February 17, 2004.

[6] It seems that defendants are somehow arguing that Lead Plaintiffs are not adequate class representation because they are not institutions. That argument is simply wrong and has no place in this motion. Berlin and Vuong clearly understood their duties as class representatives, are represented by experienced counsel and lost substantial sums of money. Nothing more is required. *Baffa v. Donaldson*, 222 F.3d 52 (2d Cir. 2000).

Court in Lead Plaintiffs' favor and, thus, should not be entertained again. Therefore, Defendants' renewed Section 12 typicality argument can only be characterized as an attempt to have the Court conduct a merits-based inquiry into the issue of when an issuer may be held liable for its role in preparing offering materials that were used to sell its stock pursuant to a firm commitment underwriting. Apart from the fact that the issues have already been decided in Lead Plaintiffs' favor, such inquiries are not proper at the class certification stage.

## CONCLUSION

For the reasons set forth above, and the reasons set forth in Lead Plaintiffs' motion papers and at oral argument, Lead Plaintiffs respectfully request that this case be certified as a class action under Fed. R. Civ. P. 23(a) and (b)(3), and that Lead Plaintiffs be certified as the representatives of the Class.

Respectfully submitted,

By:_____
David A. Slossberg (CT13116)
Brian C. Fournier (CT16272)
**HURWITZ, SAGARIN & SLOSSBERG, LLC**
147 N. Broad Street, P.O. Box 112
Milford, Connecticut 06460
(203) 877 - 8000

**Liaison Counsel for Lead Plaintiffs**

Sanford P. Dumain (CT08138)
Carlos F. Ramirez (CT25340)
**MILBERG WEISS BERSHAD
  & SCHULMAN LLP**
One Pennsylvania Plaza
49th Floor
New York, New York 10119
(212) 594-5300

**Lead Counsel for Lead Plaintiffs**

## Certificate of Service

      This is to certify that a copy of the foregoing was mailed, first class mail on May 13, 2004 to:

Stanley A. Twardy, Jr., Esq.  
Thomas D. Goldberg, Esq.  
Terence J. Gallagher, Esq.  
Day, Berry & Howard, LLP  
One Canterbury Green  
Stamford, CT  06901

Michael J. Chepiga, Esq.  
William M. Regan, Esq.  
Simpson Thacher & Bartlett LLP  
425 Lexington Avenue  
New York, NY  10017-3954

                                                                                            _____  
                                                                                            Brian C. Fournier