**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | : | |
| IN RE PE CORPORATION SECURITIES | : | Master File No. 3:00CV705(CFD) |
| LITIGATION | : | |
| | : | **October 12, 2004** |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL THE TESTIMONY OF DR. FRANCIS COLLINS

Plaintiffs David Berlin and Vinh Vuong, by and through their counsel, submit this motion to compel the testimony of non-party witness, Dr. Francis Collins, and to extend the discovery cut-off solely for the purpose of allowing plaintiffs to conduct this deposition.

## PRELIMINARY STATEMENT

In 1999, Celera Genomics Group ("Celera")[1] was engaged in sequencing the human genome and intended to use the sequence data to perform other genomic research and gene therapy discovery. At that time, the public Human Genome Project (the "HGP")[2] was engaged in a similar sequencing effort (albeit employing a different technique). During the fall and winter of 1999, representatives of Celera and the HGP explored the possibility of collaborating to complete the sequencing of human genome. The key event in these negotiations (and in this case)[3] is a meeting that took place on December 29, 1999, at Dulles International Airport, among

---

[1] Celera Genomics Group is a subsidiary of PE Corporation n/k/a Applera Corporation, the corporation defendant in this case.

[2] The HGP is a worldwide coordinated effort to sequence the human genome sponsored by governments and non-profit organizations in the United States, England, Japan and France, among other nations.

[3] Plaintiffs allege that at the meeting, the HGP indicated that it was unwilling to collaborate with Celera in light of Celera's demand that it be granted exclusive rights over the merged genome sequencing data for an extended period of time. Plaintiffs have further alleged that defendants were required to disclose the failed negotiations between it and the HGP, and the government's position concerning dissemination of the groups' merged genomic sequencing data, in its public

senior members of Celera's management and four representatives of the HGP, who were led by Dr. Francis Collins.

This motion seeks to compel the deposition testimony of Dr. Collins, the lead negotiator for the HGP in these discussions, who was (and is today) the Director of the National Human Genome Research Institute ("HGRI"), which was established in 1989 to carry out the role of the National Institutes of Health (the "NIH") in the HGP.

The factual record developed during discovery, including the testimony of two HGP participants in the December 29, 1999 meeting and documents produced by Dr. Collins, unquestionably confirms that Dr. Collins is the most knowledgeable HGP witness concerning the negotiations between Celera and the HGP, which are at the heart of this matter. Nevertheless, the Department of Health and Human Services ("the DHHS") which oversees the NIH, pursuant to its power to control when its employees provide testimony in civil matters to which the U.S. is not a party (under its *Touhy* regulations), has denied plaintiffs the opportunity to depose Dr. Collins. While plaintiffs are mindful of the government's concern for minimizing the amount of time that its employees spend on non-official matters, the law is clear that government agencies may not use *Touhy* regulations to prevent parties from obtaining discoverable evidence. Here, the government has clearly overstepped its authority.

As demonstrated below, Dr. Collins possesses discoverable evidence that is highly relevant to plaintiffs' case. Thus, this Court should issue an Order compelling his testimony.

## RELEVANT PROCEDURAL HISTORY

On July 2, 2004, plaintiffs served Dr. Francis Collins with a Rule 45 subpoena to take his deposition.

offering materials, filed in connection with a follow-on offering, as required by applicable federal securities laws.

On July 9, 2004, plaintiffs received a letter from Paul J. Robertson, an attorney with the NIH, stating that because Dr. Collins was a DHHS employee, he could only comply with plaintiffs' subpoena if he was permitted to do so by the Director of the NIH.  *See* Exhibit A to the Affidavit of Brian C. Fournier (the "Fournier Affidavit").[4]  The letter also informed plaintiffs of the procedure by which they could make a request to the NIH Director to take Dr. Collins' deposition.  *Id.*

On July 15, 2004, plaintiffs requested permission from Dr. Elias Zerhouni, Director of the NIH, to take the deposition of Dr. Collins.  *See* Exhibit B to the Fournier Affidavit.  In accordance with the procedure outlined in 45 CFR § 2.4(a), plaintiffs described the nature of the testimony sought, why it was unavailable by any other means and why it was in the government's interest to allow Dr. Collins to testify.  *Id.*

On August 6, 2004, plaintiffs received a letter from Dr. Raynard S. Kington, of the DHHS, denying plaintiffs' request to depose Dr. Collins.  *See* Exhibit C to the Fournier Affidavit. Dr. Kington based his decision on plaintiffs' alleged failure "to demonstrate how Dr. Collins' testimony will promote the objectives of the Department of Health and Human Services."  Ex. C at 1.  In addition, Dr. Kington stated that because testimony concerning the negotiations could be obtained from the other individuals that participated in them, plaintiffs had not established that the testimony sought from Dr. Collins could not be obtained by any other means.  *Id*.

