UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
|  | : | MASTER FILE NO. |
|  | : | 3:00 CV 705 (CFD) |
| IN RE PE CORPORATION | : |  |
| SECURITIES LITIGATION | : |  |
|  | : |  |
|  | : | OCTOBER 22, 2004 |

**DEFENDANTS' RESPONSE AND PARTIAL OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF DR. FRANCIS COLLINS**

Defendants PE Corporation (n/k/a Applera Corporation), Tony L. White, Dennis L. Winger and Vikram Jog (collectively, the "Defendants"), through undersigned counsel of record, respectfully submit this response and partial opposition to Plaintiffs' motion to compel the deposition of Dr. Francis Collins, Director of the National Human Genome Research Institute ("NHGRI").[1]

**PRELIMINARY STATEMENT**

Plaintiffs allege that the registration statement and prospectus (together, the "Prospectus") prepared in connection with a February 29, 2000 secondary public offering of PE Corp.-Celera Genomics Group common stock (the "Secondary Offering") were false and misleading because Celera did not disclose a single, brief meeting between Celera and representatives of the federally-funded Human Genome Project (the "HGP"). Compl. at ¶ 39.

The meeting at issue was held on December 29, 1999 at a hotel near Dulles Airport. There were eight participants at the meeting, four representatives from Celera and four

---

[1] Plaintiffs have also moved to expedite the Court's consideration of the motion to compel, and to extend the fact discovery cut off to permit the deposition of Dr. Collins.

representatives from the HGP. *See* Varmus Tr. at 103.[2] The purpose of the meeting was to explore (i) whether there was any way to reduce the adversarial media rhetoric that had existed between Celera and the HGP and (ii) whether there was any basis for interactions between Celera and the HGP.

Defendants respectfully submit this response and partial opposition for two reasons. First, Plaintiffs' memorandum of law mischaracterizes the procedural and factual record relating to the December 29 meeting in several significant respects, and Defendants submit this response to provide the Court with a complete and accurate account of the relevant facts. Second, with respect to the substance of Plaintiffs' motion, Defendants do not take a position on whether the Department of Health and Human Services (the "DHHS") appropriately declined to make Dr. Collins available to be deposed pursuant its *Touhy* regulations. Defendants do oppose the motion, however, because it is untimely and seeks unnecessary and duplicative discovery.

**ARGUMENT**

**I.    PLAINTIFFS MISCHARACTERIZE THE FACTUAL RECORD DEVELOPED IN DISCOVERY**

In support of their motion to compel Dr. Collins' deposition, Plaintiffs present factual assertions that are not consistent with the documents and testimony obtained from both Celera and the HGP during discovery. Defendants cannot permit Plaintiffs to make factual assertions that are contradicted by undisputed evidence.

*First*, Plaintiffs assert that the "key event" and "culmination" of discussions between Celera and the HGP was the December 29 meeting. Plaintiffs' Memorandum of Law in Support of Their Motion to Compel the Testimony of Dr. Francis Collins ("Pl. Br.") at 1.

---

[2]    Excerpts from the deposition of Dr. Harold Varmus are attached hereto as Exhibit A.

Discovery obtained from both Celera and the HGP, however, has established that the December 29 meeting was not the "culmination" of anything at all, but instead was "the first face to face meeting" between Celera and the HGP and was "exploratory and general" in nature. *See* Email from Francis Collins to Craig Venter, dated December 28, 1999, attached hereto as Exhibit B ("in view of the rather **exploratory** and general nature of tomorrow's conversation, Harold [Varmus] and I felt it would be best not to have any official recording or stenographer. As that might inhibit the free flow of ideas.") (emphasis added);[3] Email from Craig Venter to Francis Collins, dated December 29, 1999, attached hereto as Exhibit C ("This is the **first** face to face and first formal discussion concerning any interactions between the public genome effort and the Celera effort to sequence the human genome.") (emphasis added).[4]

Indeed, Dr. Craig Venter, president of Celera at the time of the meeting, testified that the December 29 meeting was inconsequential: "I mean, this was a relatively minor event in the scope of my duties in trying to sequence the human genome, run a business. We viewed this as trying to lower the public rhetoric, you know, but these were not the most important events in our lives." Venter Tr. at 111.[5] Dr. Venter also testified that discussions with the HGP were "a relatively minor side show." Venter Tr. at 83.

