LEXSEE 1995 US DIST LEXIS 14798

**BRIAN L. CURY, Plaintiff, -against- PHILIP MORRIS USA, Defendant.**

93 Civ. 2395 (CSH)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1995 U.S. Dist. LEXIS 14798*

October 6, 1995, Decided
October 6, 1995, FILED

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For BRIAN L. CURY, plaintiff: Jonathan A. Marshall, Pennie & Edmonds, New York, NY.

For PHILIP MORRIS USA, defendant: Samuel D. Rosen, Esq., Paul, Hastings, Janofsky & Walker, New York, NY.

For PHILIP MORRIS USA, counter-claimant: Samuel D. Rosen, Esq., Paul Hastings Janofsky & Walker, New York, NY.

For BRIAN L. CURY, counter-defendant: Jonathan A. Marshall, Pennie & Edmonds, New York, NY.

**JUDGES:** CHARLES S. HAIGHT, JR., U.S.S.D.J.

**OPINIONBY:** CHARLES S. HAIGHT, JR.

**OPINION:**

MEMORANDUM OPINION AND ORDER

**HAIGHT, Senior District Judge:**

In this patent infringement action, plaintiff moves *in limine* to exclude from use at trial the deposition testimony of Hee Tae Kim, a non-party witness. For the reasons discussed below, the motion is granted.

BACKGROUND

Plaintiff Brian Cury brings this action for infringement of the patented design of a turbo cigarette lighter, registered as United States Design Patent No. *330,441*.

Plaintiff alleges that he invented the lighter design patented as No. *330,441* and that he contracted with Daiyang, a Korean lighter manufacturer, to produce the lighter for sale to defendant Philip Morris USA ("Philip Morris"). Plaintiff's Mem. at 2. Defendant alleges that an employee of Daiyang, Hee Tae Kim, invented the patented lighter design. Def's Mem. at 3. Since the dispute over who invented the lighter lies at the heart of this case, the parties traveled to Korea to depose Kim.

Counsel deposed Kim in Seoul, Korea on August 23, 1994. Counsel for defendant began questioning Kim at 9:10 a.m.; the deposition transcript does not record at what [*2] time that questioning ended, but it filled 27 pages of the transcript. Counsel for plaintiff then began his questioning, which filled the deposition transcript for an additional 109 pages, and ended at 2 p.m. when Kim announced that he refused to answer any further questions. Plaintiff filed his motion to bar use of the deposition at trial on the ground that Kim's departure from the deposition before plaintiff's counsel had finished questioning him denied plaintiff a full opportunity to cross-examine the witness, and that the deposition testimony therefore constituted inadmissible hearsay under *Fed. R. Evid. 804(b)(1)*. Defendant responds that plaintiff had a full opportunity to cross-examine Kim, especially since, it alleges, Kim was driven away from the deposition by the inappropriate conduct of plaintiff's counsel.

DISCUSSION

Case 3:00-cv-00705-CFD   Document 115-13   Filed 10/22/2004   Page 2 of 6

Page 2
1995 U.S. Dist. LEXIS 14798, *

### A. The Legal Standard

Under *Federal Rule of Evidence 804(b) (1)*, deposition testimony is admissible as an exception to the evidentiary hearsay exclusion so long as the deposition proceeded in compliance with law, and the party against whom the testimony is offered had "an opportunity" to develop the testimony by cross-examination. *Fed. R. Evid.* [*3] *804(b) (1)*. "Actual cross-examination is not required, 'but merely an opportunity to exercise the right to cross-examine if desired.'" 4 Weinstein's Evidence, P 804(b)(1)[02] at 804-91 (1995) quoting 5 Wigmore, Evidence § 1371 at 55 (1974). This opportunity cannot be an empty formality; it must be "full, substantial and meaningful in view of the realities of the situation." *United States v. Franklin, 235 F. Supp. 338, 341 (D.D.C. 1964)*. See also *United States v. Taplin, 954 F.2d 1256, 1258 (6th Cir. 1992)* (804(b)(1) requires more than naked opportunity to cross-examine); *United States v. Feldman, 761 F.2d 380, 385 (7th Cir. 1985)* (same). Application of this legal standard "is a matter calling for the trial court's discretion, which will depend on its evaluation of the realities of cross-examination. . . . " 4 Weinstein's Evidence, P 804(b)(1)[02] at 804-97.

