UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| IN RE PE CORPORATION<br>SECURITIES LITIGATION | : MASTER FILE NO.<br>: 3:00CV 705 (CFD)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: NOVEMBER 8, 2004 |

**MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL
DEPOSITION TESTIMONY OF DR. FRANCIS COLLINS**

The United States, acting by and through the Department of Health and Human Services, files this memorandum in opposition to the plaintiffs' motion to compel the deposition testimony of Dr. Francis Collins. The United States is not a party to the above captioned litigation and appears herein through undersigned counsel solely for purposes of responding to the motion to compel. The procedural history of this matter is set forth both in the plaintiffs' Memorandum in Support with an attached Affidavit of Brian C. Fournier ("Fournier Aff.") including exhibits and in the defendants' Response and Partial Opposition to Plaintiffs' Motion to Compel and need not be fully repeated here. The defendants' opposition alleges that plaintiffs' memorandum mischaracterizes the procedural and factual record, that the proposed deposition of Dr. Francis Collins is unnecessary and duplicative discovery and that the motion to compel is untimely. Defendants' did not take a position on whether the Department of Health and Human Services ("DHHS") appropriately declined to make Dr. Collins available to be

1

deposed pursuant to its *Touhy* regulations. This memorandum takes up that issue and for the reasons set forth below requests the court to deny the motion to compel.

**Background**

The plaintiffs' requested to take the deposition testimony of Dr. Francis Collins, the Director of the Human Genome Research Institute ("NHGRI"), National Institutes of Health ("NIH"), Department of Health and Human Serivces ("DHHS"). A subpoena was served on Dr. Collins in July 2004 and the DHHS informed the plaintiffs in a letter dated August 6, 2004 that it would not permit the deposition of Dr. Collins. *See* Fournier Aff. Ex. C. Plaintiffs requested DHHS to reconsider its decision. *See* Fournier Aff. Ex. D. That request was denied on September 27, 2004. *See* Fournier Aff. Ex. F. Approximately two weeks later the plaintiffs filed the instant motion to compel, eight days before the extended October 20, 2004 discovery cut off. Defendants argue that the motion is untimely and the United States, as a non-party, does not take a position on that issue. Defendants also argue, however, that the motion seeks unnecessary and duplicative evidence, *see* Defendants' Response and Partial Opposition at 8, and since this is one of the reasons DHHS declined to make Dr. Collins available for a deposition it joins in the defendants' arguments on that issue.

The purported subject matter of the proposed deposition of Dr. Collins is a meeting which took place between representatives of the federally-funded Human Genome Project ("HGP") and PE Corp.- Celera Genomics Group ("Celera") on December 29, 1999. As defendants pointed out in their response, eight persons attended the meeting, four from the HGP and four from Celera. All four from Celera and two of the four from HGP (Dr. Robert Waterston and Dr. Harold Varmus) have already been deposed. There has also been extensive document

production consisting of e-mails and contemporaneous notes including those prepared by Dr. Collins. *See* Defendants' Response and Partial Opposition, at 8 and Ex. H. Plaintiffs have listed eight subjects about which they claim Dr. Collins has unique knowledge, *see* Plaintiffs' Memorandum at 10, but for the reasons set forth by defendants, Defendants' Response at 9-10, there is no support for the conclusion that Dr.Collins has discoverable evidence that "is unavailable by any other means."

The plaintiffs' request to take the deposition of Dr. Collins was made pursuant to the applicable DHHS regulations set forth at 45 C.F.R. Part 2. (copy attached as Exhibit 1). The DHHS regulations at issue in this case have the force of law. *See e.g. Swett v. Schenk*, 792 F.2d 1447, 1451 (9th Cir. 1986) (validly promulgated regulations have the force of law).[1] This type of regulation, which has been adopted by numerous federal agencies, has been repeatedly upheld by the courts. *See, e.g.*, *United States ex rel. Touhy v. Regan*, 340 U.S. 462, 468 (1951); *United States E.P.A. v. General Electric Co.*, 197 F.3d 592 (2d Cir. 1999) *opinion amended on reh'g*, 212 F.3d 689 (2d Cir. 2000); *Reynolds Metals Company v. Crowther*, 572 F.Supp. 288, 290 (D. Mass. 1982). As the Supreme Court stated in *Touhy*: "When one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged is obvious." *Touhy*, 340 U.S. at 468; *see also General Electric*, 197 F.3d at 596.