By letter dated August 20, 2004, plaintiffs requested that the DHHS reconsider its denial of plaintiffs' request to depose Dr. Collins because the testimony sought from Dr. Collins could not be obtained from any other source.  *See* Exhibit D to the Fournier Affidavit.  The reconsideration request was supported by the deposition testimony of Dr. Robert Waterston,

---

[4]  All exhibits referred to herein are attached to the accompanying affidavit of Brian C. Fournier.

another HGP participant in the negotiations with Celera, who had testified that Dr. Collins was the most knowledgeable person on the HGP side of the talks. *Id.*

On September 27, 2004, after receiving a telephone call from Mr. Robertson, wherein he indicated that the DHHS was going to reject plaintiffs' request because it did not want Dr. Collins to spend his time on non-official business, plaintiffs' counsel sent a letter to Mr. Robertson offering to limit the scope of Dr. Collin's deposition to two issues and the duration of the deposition to three hours, if the DHHS permitted Dr. Collins to testify. *See* Exhibit E to the Fournier Affidavit.

On September 27, 2004, plaintiffs received a letter from the DHHS denying plaintiffs' request for reconsideration. *See* Exhibit F to the Fournier Affidavit. In addition to restating several of the reasons cited in its first denial, the DHHS noted that plaintiffs had not provided an adequate reason as to why Dr. Collins' memory would be "any better" than that of the individuals who had already been deposed. *Id.* at 1. In addition, the letter charged, without any foundation, that plaintiffs did not really need to obtain the testimony of Dr. Collins, but that plaintiffs merely wanted to take the depositions of everyone involved in the negotiations. *Id.*

The current discovery cut-off is October 20, 2004. Thus, in connection with the motion to compel Dr. Collins' testimony, plaintiffs also request that the Court extend the discovery cut-off for the sole purpose of allowing them to conduct this deposition.

## ARGUMENT

**I.    THE DHHS'S *TOUHY* REGULATIONS MAY NOT BE USED TO CIRCUMVENT THE FEDERAL OF RULES OF CIVIL PROCEDURE**

### A.    This Court Has The Authority To Compel Dr. Collins' Deposition

Rule 37 of the Federal Rules of Civil Procedure empowers this Court to enforce the federal rules concerning discovery. *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995)

("Rule 34, as enforced through Rule 37, clearly authorizes the district court to order Bankers

Trust to turn over those documents in its possession while the Board's regulations specifically

prohibit such a disclosure."); *United States v. Reynolds*, 345 U.S. 1, 8 (1953) (holding that the

judicial branch controls evidence in a case and giving that power to the executive branch would

violate the separation of powers doctrine).  Accordingly, the Court may compel the deposition

testimony of Dr. Collins.

> **B.      Because Plaintiffs Have Fulfilled Their Obligation Under The DHHS's *Touhy* Regulations, Dr. Collins Should Be Allowed To Testify**

The DHHS, like many other federal agencies, has enacted what are commonly referred to

as *Touhy* regulations.[5]  *Touhy* regulations generally provide that a current or former employee

may not provide discovery in a legal proceeding, to which the U.S. is not a party, unless that

person has permission from the head of the agency.  However, it is well-settled that these

regulations cannot be used to prevent private litigants from obtaining otherwise discoverable