*Second*, Plaintiffs assert that at the December 29 meeting, "the HGP indicated that it was unwilling to collaborate with Celera in light of Celera's demand that it be granted exclusive rights over the merged genome sequencing data for an extended period of time." Pl.

---

[3]  In view of Plaintiffs' allegations that the HGP viewed the December 29 meeting as critical, it is particularly noteworthy that it was the HGP, and not Celera, that requested that no official recording of the meeting be made.

[4]  Similarly, Plaintiffs assert that Defendants should have disclosed "the failed December 29, 1999 meeting." Plaintiffs do not, however, explain how an "exploratory and general" conversation could have "failed" in such a way as to require disclosure in SEC filings.

[5]  Excerpts from the deposition of Dr. Craig Venter are attached hereto as Exhibit D.

Br. at 1, n.3. To the contrary, the undisputed evidence has confirmed that *Celera rejected* the terms of a collaboration proposed by the HGP. *See* Venter Tr. at 110; Email from Craig Venter to Francis Collins, dated December 29, 1999, attached hereto as Exhibit C.[6]

***Third*,** Plaintiffs grossly mischaracterize the "Shared Principles" document sent to Celera on December 28, 1999, asserting that it "outlined the potential collaboration between defendants and the HGP." Pl. Br. at 10. To the contrary, the undisputed evidence has confirmed that the "Shared Principles" document was a document drafted exclusively by the HGP, and the principles were not shared by Celera. *See* Venter Tr. at 94 ("They weren't principals [sic] that were shared – he was sharing them with us. They weren't joint principals [sic]."); Levine Tr. at 63 ("I didn't understand who shared these principles. They hadn't been openly discussed with us . . .").[7]

***Fourth*,** Plaintiffs' memorandum suggests that the primary purpose of the December 29 meeting was to discuss the details of a full scale scientific collaboration between Celera and the HGP. Yet the evidence shows that Celera was not seeking a collaboration when it decided to attend the December 29 meeting, and that Celera's primary focus was finding a way to reduce the negative press rhetoric that had been exchanged between the two sides:

- Dr. Venter testified that the meeting was scheduled to follow up on the discussions with Eric Lander, "mostly trying to decrease public rhetoric and possible simultaneous publication." Venter Tr. at 37, 86.

---

[6] Plaintiffs also fail to point out that this part of the December 29, 1999 meeting had nothing to do with what Celera could or could not do with its own sequencing data. This discussion concerned only the parties' respective rights to ***merged*** sequence data, which would not exist unless and until the parties agreed to a collaboration. The December 29 meeting was not significant to Celera because, *inter alia*, if the parties did not reach an agreement to merge their respective versions of the genome, then each side was free to use its genome data in any way it saw fit.

[7] Excerpts from the deposition of Dr. Arnold Levine are attached hereto as Exhibit E.

4

- Dr. Levine testified that "The only thing that I can say for sure is what I felt going into the meeting, which was that the purpose of the meeting was to tone down the rhetoric between The Human Genome Project and the Celera group and to find ways to let each group go about its own business of sequencing the human genome." Levine Tr. at 58.

- Dr. Gilman testified that reducing the rhetoric "was a stated point of interest at the outset of the meeting that the meeting was intended to help accomplish." Gilman Tr. at 85.[8]

***Fifth***, Plaintiffs claim that Dr. Collins had discussions with "NIH officials concerning the events surrounding the collapse in the negotiations." Pl. Br. at 10. First, the evidence shows that there were no significant negotiations that could have "collapsed" in any way. As noted above, the December 29 meeting was intended to be nothing more than an "exploratory and general" conversation. *See* Email from Francis Collins to Craig Venter, dated December 28, 1999, attached hereto as Exhibit B. Moreover, there was no "collapse" in the discussions between Celera and the HGP. Subsequent to the December 29 meeting (i) Dr. Collins and Tony White discussed a potential interaction on January 22, 2000;[9] (ii) Dr. Venter, Dr. Collins and Dr. Ari Patrinos (the head of the Department of Energy's component of the HGP) discussed a potential interaction in May 2000 (Venter Tr. at 172 (Drs. Venter, Collins and Patrinos discussed "what we had discussed initially with Eric Lander about lowering the rhetoric and having simultaneous publications.")); and (iii) Celera and the HGP eventually reached an agreement to (a) jointly announce the completion of the sequencing efforts at a White House ceremony and (b) publish their scientific papers analyzing the genome simultaneously. *Id.*

---

[8]  Excerpts from the deposition of Dr. Paul Gilman are attached hereto as Exhibit F.