### B. The Case Law

The case law on the question of what constitutes sufficient opportunity to cross-examine for the purposes of 804(b) (1) falls on both sides of the question before the Court. In *United States v. Salim, 855 F.2d 944 (2d Cir. 1988)*, the Second Circuit considered the issue [*4] in the context of a deposition which took place in France, under rules very different from those governing American depositions. In Salim, defendant's counsel needed to depose a crucial witness who was in the custody of the French government. Because French law forbade Salim's counsel from being present in the room during questioning of the witness, the attorney was required to submit written questions to the witness. *855 F.2d at 947-48*. Salim's attorney had the opportunity for several rounds of cross-examination under this procedure, but never had face-to-face interaction with the witness. *Id.* The Second Circuit held that

> despite the need to conduct the deposition in a disadvantageous manner, counsel was accorded what was essentially a full and fair opportunity to cross-examine the witness to ensure that she was telling the truth. Under these circumstances, the deposition transcript was admissible under Rule 804(b)(1) because it 'bore sufficient indicia of reliability' and afforded 'the trier of fact a satisfactory basis for evaluating the truth of the prior statement.'

*Id. at 954* (citations omitted).

The Eighth Circuit has also addressed the question [*5] of 804(b)(1) admissibility, rejecting a party's complaint that six days' notice of a deposition provided inadequate opportunity for cross-examination. *Pearl v. Keystone Consolidated Industries, Inc., 884 F.2d 1047, 1052 (7th Cir. 1989)*. Absent any attempt by the party to delay the deposition or to explain why six days' notice was inadequate, the court held that the party's absence was voluntary and that the deposition was admissible. *Id.* See also *DeLuryea v. Winthrop Laboratories, Etc., 697 F.2d 222 (8th Cir. 1983)* (deposition admissible when party's counsel chose to limit its cross-examination).

Other cases have presented fact patterns that were deemed not to have provided adequate opportunity to cross-examine. The Sixth Circuit refused to admit deposition testimony in a case in which a party was relying on a deposition conducted by its predecessor in interest, at which an Administrative Law Judge had barred the predecessor's counsel from impeaching a witness. *Complaint of Paducah Towing Co., 692 F.2d 412 (6th Cir. 1982)*. The Paducah court held that, given those restraints on cross-examination, the complaining party had not had the opportunity to cross-examine [*6] required by Rule 804(b) (1). *Id. at 419*. A simpler fact pattern was presented in *Young v. United State Postal Service*, in which only one party was able to depose a witness before the witness fell ill and died. *1988 WESTLAW 126906 at *2 (S.D.N.Y.)*. The court held that the opportunity to cross-examine was clearly absent in this situation, and that deposition testimony not subject to the "crucible of cross-examination" was inadmissible. *Id.* at *4.

These cases set the stage for this opinion, but leave a wide swath of uncertain ground. Salim and Pearl demonstrate that Rule 804(b)(1) does not require that a party be given ideal conditions in which to cross-examine, but only that the opportunity to cross-examine be real and meaningful. At the other end of the spectrum, Young and Paducah hold that externally imposed limitations can destroy the opportunity to cross-examine required by Rule 804(b)(1). The situation before the Court in this case falls somewhere between these two extremes.

### C. The Kim Deposition

Whether counsel for plaintiff had adequate opportunity to cross-examine Kim before he left the deposition is inherently a heavily fact-based question. [*7] No discovered case law involves a situation like

1995 U.S. Dist. LEXIS 14798, *

this one, in which counsel had *some* opportunity to cross-examine a witness but argues that the opportunity was not full and meaningful because of the witness's decision to leave, while opposing counsel contends that the cross-examination was sufficient. Resolution of this fact-specific issue requires a detailed consideration of the deposition transcript.