These so-called *Touhy* regulations, which are derived from the federal "housekeeping"

---

[1] Plaintiffs do not challenge the validity of the DHHS regulations pursuant to which Dr. Collins was directed not to testify.

statute, 5 U.S.C. §301, serve to: (1) minimize governmental involvement in matters unrelated to an agency's official business; (2) conserve governmental resources and minimize disruption of government business; and, (3) prevent subordinate agency employees from responding to inquiries which should be more properly directed to higher agency officials. *See Reynolds Metals* at 290; *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989) (citing *Reynolds Metals*); *Moore v. Armour Pharmaceutical Co.*, 129 F.R.D. 551, 554 (N.D. Georgia 1990).

The DHHS regulations require the party issuing a subpoena for the testimony of an agency employee to furnish the head of the operating division of the DHHS with a written summary stating the nature of the requested testimony, why the information sought is unavailable by any other means, and the reasons why the testimony would be in the interest of the DHHS or the federal government. *See* 45 C.F.R. § 2.4. In this case, the plaintiffs have not fulfilled the requirements of the DHHS regulations.

Compliance with the plaintiffs' subpoena also implicates the doctrine of sovereign immunity. It is long settled that the United States and its agencies are not subject to judicial proceedings unless there has been an express waiver of sovereign immunity. *See General Electric*, 197 F.3d at 597 (citing *Block v. North Dakota*, 461 U.S. 273, 287 (1983)(additional citations omitted)). As the Second Circuit noted, "[a] judicial proceeding is considered brought against the sovereign if the result could serve "to restrain the Government from acting, or to compel it to act." *General Electric*, 197 F.3d at 597 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). The Court further stated:

> [T]he only identifiable waiver of sovereign immunity that would permit a court to require a response to a subpoena in an action in which the government is not a party is found in the [Administrative Procedures Act]. We have already noted that

4

> the government may not be subject to judicial proceedings unless there has been an express waiver of sovereign immunity. The rules governing discovery and the issuance of subpoenas duces tecum for the production of documents by third parties include no express waivers of the type necessary to subject the government to compulsion in judicial proceedings to which it is not a party.

*General Electric*, 197 F.3d at 598. The Court concluded that the only express waiver in this regard is found in the APA, 5 U.S.C. § 702, which allows final agency actions to be reviewed by a federal court if there is a claim that an agency or employee thereof acted or failed to act in an official capacity or under color of legal authority, and no money damages are sought. *General Electric*, 197 F.3d at 598. *See also In re Complex Blood Bank Litigation*, 812 F. Supp. 160,162 n.1 (N.D. Cal. 1991). *Moore v. Armour Pharmaceutical Co.*, 129 F.R.D. at 554.

In this case, the plaintiffs' motion seeks to compel the Government to act by authorizing Dr. Collins to testify, thus invoking sovereign immunity. To the extent that this Court construes the motion to compel as an appropriate vehicle for bringing this issue to the Court, *see General Electric*, 197 F.3d at 599, the Government submits that the appropriate standard of review to be applied by this Court is the standard established by the APA, 5 U.S.C. § 706(2)(A), whether the Department of Health and Human Service's action in not authorizing the testimony of Dr. Collins was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *General Electric*, 212 F.3d 689, 690 (2d Cir. 2000); *Cleary, Gottlieb, Steen & Hamilton v. Dept of Health and Human Services*, 844 F. Supp. 770, 783 (D.D.C. 1993); *see also Moran v. Pfizer, Inc.*, 2000 WL 1099884 at * 2, n.1 (S.D.N.Y. August 4, 2000) (attached hereto).

Under this standard, an agency's decision must be given substantial deference, the court may not substitute its judgment for that of the agency, and the party alleging the irregularity has the burden of proof. *Cleary, Gottlieb*, 844 F. Supp. at 783; *Moran,* 2000WL 1099884 at *2

5

(citations omitted)). Pursuant to this limited review, it is clear that the Department of Health and Human Service's action in refusing to allow Dr. Collins to testify was in accordance with its regulations and was wholly appropriate. In their motion to compel, plaintiffs did not argue that the actions of the Department of Health and Human Services were unlawful under the APA. Rather, the plaintiffs rely on a line of cases to support their position that the *Touhy* regulations are subject to the general discovery powers of the court under the Federal Rules of Civil Procedure. *See* Plaintiffs Memorandum In Support at 6-7.

As noted above, under 45 C.F.R. § 2.4(a) a party requesting testimony of a Department of Health and Human Services employee must state the nature of the requested testimony, why the information sought is unavailable by any other means, and the reasons why the testimony would be in the interests of the Department of Health and Human Services or the federal government. In making their request the plaintiffs stated that the nature of the requested testimony from Dr. Collins concerned his role in the negotiations between Celera and the Human Genome Project to collaborate in their efforts to sequence the human genome map, including his participation in the meeting on December 29, 1999. The nature of the testimony sought is clear; what is less clear is whether the requested testimony is necessary to their case, whether it is available from another source and why it is in the interests of the government to allow such testimony.