---

[5] The regulations earned their name from the Supreme Court case which validated the government's power to create "housekeeping rules" that allowed them to prevent their employees from providing evidence in private actions.  *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951).  In *Touhy*, a state prisoner who had instituted a federal habeas corpus proceeding caused a subpoena *duces tecum* to be served on an Agent of the Federal Bureau of Investigation (the "FBI").  Touhy sought to have produced certain records that he claimed would serve as evidence that his conviction was brought about by fraud. Relying on a regulation adopted by the Department of Justice pursuant to a predecessor Housekeeping Statute, the agent declined to produce the records. The regulation required subordinates in the Department served with a subpoena *duces tecum* to disobey the subpoena in accordance with the instructions of the Attorney General. For his disobedience, the FBI agent was found guilty of contempt in the district court.  *Id*. at 463-66. The order of contempt was reversed by the Court of Appeals.  In affirming the Court of Appeals, the Supreme Court concluded that the Attorney General's regulation was an appropriate one, reasoning that: "When one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged is obvious."  *Id.* at 468.

evidence.  For example, the Sixth Circuit has held that *Touhy* regulations that preclude discovery of information cannot be enforced:

> We likewise conclude that Congress did not empower the Federal Reserve to prescribe regulations that direct a party to deliberately disobey a court order, subpoena, or other judicial mechanism requiring the production of information.  We therefore hold that the language in 12 C.F.R. § 261.14 that requires a party that is served with a subpoena, order, or other judicial process to continually decline to disclose information or testimony exceeds the congressional delegation of authority and cannot be recognized by this court.  Such a regulation is plainly inconsistent with Rule 34 and cannot be enforced. To allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found here.

*Bankers Trust*, 61 F.3d at 470 (footnote omitted).  *See also Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 793 (1971) (noting that *Touhy* regulations are "housekeeping" regulations that do not confer any privilege upon the government and do not allow the government to withhold evidence from the public); *Freeman v. Seligson*, 405 F.2d 1326, 1348 (D.C. Cir. 1968) (noting that in light of "limited disclosure in judicial proceedings, carefully curtailed by judicious use of protective orders authorized by Rule 30," *Touhy* regulation did not act to bar government agency from complying with subpoena) (Leventhal, C.J., concurring); *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994) (noting that text of *Touhy* regulation does not empower a federal agency to withhold documents or testimony from federal courts); *Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537*, 334 F.2d 381, 383 (10th Cir. 1964) (holding that federal agencies are bound by discovery rules in the same manner as any other litigant); *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 111 (D. Colo. 1992) (holding that the Federal Rules of Civil Procedure cannot be abrogated by agency regulations); *Merchants Nat'l Bank & Trust Co. v. United States*, 41 F.R.D. 266, 268 (D.N.D. 1966) ("While the statute gives the Secretary the right to restrict disclosure, 'Judicial

control over the evidence in a case cannot be abdicated to the caprice of executive officers.'"

(quoting *Reynolds*, 345 at 90-10)).

In *Robbins v. Wilkie*, 289 F. Supp. 2d 1307, 1310 (D. Wyo. 2003), a federal district court

recently analyzed the interaction between *Touhy* regulations and the Federal Rules of Civil

Procedure concerning discovery. In *Robbins*, the plaintiff brought a lawsuit against several

federal government agencies and its employees alleging violation of the RICO act and the

plaintiffs' constitutional rights. The plaintiff claimed that the defendants had engaged in a

pattern of harassment after plaintiff had refused to give the Bureau of Land Management (the

"BLM") an easement over his property. Plaintiff brought a motion to compel the testimony of

three BLM employees who were alleged to possess discoverable evidence. Noting that the

discovery process should not be obstructed, the court held:

> *Touhy* stands for the limited principle that Mr. Touhy should have served a subpoena on
> the proper party. Plaintiff, in the case at hand, has made a good faith effort to comply
> with the rules and procedures of the BLM in making the *Touhy* request for depositions.
> Plaintiff is not going on a fishing expedition to find evidence, he is requesting a Court
> order to depose the four BLM employees for specific discoverable evidence.
>
> * * *
>
> The discovery powers under the Federal Rules of Civil Procedure provide parties with
> avenues of gaining discoverable evidence. This Court advocates open discovery to
> ensure both parties have all applicable and material evidence to ensure an equitable and
> objective trial. The government can not promulgate regulations and refuse proper,
> necessary discovery in direct contravention of the Federal Rules of Civil Procedure.

289 F. Supp. 2d at 1310-11. Accordingly, plaintiffs' motion to compel the testimony of the three

BLM employees was granted.