[9]  Email from Francis Collins to Martin Bobrow, Harold Varmus, and Robert Waterston, dated January 23, 2000, attached hereto as Exhibit G.

5

*Finally*, Plaintiffs assert that Dr. Collins "obtained an opinion from another employee of the DHHS concerning the patentability of gene sequences – an important issue in this litigation." Pl. Br. at 11-13. The patentability of gene sequences is not an issue at all in this litigation, let alone an important one. As a preliminary matter, the Prospectus makes clear, and Dr. Venter confirmed in his testimony, that the patenting of gene sequences was not a significant component of Celera's business plan. *See* Venter Tr. at 21 ("[W]e were absolutely not going to patent the human genome."). Moreover, the patenting of gene sequences cannot possibly be a "key issue" in this case because Plaintiffs have never *alleged* that (a) Celera attempted to patent a single gene sequence; (b) the United States Patent and Trademark Office denied a single patent application filed by Celera; or (c) intellectual property law regarding the patentability of gene sequences ever changed in any way.

## II.   THIS COURT SHOULD DENY PLAINTIFFS' MOTION ON THE GROUNDS THAT IT IS UNTIMELY AND SEEKS DUPLICATIVE AND UNNECESSARY TESTIMONY

Respectfully, this case is more than four years old. Defendants do not want to delay resolution of this matter any longer. Plaintiffs could have taken steps to secure the testimony of Dr. Collins prior to October 12, 2004, eight days before the current fact discovery cut-off (which has already been extended three times). Plaintiffs' motion is therefore untimely.

### A.   Plaintiffs Had Ample Opportunity to Seek Dr. Collins' Testimony In Time For This Issue To Be Resolved Before the Discovery Cutoff

Plaintiffs knew from the outset of this litigation that Dr. Francis Collins was the Director of the NHGRI and one of the participants in the December 29 meeting between Celera and the HGP. Indeed, the very same news article that Plaintiffs rely upon in their Complaint for allegations regarding the December 29 meeting describes Dr. Collins' role as head of the NHGRI and as a participant in the meeting. *See* Compl. at ¶ 25 (*citing* Peter G. Gosselin, Paul Jacobs,

6

*Rush to Crack Genetic Code Breeds Trouble Science*, Los Angeles Times, Mar. 6, 2000, at A1). Plaintiffs' representation that "they had discovered, through their investigation and review of documents produced by defendants and other non-party witnesses, that Dr. Collins played a lead role in the negotiations between Celera and the HGP" (Pl. Br. at 8) is therefore disingenuous. The fact that Dr. Collins was the head of the HGP was common and public knowledge long before Plaintiffs commenced this action. Plaintiffs also have known that Dr. Collins remains today as the Director of the NHGRI, and thus that any effort to compel his testimony is subject to DHHS regulations governing employee testimony in civil matters to which the agency is not a party.

Plaintiffs could have subpoenaed Dr. Collins in July 2003, when they served subpoenas on other non-parties (including members of the HGP), or in March 2004 when Defendants completed document production. Yet it was not until July 2004 that Plaintiffs served a subpoena on Dr. Collins. Pl. Br. at 2. As Plaintiffs should have anticipated, the DHHS informed them on August 6, 2004 that it would not permit the intrusion on Dr. Collins' time, and declined to permit him to be deposed. *See* Fournier Aff. Ex. C.

As the September 30, 2004 discovery cutoff approached, Plaintiffs neither moved to compel Dr. Collins' testimony nor moved for a conditional extension of the discovery cutoff pending resolution of the dispute. Instead, they elected to cast their lot by sending a letter requesting the agency to reconsider its decision.[10] *See id.* at Ex. D. The DHHS denied that request on September 27, 2004. *See id.* at Ex. F.

Only on October 12 – more than two weeks after the DHHS' denial of the motion for reconsideration and eight days before the extended October 20, 2004 discovery cutoff – did

---

[10] The regulations do not require a party to submit a request for reconsideration before seeking judicial relief. *See* 45 C.F.R. § 2.4 (2004).

7

Plaintiffs move to compel Dr. Collins' testimony. The motion is simply too late. Plaintiffs have proffered no reason why the subpoena could not have been served and the motion to compel could not have been filed months before Plaintiffs acted, precisely in order to avoid the last-minute request to further prolong fact discovery. Accordingly, the motion should be denied.