The deposition transcript begins with 27 pages of direct examination by Philip Morris' counsel, Samuel D. Rosen. Rosen briefly questioned Kim about his education and employment history, and asked how many lighters he had designed while at the Daiyang company. Transcript of Kim Deposition, August 23, 1994 at 7-12 (hereinafter "Tr."). Rosen then asked Kim about the design of the specific lighter at issue in this case, and his involvement in the design and patenting of it in Korea. Tr. at 12-20. Finally, Rosen questioned Kim about the entries in his personal diary and whether an attorney could take the diary to America. Tr. at 21-27. Kim responded that that would not be possible, because "I don't feel very pleasant about this ever happening. I think this is issue between Marlboro and [*8] Brian Cury, should not actually involve me. The fact that I have to come to this deposition type of meetings doesn't please me at all." Tr. at 26-27.

Plaintiff's counsel, Brian M. Rothery, then began to depose the witness. He questioned Kim about Kim's recent trip to the United States where he met with Philip Morris attorneys. Tr. at 28-35. Kim again showed discomfort at being involved with the lawsuit, stating that "I was never exposed to legal proceedings before. This is my personal view but I think this is an issue that should never have happened." Tr. at 34.

Rothery then began to question Kim about his educational background. Earlier in the deposition, Kim had freely told Rosen that he "didn't graduate in any formal school such as university. As a supplementary education, I studied graphic design." Tr. at 7. When Rothery asked about Kim's education, however, Kim responded "Do I have to mention my academic background? I don't really want to." Tr. at 37. Rothery persisted, and Kim answered questions about his education for several pages of transcript. These questions do not appear to the Court to have been unduly inquisitive; given that defendant claims that Kim designed the patented [*9] lighter, Kim's background in design is clearly relevant. However, Kim again objected, asking "Do I have to mention all the specifics of my studies? I don't know the reason as to why I should." Tr. at 42. Rosen then told Rothery that "You have these long pauses in between while you study what you study, which are pages of notes and writing notes. You are aware that this witness is not real happy being here and would like to get out. The direct examination was well under an hour. I don't want to rush. If you can speed up your questions." Tr. at 44.

Rothery then asked Kim further questions about his education, insisting on learning from Kim what products he had designed while studying at the Life Design Institute. The transcript reveals some confusion about the distinction between drawing and designing products and some somewhat repetitive questions by Rothery on this subject. Tr. at 47-51. Kim then declared "You are trying to make me study again. And you make me go back to my past. I don't know whether I need to do this. . . . When I came here this morning, I came here to tell you to inform you of the facts that I know. I'm not here for questioning." Tr. at 51. Although Kim may well [*10] have been unfamiliar with the American legal system and the deposition process, his position that he was not in the room for questioning is, of course, untenable. He was, in fact, there *exactly* for the purpose of answering relevant questions. It seems unlikely that counsel for defendant had not told him so previously.

Rothery pressed the subject of what exact products Kim had designed, at which point Rosen again interrupted, asking

> What is the relevance of this? . . . Is the purpose of this to try to keep this witness here as long as you can, Mr. Rothery, and impose upon him? I suggest that you get to the questions. . . I think you are harassing this witness. . . . If you get this witness any further upset and he walks out, that is your problem. You have full opportunity to examine him in what is relevant in this case. If this witness cannot tolerate your conduct any further and chooses not to participate in this deposition any longer, you'll be the one to pay the price.

Tr. at 52-53. Although the Court is well aware that the full dynamics of the deposition atmosphere cannot be transmitted by the transcript alone, I think that Rosen's comments were uncalled for [*11] at that point in the deposition, and possibly were made to unnerve Rothery. Rothery's questions may have been inefficiently organized -- I put it no higher than that -- but they were neither irrelevant nor harassing. In contrast, Rosen's remarks could be read as laying out a road map for the witness's later behavior, and for his own subsequent opposition to the motion made by plaintiff which inevitably followed the witness's departure.

The deposition was adjourned briefly after this interaction. Rothery apologized to Kim for the lengthiness of the questioning when the deposition

Case 3:00-cv-00705-CFD    Document 115-13    Filed 10/22/2004    Page 4 of 6

Page 4
1995 U.S. Dist. LEXIS 14798, *

recommenced. Tr. at 55. Rothery then moved on to questions concerning Kim's employment history, and the designing he did at those organizations. Tr. at 58-63. The tone of the deposition improved considerably, with Kim even making a joke in one of his answers. Tr. at 61. Rothery then began to question Kim about the turbo lighter at issue in this case, at which point Kim took some drawings from his briefcase, but then refused to allow Rothery to examine them, saying "you are demanding too much of a personal thing. . . . I think I have overstated things I shouldn't have said. I have come to say today." Tr. at [*12] 69-70. Rothery asked if he could make copies of the drawings and Kim replied: "Yes, you can, but it's possible to make copies, but I wish you couldn't. . . . I just don't like it." Tr. at 71. Rosen turned Kim's equivocal response into an outright refusal, in the colloquy which followed:

> **Rothery:** I can't make copies of these?
> **Rosen:** He said, no. What are you trying to do, bait the witness to walk out? You did this before. I got him to give you the drawings on the turbo lighter. You asked him six questions which were designed to nothing [sic] but bait him to walk out. When he walks out, this is for your account.
> **Rothery:** Mr. Rosen, I want to make copies of the drawing.
> **Rosen:** The man said no.
> **Rothery:** So I can mark them as exhibits so we can get them into evidence.
> **Rosen:** The man said no. Go out and get a subpoena for them. Given him his drawings back.
> **Rothery:** He said I can look at them.
> **Rosen:** Of course you can look at them.
> **Rothery:** Well, thank you, Mr. Rosen.

Tr. at 71-72.

Rothery then asked Kim numerous questions concerning the location of the original documents of the design of the turbo lighter, [*13] the patent process in Korea, and the events that took place following Daiyang's declaration of bankruptcy. Tr. at 73-95. Rothery next proceeded to ask about managers at Daiyang, and Kim's interactions with them. Tr. at 95-102. These questions, while perhaps not impacting directly upon the core issues of the case, were hardly so peripheral as to be unjustified, especially given the fact that counsel had traveled to Korea to depose this witness and knew that the witness might not come to the United States for trial.

At this point in the transcript, the deposition begins to break down. The interpreter declared that she could no longer concentrate, and that Kim had been notified and had informed her that the questioning would last only one or two hours. Tr. at 102-04. Rosen then told Rothery "I suggest that you get to what you want. . . and stop with this charade. . . . Maybe you ought to get to what this case is about. . . . You haven't asked him a single question about his notebook or not a single question about the design of the lighter." Tr. at 104-05. When Rothery then told the witness that he still needed to question him concerning the work he did on the turbo lighter, Kim responded [*14] "you can do it by yourself." Tr. at 107. Kim then declared

> I don't think I will be bearing another two hours. I was informed that this will only take a couple of hours. The morning has gone by. Another couple of hours I might have an important appointment. I might have an important phone call to make. I'm in a situation that I can't do anything. I can't do either of them. So this is -- in the beginning, there has been some parts of the question where it hurt my feelings that this is a personal thing. But even apart from that, I don't think it's possible for me to stay for that long.

Tr. at 108-09. Counsel for both parties prevailed upon Kim to stay longer, and Rothery began to question Kim about how he got the design ideas for the turbo lighter, specifically the idea of putting rings on the lighter, a crucial component of the design patent. Tr. at 110-18. Kim reacted angrily several times, declaring that "This is like a question for an elementary kid . . . . It's the same question over and over again. I don't want to say unnecessary things." Tr. at 114-16. Rothery asked questions for several more pages about the design process for the turbo lighter, Tr. at 117-22, at [*15] which point Kim declared, in reaction to a discussion between counsel, "I don't know what you are saying between yourself. I will receive one more question. I won't answer any further.' Tr. at 122. After counsel for the parties urged him to stay, Kim responded

> if this is the way you are going to proceed, I wouldn't have been here today. . . . This is too stressful for me. I don't know if I'll be able to handle it. . . . I was informed that this deposition would be ended by 11:00 this morning. But it's going on forever and ever. I cannot take it endlessly. . . . You are the one that did not

keep your promise. You very well over the appointed time.

Tr. at 124-29. Rothery asked Kim if he would be willing to meet again later in the week, to discuss the drawings and the notebook. Kim refused, stating that

> If this is the way it's going to be, it's too stressful for me to make further appointments with you. . . . You don't have to understand the pictures and I have a complex regarding my academic background. You have embarrassed me, personally in the beginning of your questioning. So with this, I would like to leave the room.