In the letter dated August 6, 2004 Raymond S. Kingston, M.D., Ph. D., Deputy Director of the National Institutes of Health, denied the plaintiffs' request for Dr. Collins' testimony for several reasons. *See* Fournier Aff. Ex. C. First, it was noted that the Government is not a party to this litigation and views this dispute as a private matter between the plaintiffs and the defendants. This is a shareholder's action filed in accordance with the applicable federal

securities law. Plaintiffs do not allege that NIH played any role in the alleged misrepresentations to Celera shareholders. Therefore, any role requested of NIH in connection with this lawsuit should be appropriately limited.

Second, the plaintiffs failed to make a sufficient case under the regulations as to why the NIH should make Dr. Collins available. The plaintiffs were advised that their letter of request, *see* Fournier Aff. Ex. B, failed to sufficiently explain why the information sought from Dr. Collins was not available through other means, nor did the plaintiffs make a persuasive case that it would be in the interests of DHHS or the government for Dr. Collins to testify. Although the decision did not dispute that Dr. Collins participated in various discussions and meetings with Celera representatives concerning the Human Genome Project, it was noted that he was not the only participant able to testify as to the content of those discussions and meetings. Finally, as noted above, NIH was in the process (now completed) of providing numerous documents in response to both a FOIA request and a federal subpoena which would serve to appropriately document the NIH's involvement in the subject at issue. *See* Fournier Aff. Ex. C.

After the request for Dr. Collins to testify was denied, the plaintiffs sought reconsideration of that decision in a letter dated August 20, 2004. *See* Fournier Aff. Ex. D. The request for reconsideration continued to argue that Dr. Collins was the most knowledgeable person on behalf of HGP involved in the negotiations with Celera and attempted to explain why the testimony sought from Dr. Collins was not available through any other means. Plaintiffs' counsel explained that although he was able to depose another individual, Robert Waterston, M.D., Ph.D., who was also involved in the subject negotiations, he was unable to get all of the information he sought from that witness. Plaintiffs' counsel further noted that at his deposition

"Dr. Waterston often deferred to the knowledge of others at the [subject] meeting concerning key aspects of the negotiations relevant to plaintiffs' claims." Plaintiffs' counsel also indicated that ". . . although Dr. Waterston's contemporaneous notes of the December 29, 1999 meeting indicate that the parties discussed whether an announcement should be made to the public concerning the December 29, 1999 meeting, [the witness] could not recall any details of the discussion." *See* Fournier Aff. Ex. D.

Subsequent to the request for reconsideration but prior to the denial of that request in a letter dated September 27, 2004 DHHS did allow plaintiffs to depose Harold Varmus, M.D., the former Director of the National Institutes of Health, concerning his official involvement in the subject negotiations. Dr. Varmus was present for at least one of the meetings in question and was the Director of the National Institutes of Health at the onset of these negotiations and participated in a private capacity after he left NIH. Plaintiffs did not mention the deposition testimony of Dr. Varmus taken on September 15, 2004 in a subsequent letter they sent to DHHS dated September 27, 2004 in further support of their request for reconsideration. See Fournier Aff. Ex. E. The request for reconsideration was denied for essentially the same reasons as the original denial. *See* Fournier Aff. Ex. F. The decision denying reconsideration noted that nothing in plaintiffs' request for reconsideration explained why Dr. Collins would have any better memory of the events than other individuals who had already testified (ie. Dr. Waterston or Dr. Varmus). The denial of the request for reconsideration also observed that it appeared that the plaintiffs desired to depose every federal official that participated in the HGP/Celera negotiations. "If NIH were to allow this to happen in every case in which NIH was not a party and in which every plaintiff or defendant believed NIH could be helpful, it would become

8

increasingly difficult for us to effectively and effeciently conduct NIH official business." *See* Fournier Aff. Ex. F

**Argument**

There were a number of other individuals involved in the negotiations and at the December 29, 1999 meeting who have or could provide the information sought. Furthermore, the documents obtained by the plaintiffs under the Freedom of Information Act and through other subpoenas should serve to appropriately document the role of NIH in the negotiations and meetings. Nevertheless, plaintiffs have sought the testimony of each and every participant in the negotiations whether or not they have any new or unique information to provide. This is exactly what the *Touhy* regulations were designed to prevent– overburdening the government with requests to provide testimony in private matters in which the government does not have an interest and for which testimony or evidence is otherwise available.