Like the plaintiffs in *Robbins*, plaintiffs here have complied with the DHHS's *Touhy*

regulations. In fact, even though prevailing jurisprudence suggests that the DHHS' *Touhy*

regulations unduly limit the circumstances in which DHHS employees can be deposed,

7

plaintiffs' nevertheless complied with those regulations. Accordingly, their request to depose Dr.

Collins should be granted.

The DHHS's *Touhy* regulation provides that:

> No employee or former employee of the DHHS may provide testimony or produce documents in any proceedings to which this part applies concerning information acquired in the course of performing official duties or because of the person's official relationship with the Department unless authorized by the Agency head pursuant to this part based on a determination by the Agency head, after consultation with the Office of the General Counsel, that compliance with the request would promote the objectives of the Department.

45 CFR § 2.3.

The regulation also specifies the manner by which a party to a litigation may obtain the

testimony of a Department employee:

> All requests for testimony by an employee or former employee of the DHHS in his or her official capacity and not subject to the exceptions set forth in § 2.1(d) of this part must be addressed to the Agency head in writing and must state the nature of the requested testimony, why the information sought is unavailable by any other means, and the reasons why the testimony would be in the interest of the DHHS or the federal government.

45 CFR § 2.4(a).

In their July 15, 2004 request to the Director of DHHS, plaintiffs described the nature of

the case and explained why the discovery sought from Dr. Collins could not be obtained by any

other means. *See* Exhibit B. Specifically, plaintiffs informed the DHHS that they had

discovered, through their investigation and review of documents produced by defendants and

other non-party witnesses, that Dr. Collins played a lead role in the negotiations between Celera

and the HGP, including at the December 29, 1999 meeting, which lie at the core of plaintiffs'

allegations. *Id.* at 2. Also, as Director of the HGRI, it was clear that Dr. Collins was involved at

the very highest levels of the negotiations and would certainly possess more knowledge

regarding the talks than anyone else on the HGP side. *Id.*

Finally, plaintiffs noted that the DHHS had a strong interest in allowing Dr. Collins to testify because he possessed evidence concerning defendants' violation of federal securities laws. *Id.* Specifically, plaintiffs noted that defendants were alleged to have violated, *inter alia*, Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, which prohibits a person from registering securities with the Securities & Exchange Commission ("SEC") using documents which contain untrue statements of a material fact or which omit to state material facts. *Id.* Plaintiffs advised the DHHS that the operative complaint alleged that defendants, through the issuance of false and misleading offering materials, and in direct violation of federal law, were able to sell Celera stock to the investing public in a secondary public offering at $225 a share, generating proceeds of $944 million. *Id.* Plaintiffs further advised the DHHS that after it was revealed that Celera had not disclosed the material facts concerning the failed December 29, 1999 meeting with the HGP in its SEC filings, Celera's stock had fallen from a high of $247 to $119, by March 14, 2000, only two weeks after the secondary offering. *Id.*

Nevertheless, the DHHS denied plaintiffs' request citing, among other things, plaintiffs' alleged failure "to demonstrate how Dr. Collins' testimony w[ould] promote the objectives of the Department of Health and Human Services," and plaintiffs' alleged failure to establish that the testimony sought from Dr. Collins could not be obtained by any other means. *See* Exhibit C at 1; *see also* Exhibit F at 1.

## II.    THE FACTUAL RECORD GATHERED THUS FAR ESTABLISHES THAT DR. COLLINS HAS DISCOVERABLE EVIDENCE THAT IS UNAVAILABLE THROUGH ANY OTHER MEANS

Although plaintiffs need only articulate the reasons why Dr. Collins possesses discoverable evidence, they have also demonstrated to the DHHS that the Dr. Collin's testimony cannot be obtained by any other means. Thus far, plaintiffs have deposed two of the four individuals that attended the December 29 meeting on behalf of the HGP, Drs. Robert

Waterston[6] and Harold Varmus.[7]  Dr. Waterston testified to the following facts that confirm that

Dr. Collins was one of the key figures involved at the very outset of the negotiations with

defendants and that Dr. Collins was one of the individuals primarily in contact with defendants

during the critical days leading up to the December 29 meeting.