### B.  Plaintiffs' Motion Seeks Unnecessary and Duplicative Evidence

Plaintiffs' assertion that Dr. Collins possesses material information not otherwise discoverable is not supported by the record. Eight persons – four from Celera, four from the HGP – attended the December 29, 1999 meeting. Plaintiffs have deposed <u>six</u> of the eight participants: all <u>four</u> Celera representatives who attended the meeting (Mr. Tony White, Dr. Craig Venter, Dr. Arnold Levine, and Dr. Paul Gilman); and <u>two</u> of the four HGP representatives (Dr. Robert Waterston and Dr. Harold Varmus, who was director of NIH at the time of the meeting).[11] The six witnesses who have already testified have offered consistent accounts of what happened at the meeting.

In addition to having deposed nearly all the participants at the December 29 meeting, Plaintiffs have obtained extensive document production consisting of e-mails and notes of communications among the HGP representatives, and between the HGP and Celera. The production includes notes prepared by Dr. Collins and Dr. Waterston at and immediately after the December 29, meeting. *See* Dr. Collins' Notes, attached hereto as Exhibit H; Dr. Waterston's Notes, attached hereto as Exhibit I. Plaintiffs have also obtained a substantial document production from Dr. Collins setting forth his communications with representatives of

---

[11]  In addition to Dr. Collins, the only other participant who has not been deposed is Martin Bobrow, a representative of the Wellcome Trust (the principal financial backer for the United Kingdom component of the HGP). Plaintiffs have not sought to obtain Mr. Bobrow's deposition testimony, notwithstanding the availability of customary means of obtaining discovery from United Kingdom citizens (*e.g.*, letters rogatory).

8

Celera and the HGP.[12] It is doubtful that Dr. Collins would be able to testify to specific events at a meeting that occurred nearly five years ago that (1) have not already been captured in the testimony of six other attendees at the meeting and (2) are not reflected in contemporaneous notes and documents that have been available to Plaintiffs.

Plaintiffs purport to identify eight subjects about which Dr. Collins has unique knowledge. Pl. Br. at 10. A cursory examination of these subjects reveals that Plaintiffs' claim is conclusory and unsupported. For example, Plaintiffs assert that Dr. Collins' deposition is warranted because he participated in weekly phone calls among the members of the HGP. Plaintiffs, however, have already deposed Drs. Waterston and Varmus, both of whom participated in the same weekly calls. Waterston Tr. at 114;[13] Varmus Tr. at 73. Similarly, Plaintiffs suggest that Dr. Collins has unique knowledge regarding a document entitled "Shared Principles." Yet, Plaintiffs have already extensively questioned Drs. Waterston and Varmus regarding their role in drafting the "Shared Principles" document, and they have also questioned every Celera witness who received the document. Waterston Tr. at 47-48; Varmus Tr. at 99-101. Finally, Plaintiffs imply that Dr. Collins has unique knowledge regarding the drafting of "a comprehensive letter" to Celera regarding the collaboration discussions. The letter Plaintiffs are referring to is a February 28, 2000 letter from the HGP to Celera, *which was co-authored by Drs. Waterston and Varmus.* *See* Letter from Waterston, Varmus, Collins and Bobrow to Celera, dated February 28, 2000, attached hereto as Exhibit J. As the above examples demonstrate, the

---

[12]   The same regulations governing the production of witnesses provide that, upon request, the DHHS will certify and authenticate records produced to third-parties. *See* 45 C.F.R. § 2.6. Thus, Plaintiffs do not need to depose Dr. Collins to authenticate DHHS records.

[13]   Excerpts from the deposition of Dr. Robert Waterston are attached hereto as Exhibit K.

9

bullet points listed by Plaintiffs do not support the notion that Dr. Collins has discoverable evidence that "cannot be obtained by any other means."

### III. IF THE COURT GRANTS PLAINTIFFS' MOTION TO COMPEL, DEFENDANTS ARE ENTITLED TO A FULL AND FAIR OPPORTUNITY TO CROSS EXAMINE DR. COLLINS

By letter dated September 27, 2004, Plaintiffs offered to limit Dr. Collins' deposition to three hours. *See* Fournier Aff. Ex. E. Plaintiffs further offered to limit the subject matter of Dr. Collins' testimony to certain subjects Plaintiffs deemed helpful to their case. *Id.* If the Court decides to grant Plaintiffs' motion to compel Dr. Collins' deposition, Defendants respectfully request that the Court reject Plaintiffs' temporal and subject matter limitations.