Tr. at 130. This ended the deposition. [*16]

The Court cannot agree with defendant that this interaction constituted adequate opportunity for meaningful cross-examination. Defendant argues in its memorandum that Kim left the deposition because of Rothery's harassing behavior, and that plaintiff thus deprived himself of his opportunity to cross-examine Kim. Def's Mem. at 36. However, Kim's repeated statement that he expected the deposition to run only two hours and to end at 11:00 a.m. provides an alternate and more plausible explanation for his agitation as the deposition continued. Without entering into an analysis of which, if either, party told Kim that the deposition would end by 11:00, it is clear to the Court that Kim was thoroughly annoyed by the length of the deposition, and that that anger was a large part of his decision to leave the deposition.

Other aspects of the transcript also lead the Court to reject the contention that Rothery drove the witness from the deposition room. As noted above, Kim expressed displeasure at being deposed from the very beginning of the deposition, even when he was being questioned by Rosen. Although Kim's anger increased visibly throughout the deposition, the transcript does not support [*17] an assertion that this was Rothery's fault. Kim's "complex" about his educational background was clearly an impediment to the line of questioning about his schooling; his assertion that he was "not there for questioning" evidenced an overall reluctance to cooperate with the proceedings. Kim's anger increased dramatically as Rothery began questioning him specifically about the design on the lighter, perhaps because of the length of the proceeding, or perhaps because of the sensitive nature of that topic. Whatever the reason, his total refusal to continue prevented plaintiff from fully examining that important area of the witness's knowledge.

Defendant, in its memorandum, cites cases for the proposition that if a party is responsible for the unavailability of a witness for cross-examination, then a Court should not bar that testimony on 804(b)(1) grounds. Def. Mem. at 36. While this proposition is correct, the cases cited by defendant in no way support the application of that rule to this situation. In one of those cases, the witness failed to appear because the defendant aided the witness, his codefendant, in absconding. *United States v. Smith, 792 F.2d 441 (4th Cir. 1986),* [*18] *cert. denied, 479 U.S. 1037 (1987).* In the other case, the witness's testimony was admitted because a threat of lethal violence by the defendant had caused the witness to refuse to make himself available for cross-examination by the defendant. *Rice v. Marshall, 709 F.2d 1100 (6th Cir. 1983), cert. denied, 465 U.S. 1034, 79 L. Ed. 2d 703, 104 S. Ct. 1304 (1984).* The case at bar in no way resembles those cases.

Taking another tack, defendant responds to plaintiff's objection that it was unable to cross-examine Kim meaningfully concerning his 1990 notebook and the earlier design of the turbo lighter by declaring: "As to several of these allegedly precluded areas of examination, the record evidence shows plaintiff's claims to be sham, that plaintiff did, in fact, examine Kim on them, completed that portion of the examination, and moved on to another subject." Def's Mem. at 32. This assertion would be far more compelling, however, had defense counsel not stated, on the deposition record, "You haven't asked him a single question about his notebook or not a single question about the design of the lighter." Tr. at 105. Defendant cannot have it both ways. If Rothery's questioning [*19] covered those topics in depth, defendant cannot argue that plaintiff's counsel drove Kim from the deposition with irrelevant, abusive, or repetitive questioning. If, on the other hand, plaintiff had not yet asked a single question about the crucial topics of the notebook and the early lighter designs shortly before Kim ended the deposition, then defendant cannot now assert that plaintiff had a meaningful opportunity to cross-examine. As the foregoing analysis demonstrates, neither extreme position is entirely accurate. But the totality of circumstances persuades me that plaintiff was denied a full opportunity to conduct a meaningful cross-examination of a crucial witness.

CONCLUSION

The witness's departure from the deposition deprived plaintiff of a meaningful opportunity to cross-examine him on certain crucial aspects of this case. I therefore grant plaintiff's *in limine* motion to exclude the deposition testimony under *Fed. R. Evid. 804(b) (1).*

Because I find the plaintiff's lack of opportunity for meaningful cross-examination to be dispositive of this

motion, the Court need not reach the second ground for the motion, defendant's alleged refusal to produce documents related **[*20]** to the deposition. The deposition testimony will be excluded on the motion's first ground only.

It is SO ORDERED.

Dated: New York, New York

October 6, 1995

CHARLES S. HAIGHT, JR.

U.S.S.D.J.