In *Moran v. Pfizer*, 2000 WL 1099884 (S.D.N.Y. August 4, 2000) the court considered the *Touhy* regulations of the Food and Drug Administration, 21 C.F.R. § 20.1 which are similar to those of DHHS. The Court recognized that the issuance of subpoenas to agency employees puts an undue demand on the resources of the agency. Moreover, "Courts have regularly held that the public interest in insuring that agency employees spend their time doing the agency's work is a valid reason to decline to comply with a subpoena." (Citations omitted) *Moran v Pfizer,Inc.*, 2000 WL 1099884 *3. In the *Moran* case the plaintiffs relied on *In re U.S. Bioscience Sec. Litig.*, 150 F.R.D. 80 (E.D. Pa. 1993) but the court found the case distinguishable. *Bioscience* was a securities fraud action in which the issue was what Bioscience had been told by the FDA concerning the possible approval of a new drug. The court in *Moran*

noted that the court in *Bioscience* required the FDA employees to testify because they were the only independent sources for discovery and evidence on the crucial issue. "Thus, in *Bioscience*, the FDA employees were being called as fact witnesses with unique knowledge about an event that was central to the litigation." *Moran*, 2000WL 1099884 at *3. In *Moran*, however, the FDA witnesses were being called as experts to render opinions which had not been shown to be unique to the FDA witnesses. In the instant case plaintiffs have not adequately demonstrated that Dr. Collins has unique knowledge about an event central to this litigation. Others have already testified about the negotiations and meetings. The Defendant's Response and Opposition at page 9 has already outlined why the plaintiffs claims regarding Dr. Collins' unique knowledge and leading role are without foundation and that argument in incorporated herein.

  Although the request for the deposition testimony of Dr. Collins was denied both initially and upon reconsideration, the testimony of Dr. Varmus, the former Director of NIH, was allowed. This was a recognition by DHHS that NIH should provide some insight into its role in the negotiations and meetings with Celera but without any disruption of government business since Dr. Varmus was by then no longer a federal employee and no longer had government business to attend to. Dr. Collins, on the other hand, was and remains an NIH employee and was at the time of the negotiations and meetings a subordinate of Dr. Varmus. It is one of the recognized purposes of Touhy regulations that subordinate agency employees should not be required to respond to requests for testimony when such requests should more properly be directed to higher agency officials. *See infra.* at 3-4, *Reynolds Metals*, 572 F. Supp. 228,290; *Boron Oil Co.*, 873 F.2d 67,70.

  The decision made by NIH Deputy Director Kingston not to allow Dr.Collins to testify

was a rational decision which considered all of the relevant factors. "Unfortunately for the plaintiff, meeting the requirements of *Section 2.4(a)* does not automatically trigger the approval of the requested testimony, but merely indicates that an applicant has reached a minimal threshold for agency determination." *Cleary, Gottlieb*, 844 F. Supp. at 784. Just as in *Cleary* it was well within the discretion of the designated agency official in the instant case to conclude that allowing the requested testimony would compromise the impartiality of the agency and disruptive of the agency's official duties.

## CONCLUSION

In view of the foregoing, the DOL respectfully requests that this court deny the plaintiffs' motion to compel and quash the subpoena served upon Dr. Collins.

>Respectfully submitted,
>KEVIN J. O'CONNOR
>UNITED STATES ATTORNEY
>
>
>JOHN B. HUGHES
>ASSISTANT U.S. ATTORNEY
>157 CHURCH STREET
>NEW HAVEN, CT  06510
>(203) 821-3700
>FED. BAR NO. ct05289

Of Counsel:
Patricia A. Kvochak, Esq.
Paul J. Robertson, Esq.

## CERTIFICATION

      I hereby certify that a copy of the foregoing Memorandum In Opposition To Motion To Compel was mailed postage prepaid this _____ day of November, 2004 to the following:

Sanford P. Dumain, Esq.
Lee A. Weiss, Esq.
Carlos A. Ramirez, Esq.
Milberg Weiss Bershad & Schulman LLP
One Penn Plaza - 49th Floor
New York, NY 10119

David A. Slossberg
Brian C. Fournier
147 North Broad Street
P.O. Box 112
Milford, CT 06460
.
Robert A. Bourque, Esq.
William M. Regan, Esq.
Laura D. Murphy, Esq.
Simpson, Thacher & Bartlett, LLP
425 Lexington Avenue
New York, NY 10017

Stanley A. Twardy, Jr., Esq.
Thomas D. Goldberg, Esq.
Terence J. Gallagher, Esq.
Day, Berry & Howard, LLP
One Canterbury Green
Stamford, CT 06901

 

                                                                                                    _____
                                                  John B. Hughes
                                                  Chief, Civil Division
                                                  Federal Bar #Ct05289
                                                  U.S. Attorney's Office
                                                  P.O. Box 1824
                                                  New Haven, CT 06510
                                                  (203) 821-3700