- Dr. Collins participated in weekly phone calls in the Fall of 1999 during which the potential collaboration between Celera and the HGP was discussed. Waterston Dep. at 21-22.[8]

- Dr. Collins was one of only a handful of people involved in the very early stages of the negotiations to collaborate with Celera.  *Id*. at 37.

- Dr. Collins was closely involved in the drafting of a document entitled "Shared Principles," which outlined the potential collaboration between defendants and the HGP.  *Id*. at 70.

- Dr. Collins was involved in an important conversation with Craig Venter, Celera's President, one day before the December 29 meeting, during which Celera expressed dissatisfaction with the "Shared Principles" document.  *Id*. at 72.

- Dr. Collins took a lead role on behalf of the government at the December 29 meeting.  *Id*. at 78-79

- Dr. Collins was responsible for contacting Celera after the disastrous December 29 meeting.  *Id*. at 109, 115, 116-18.

- Dr. Collins was responsible for drafting a comprehensive letter to Celera discussing the negotiations regarding collaboration.  *Id*. at 142-46, 148-50.

- Dr. Collins was involved in talks with other NIH officials concerning the events surrounding the collapse in the negotiations, to which Dr. Waterston was not privy.  *Id*. at 160-61.

---

[6] During the course of negotiations between Celera and the HGP, Dr. Robert Waterston was Director of Washington University's Genome Sequencing Center, which was one of five leading contributors to the HGP in the U.S.

[7] During the negotiations between Celera and the HGP, Dr. Varmus was the director of the NIH.

[8] Citations in the form "Waterston Dep. at __", refer to pages of the deposition transcript of Dr. Robert H. Waterston (*see* Exhibit G to the Fournier Affidavit).

Similarly, Dr. Varmus confirmed Dr. Collins' role as the leader of the government effort seeking to collaborate with Celera, by testifying that "[w]ell, Francis [Collins] was the nominal director of The Human Genome Project, so it would be perfectly appropriate that he would be viewed as the leader of our team of four." Varmus Dep. at 98.[9]  Dr. Varmus also testified that Dr. Collins not only drafted the proposed agenda for the December 29, 1999 meeting with defendants (*id*. at 98), but that he also took the lead on behalf of the government at the meeting. *Id*. at 104.  ("It certainly began, as I recall, Francis [Collins] took the lead in the conversation. . . .").

## III.   THE GOVERNMENT HAS NO LEGITIMATE BASIS FOR PREVENTING DR. COLLINS' DEPOSITION

The government's August 6, 2004 letter contends that plaintiffs "have failed to sufficiently explain why the testimony sought from Dr. Collins is not available through other means" (Exhibit C at 1) and that the other individuals at the meeting could be called to testify. *Id*.  While this is not a burden plaintiffs need to meet, they can readily do so.  As discussed above, the testimony of Drs. Waterston and Varmus demonstrates that Dr. Collins' personal involvement in the negotiations with Celera was much more extensive than theirs.  Further, during his deposition, Dr. Waterston had trouble remembering key aspects of the December 29 meeting after having been shown his own notes of the event.  *See, e.g.,* Waterston Dep. at 84-92, 98-99.  Moreover, a document produced by Dr. Waterston reveals that Dr. Collins obtained an opinion from another employee of the DHHS concerning the patentability of gene sequences --

---

[9] Citations in the form "Varmus Dep. at __" refer to pages of the deposition transcript of Dr. Harold Varmus (Exhibit H to the Fournier Affidavit).

an important issue in this litigation. *Id*. at 29. Naturally, neither Dr. Waterston nor Dr. Varmus could provide any testimony on this issue, as they were not privy to these discussions.[10]

Dr. Collins also possesses unique knowledge concerning a critical issue in this matter -- Celera's failure to disclose facts concerning the December 29 meeting in connection with its secondary offering. Dr. Waterston testified that Dr. Collins was involved in discussions with defendants concerning whether the December 29 meeting, and the negotiations to that date, should be disclosed. *Id*. at 164-165. Moreover, the documentary evidence shows that Celera's representative, Paul Gilman, instructed someone on Dr. Collins' staff that the government should take a "no comment" approach if the media asked questions concerning the negotiations. Specifically, Mr. Gilman said,

> ***To say that we are meeting would mean that we at Celera would have to explain to our investors and customers what this is all about and how it will and/or will not effect them. This is far too complicated to put in [sic] simple statement.*** So we prefer the, "We are not commenting . . ." approach.