Rule 30(d)(2) of the Federal Rules of Civil Procedure provides that absent unusual circumstances, a deposition should ordinarily be held for seven hours. If Plaintiffs intend to use Dr. Collins' testimony in this case against Defendants, Defendants are entitled as a matter of Rule 30 and due process to a full and fair cross examination of Dr. Collins. If Defendants do not have the opportunity to cross-examine Dr. Collins, his testimony will be precluded from use at trial. *See Cury v. Philip Morris USA*, No. 93 Civ. 2395, 1995 U.S. Dist. LEXIS 14798, at *3 (S.D.N.Y. Oct. 6, 1995) (deposition testimony was inadmissible hearsay where party against whom the testimony was sought had no substantial opportunity to cross-examine the witness).[14] Therefore, allowing such a limited deposition would serve no purpose in this litigation.

---

[14] This unreported authority is attached hereto as Exhibit L.

10

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion to compel the deposition of Dr. Collins on the grounds that Plaintiffs' motion is untimely, and the deposition sought is unnecessary and duplicative. If the Court grants Plaintiffs' motion, Defendants request that the Court order the deposition for the full seven hour period required by Rule 30(d)(2) of the Federal Rules of Civil Procedure, and that Defendants be provided with sufficient time to meaningfully cross-examine Dr. Collins.

DEFENDANTS PE CORPORATION,
TONY L. WHITE, DENNIS L. WINGER
and VIKRAM JOG

By: _____
    Stanley A. Twardy, Jr. (CT 05096)
    Thomas D. Goldberg (CT 04836)
    Terence J. Gallagher (CT 22415)
    Day, Berry & Howard LLP
    One Canterbury Green
    Stamford, CT 06901
    (203) 977-7300
    (203) 977-7301 (fax)
    tdgoldberg@dbh.com(e-mail)

    Michael J. Chepiga (CT 01173)
    Robert A. Bourque (CT 05269)
    William M. Regan (CT 25100)
    Simpson Thacher & Bartlett LLP
    425 Lexington Avenue
    New York, NY 10017
    (212) 455-2000
    (212) 455 2502 (fax)
    mchepiga@stblaw.com (e-mail)

## **CERTIFICATION**

      This is to certify that a copy of the foregoing was sent via overnight courier, postage prepaid, this 22nd day of October, 2004, to:

| | |
|---|---|
| J. Daniel Sagarin, Esq. | Sanford P. Dumain, Esq. |
| David A. Slossberg, Esq. | Lee A. Weiss, Esq. |
| Brian C. Fournier, Esq. | Carlos F. Ramirez, Esq. |
| Hurwitz, Sagarin & Slossberg, LLC | Milberg Weiss Bershad & Schulman LLP |
| 147 N. Broad Street | One Penn Plaza – 49th Floor |
| P.O. Box 112 | New York, NY 10119 |
| Milford, CT 06460 | |
| | |
| Liaison Counsel | Lead Counsel for Plaintiffs |

 

_____
Terence J. Gallagher

# Index of Exhibits

| | |
|---|---|
| Exhibit A | Excerpts from the deposition of Dr. Harold Varmus |
| Exhibit B | Email from Francis Collins to Craig Venter, dated December 28, 1999 |
| Exhibit C | Email from Craig Venter to Francis Collins, dated December 29, 1999 |
| Exhibit D | Excerpts from the deposition of Dr. Craig Venter |
| Exhibit E | Excerpts from the deposition of Dr. Arnold Levine |
| Exhibit F | Excerpts from the deposition of Dr. Paul Gilman |
| Exhibit G | Email from Francis Collins to Martin Bobrow, Harold Varmus, and Robert Waterston, dated January 23, 2000 |
| Exhibit H | Dr. Francis Collins' notes dated December 29, 1999 |
| Exhibit I | Dr. Robert Waterston's notes dated December 29, 1999 |
| Exhibit J | Letter from Drs. Waterston, Varmus, Collins and Bobrow to Celera, dated February 28, 2000 |
| Exhibit K | Excerpts from the deposition of Dr. Robert Waterston |
| Exhibit L | Cury v. Philip Morris USA, No. 93 Civ. 2395, 1995 U.S. Dist. LEXIS 14798 (S.D.N.Y. Oct. 6, 1995) |