*See* Exhibit I to the Fournier Affidavit (emphasis added).[11]

Finally, the DHHS contends that "if the NIH were to allow this [Dr. Collins' deposition] to happen in every case in which NIH was not a party, and in which every plaintiff or defendant believed NIH could be helpful, it would become increasingly difficult for us to effectively and

---

[10] The DHHS also asserts that plaintiffs "have not sufficiently explained why Dr. Collins' memory would be any better than the individual(s) who has or will testify or any contemporaneous documents produced." Exhibit F at 1. While again, this is not the standard pursuant to which the Court should evaluate plaintiffs' motion, this argument is illogical. Surely plaintiffs could never establish whether Dr. Collins has a better memory of the relevant events than other participants without deposing him. The attempted imposition of such a requirement demonstrates an utter disregard for the limited purpose of *Touhy* regulations.

[11] Dr. Collins has also produced documents in this litigation. Thus, at the absolute minimum, Dr. Collins should be required to authenticate his documents. The DHHS's *Touhy* regulations contemplate such a procedure. *See* 45 CFR Sec. 2.6 ("Upon request, DHHS agencies will certify, pursuant to 42 U.S.C. 3505, the authenticity of copies of records that are to be disclosed.").

efficiently conduct NIH official business." Exhibit F at 1.[12]  While it is not a party to this

litigation, the U.S. government was intimately involved in the negotiations between Celera and

the HGP, and its representative, Dr. Collins, was a principal negotiator at the December 29

meeting.  Dr. Collins devoted a great deal of his time (and the government's time) during the Fall

of 1999, and at the December 29 meeting, engaging in discussions with Celera to collaborate to

sequence the human genome.  Thus, while the NIH's policy argument may be valid generally,

this is far from a situation where plaintiff merely believes the NIH "could be helpful."

## CONCLUSION

Based on the foregoing, this Court should issue an Order compelling the DHHS to

produce Dr. Collins for a deposition in this action, and extend the discovery cut-off solely for the

purpose of allowing plaintiffs to take this deposition.

Dated: October 12, 2004

**HURWITZ, SAGARIN**
**& SLOSSBERG, LLC**

By_____
David A. Slossberg (CT13116)
Brian C. Fournier (CT16272)
147 N. Broad Street, P.O. Box 112
Milford, CT 06460
(203) 877 - 8000

**Plaintiffs' Liaison Counsel**

---

[12] The DHHS has never contested that Dr. Collins is the most knowledgeable person on the
government side concerning the negotiations between defendants and the HGP, which are at the
heart of this case.  Instead, it has refused the deposition principally because it asserts that Dr.
Collins should not be taken away from his governmental duties to attend a deposition.  Although
this position is unsupported by the relevant jurisprudence, plaintiffs attempted to accommodate
this supposed concern by offering to limit the scope and duration of Dr. Collins' testimony.  The
DHHS rejected this request, without explanation.

**MILBERG WEISS BERSHAD**
**& SCHULMAN LLP**

Sanford P. Dumain (CT08138)
Lee A. Weiss (CT21345)
Carlos F. Ramirez (CT25340)
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

**Plaintiffs' Lead Counsel**

**CERTIFICATION**

This is to certify that a copy of the foregoing Memorandum of Law in Support of Motion

Compel the Testimony of Dr. Francis Collins was served by Federal Express, on October 12,

2004, on the following:

| | |
|---|---|
| Paul J. Robertson<br>Senior Attorney, NIH<br>Office of the General Counsel<br>Department of Health<br>  and Human Services<br>Public Health Division<br>31 Center Drive, Room 2B-50<br>Bethesda, Maryland 20892 | Robert A. Bourque, Esq.<br>William M. Regan, Esq.<br>Laura D. Murphy<br>Michael J. Chepiga, Esq.<br>Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, NY 10017<br><br>Counsel for Defendants |
| Stanley A. Twardy, Jr., Esq.<br>Thomas D. Goldberg, Esq.<br>Terence J. Gallagher, Esq.<br>Day, Berry & Howard LLP<br>One Canterbury Green<br>Stamford, CT 06901<br><br>Liaison Counsel | |

_____
David A. Slossberg