UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PE CORP. SECURITIES LITIGATION ) ) ) | ) MASTER FILE NO. 3:00 CV 705 (CFD) ) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS ) ) ) | ) NOVEMBER 19, 2004 ) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL THE TESTIMONY OF DR. FRANCIS COLLINS**

Plaintiffs respectfully submit this memorandum in further support of their motion to compel the deposition of Dr. Francis Collins and in reply to the opposition memoranda filed by defendants and the Department of Health and Human Services (the "DHHS").

## INTRODUCTION

Dr. Francis Collins was unquestionably the lead negotiator for the Human Genome Project (the "HGP") in its negotiations with Celera Genomics Group, which underlie this securities class action. Nevertheless, both the DHHS and defendants seek to convince this Court that Dr. Collins' testimony is duplicative of that of other witnesses. Moreover, the government misstates the law in this Circuit concerning the standard applicable on this motion. However, under any conceivable standard, plaintiffs should be permitted to depose Dr. Collins.

As demonstrated below, the government's position that Dr. Collins' testimony is duplicative, which it does not even attempt to support with a single piece of documentary evidence, is untenable for at least the following reasons:

- Plaintiffs have not deposed a single government employee in this litigation; and, the only former government employee deposed by plaintiffs has not worked for the government for nearly 5 years.

- Plaintiffs have only deposed two participants in the HGP, each of which deferred to Dr. Collins' knowledge regarding important issues in this case.

- In addition to taking the lead at the December 29, 1999 meeting among the parties, Dr. Collins was the lead participant for the HGP in the following key

events related to the meeting: (1) an e-mail exchange between Dr. Collins and Celera's Dr. Venter regarding the agenda for the meeting; (2) an e-mail exchange with Celera regarding how the parties should respond to inquiries regarding the meeting; and (3) post-December 29, 1999 negotiations with Celera that culminated with Drs. Venter and Collins appearing together on the cover of *Time*.

Moreover, the need for minimizing the minor disruption of government business at issue here is far outweighed by the potential prejudice to the members of the putative class if the DHHS is permitted to hide behind its *Touhy* regulations. The slight burden to the government of a limited deposition of Dr. Collins (plaintiffs have always been willing to limit their deposition of Dr. Collins to less than 7 hours), pales in comparison to the fact that Dr. Collins' testimony could benefit the federal securities claims of thousands of individuals who purchased stock in Celera's secondary public offering. Thus, this Court should direct the DHHS to produce Dr. Collins for a deposition.

I.      **THE DHHS MAY NOT PREVENT PLAINTIFFS FROM OBTAINING EVIDENCE DISCOVERABLE UNDER THE FEDERAL RULES OF CIVIL PROCEDURE**

Relying on the Second Circuit's opinion in *United States EPA v. GE*, 212 F.3d 689, 691 (2d Cir. 2000) ("*GE II*"), the government argues that the Administrative Procedure Act of 1946 (the "APA") provides the appropriate standard of review to be applied on this motion, which it contends is "whether the Department of Health and Human Service's action in not authorizing the testimony of Dr. Collins was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Memorandum in Opposition to Motion to Compel Deposition of Dr. Francis Collins ("Govt. Opp.") at 5. However, in *GE II*, the Second Circuit expressly declined to decide whether the APA's standard of review should govern the district court's evaluation of the governmental agency's refusal to comply with the third-party subpoena at issue, and specifically noted that "a plausible argument can be made in support of the idea that Section 706 of the APA is not necessarily the appropriate standard of review." 212 F.3d at 690.

2

Recently, the Second Circuit held that "the question of whether APA § 706 governs courts' review of agency non-compliance with discovery requests – [is] a question which is, in any event, . . . *far from settled*." *Semon v. Stewart*, 374 F.3d 184, 192 (2d Cir. 2004) (emphasis added). The court went on to note that "some of our sister circuits have affirmatively held that APA § 706 does not apply to motions to compel agency compliance with subpoenas." *Id.* citing *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 778-79 (9th Cir. 1994). In *Exxon*, the Ninth Circuit Court stated:

> We acknowledge the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations. However, we are confident that district courts can, and will, balance the government's concerns under the general rules of discovery. The Federal Rules of Civil Procedure explicitly provide for limitations on discovery in cases such as this. Rule 26(c) and Rule 45(c)(3) give ample discretion to district courts to quash or modify subpoenas causing "undue burden."

Thus, on this motion, the Court need only balance plaintiffs' right to obtain relevant evidence pursuant to applicable federal discovery rules against the government's concerns relating to the potential disruption of Dr. Collins' official duties. As demonstrated below, and in plaintiffs' opening brief, this balance weighs heavily in favor of permitting Dr. Collins to testify.

## II.    DR. COLLINS POSSESSES RELEVANT, NON-DUPLICATIVE EVIDENCE

### A.    As The Leader of the HGP, Dr. Collins Possesses Unique Evidence

Dr. Collins was at all relevant times, and still is, the director of the National Human Genome Research Institute (the "HGRI"), which oversees the HGP. By the time of the negotiations between Celera and the HGP, Dr. Collins had been head of the HGP for 5 years. *See* James Shreeve, The Genome War, How Craig Venter Tried to Capture the Code of Life and Saved the World at 17 (Alfred A. Knopf) (2004) ("At the age of forty-three, [Dr. Collins] was enticed by the secretary of health and human services to leave his large, heavily funded laboratory at the University of Michigan and come to Bethesda, Maryland, to assume leadership of the Human Genome Project . . . ."). Affidavit of Brian C. Fournier in Support of Reply

3

Memorandum in Further Support of Plaintiffs' Motion to Compel The Testimony of Dr. Francis Collins ("FRA"), Ex. A.

Apart from his position, Dr. Collins' actions demonstrate that he was the lead negotiator for the HGP in its discussions with Celera, as he:

- Assisted in drafting a document entitled "Important Issues to be Negotiated," outlining what the HGP hoped to accomplish at the December 29 meeting, which he forwarded to the government's negotiating team prior to the meeting. FRA Ex. B.

- Set the HGP's agenda for the December 29 meeting. *Id.*

- Sent defendants the proposed December 29 meeting agenda and the "Shared Principles" document, and then communicated with Craig Venter by e-mail and telephone during the hours leading up to the meeting regarding Celera's concerns. FRA, Exs. C-D.

- Acted as the HGP's primary spokesperson at the December 29 meeting. FRA, Ex. E.

- Drafted a proposed press release announcing the collaboration discussions between Celera and the HGP, which was scheduled for release after the December 29 meeting. FRA, Ex. F.

- Engaged in a conversation with defendant Tony White on January 22, 2000, during which White reiterated Celera's demands that it receive commercial protection over its sequence data for at least 3 to 4 years. FRA, Ex. G.

- Drafted a detailed letter sent by the HGP to Celera on February 28, 2000, discussing the failed negotiations.

- Appeared on the cover of *Time* shoulder to shoulder with Craig Venter on the day that the White House announced that the first draft of the human genome map had been completed.

The e-mails produced in the litigation (which comprise the majority of the government's production), over 100 of which bear Dr. Collins' name, confirm that (i) almost all of the information concerning the negotiations that was shared among the HGP members either originated from, or were sent to, him, (ii) he was involved in coordinating every element of the negotiations with Celera, and (iii) most importantly for this motion, he engaged in discussions

4

with Celera officers concerning the potential collaboration, to which the other HGP deponents, Drs. Harold Varmus and Robert Waterston, were not privy.

In a highly analogous case, *In re United States Bioscience Securities Litigation*, 150 F.R.D. 80, 82 (E.D. Pa. 1993), the court compelled the depositions of three FDA employees that, similar to Dr. Collins, possessed evidence relevant to securities laws violations and who were "the only independent sources for discovery and evidence" on issues crucial to the litigation. The *U.S. Bioscience* court noted that because the "Bioscience representatives who were part of the communications with . . . three FDA employees have told, or will tell, their story in depositions and at trial, ***[i]n order to confirm the completeness and truthfulness of those accounts, the only possible test available to plaintiffs is to depose the FDA participants in those interchanges***." *Id.* at 82 (emphasis added). Here, Dr. Collins is the only representative of the HGP who was involved in all phases of the negotiations with defendants, and thus, the best witness to test the testimony of defendants' witnesses.

**B.    The Two Depositions Of Other HGP Participants in The Negotiations Confirm That Dr. Collins Possesses Non-Duplicative Discoverable Evidence**

The DHHS (and defendants) places undue emphasis on the fact that plaintiffs have already deposed two of the participants on the HGP side of the negotiations. *See* Govt. Opp. at 2; Defendants' Response and Partial Opposition to Plaintiffs' Motion to Compel the Deposition of Francis Collins ("Def. Resp.") at 9. However, Dr. Varmus, whom plaintiffs were permitted to question for only three hours, was principally deposed concerning his conversations with Dr. Arnie Levine, a member of the Celera Scientific Advisory Board, who was involved in the negotiations with the HGP. Moreover, Dr. Varmus confirmed that, unlike Dr. Collins, he was not involved at the outset of the negotiations, (Varmus Transcript at 46-47 (FRA, Ex. H) and that he was principally involved in the negotiations because of his relationship and frequent contacts with Dr. Levine. *Id.* at 69-70.

5

The other HGP witness, Dr. Waterston, was deposed largely because during the negotiations he expressed strong opinions about the efficacy of Celera's sequencing methodology -- another issue relevant to plaintiffs' claims. However, when he was questioned about issues relating to the HGP/Celera negotiations that were unrelated to science, Dr. Waterston responded, "I'm not very good at remembering specific things. I purged them from my memory and try to remember the science." Waterston Transcript at 77-78 (Affidavit of Brian C. Fournier in Support of Motion to Compel Deposition Testimony of Dr. Francis Collins (the "FA", Ex. G.[1]

### III. ALTHOUGH NOT THE STANDARD IN THE SECOND CIRCUIT, PLAINTIFFS HAVE ESTABLISHED THAT THE DHHS'S ACTIONS WERE ARBITRARY AND CAPRICIOUS

While the law in this Circuit does not require plaintiffs to demonstrate that the DHHS's decision not to produce Dr. Collins was arbitrary and capricious, plaintiffs can readily satisfy this standard as the decision was clearly not based on a consideration of all of the relevant facts presented by plaintiffs in their *Touhy* request. Those facts, which included, among other things, that Dr. Collins was involved at the highest levels of the negotiations at issue in this case and possessed more knowledge concerning the negotiations than anyone else affiliated with the HGP, amply established that Dr. Collins possessed evidence that cannot be obtained by any other means.

In rejecting plaintiffs' requests to depose Dr. Collins, the DHHS failed to articulate any factual findings, let alone explain a rational connection between any such findings and its decision to deny plaintiffs' requests. Instead, the DHHS merely offered conclusory, boilerplate

---

[1] The government also implies that because plaintiffs have deposed Dr. Collins' superior at the NIH, Dr. Varmus, their motion to compel should be denied. Govt. Opp. at 10. However, this action specifically concerns the HGP, for which Dr. Collins had primary responsibility. Thus, the fact that Dr. Varmus was superior to Dr. Collins at the NIH is irrelevant. Moreover, because Dr. Varmus was in the process of leaving the NIH during the months leading up to the meeting and was, in fact, no longer Director of the NIH after December 31, 1999, his involvement in the negotiations, and their aftermath, was very limited. Varmus Transcript at 23-24 (FRA, Ex. H).

6

reasons for its decision. FA, Ex. C. For example, in its original denial letter, the DHHS based its decision, in part, on (i) the fact that the litigation was a "private matter" between the parties, and (ii) that plaintiffs had not "made a persuasive case that it would be in the interests of the Department for Dr. Collins to testify." FA, Ex. C. These reasons are insufficient to deny a party's *Touhy* request in the context of shareholder class actions. For example, in *U.S. Bioscience*, the court disagreed with the FDA's "caricaturing" of plaintiffs' securities class action by referring to it as merely a "private lawsuit," emphasized the Supreme Court's traditional view of such actions,[2] and further noted:

> While it is certainly true that these actions involve claims by shareholders of U.S. Bioscience, all private citizens, for large losses they have incurred, it is also true that the interest they seek to vindicate are those that Congress has regarded as very much in the federal public interest. ***Put another way, the 'public interest' does not exist in a vacuum, isolated at the FDA's offices in Rockville, Maryland. The 'public interest' also includes the Congressionally-mandated assurance of the integrity of the public securities markets that are so crucial to the nation's economic well-being. This issue is most assuredly involved here.***

*Id.* (emphasis added) (internal citations omitted). Accordingly, because the present litigation seeks to enforce the federal securities laws, the DHHS's characterization of the suit as merely a "private matter" that serves no public interest was arbitrary and capricious.

Additionally, the DHHS states in its denial letter that documents produced by the DHHS Office of General Counsel and the NIH under the Freedom of Information Act will serve to appropriately document the Government's involvement in the subject at issue. Govt. Opp. at 9 (citing FA, Ex. C). However, any documents produced by these agencies cannot be introduced as evidence at trial if they are not authenticated. Similarly, plaintiffs are entitled to have the documents' contents and meaning explained by their author, Dr. Collins. In addition, the 182

---

[2] "Moreover, we repeatedly have emphasized that implied private actions provide 'a most effective weapon in the enforcement' of the securities laws and are a 'necessary supplement to [Securities and Exchange] [sic] Commission action." *Id.* at 82 citing *Bateman Eichler, Hill, Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985).

pages of documents produced by the NIH under the Freedom of Information Act are so heavily redacted that they have lost almost all evidentiary value.[3]

Moreover, the DHHS's unsupported assertion that "it appeared that the plaintiffs desired to depose every federal official that participated in the HGP/Celera negotiations" (Govt. Opp. at 8), is plainly untrue. While Dr. Collins was the lead representative for the HGP, there were numerous individuals affiliated with the HGP who were involved in formulating the HGP's position in its negotiations with Celera. For example, an e-mail from Dr. Collins, which discusses the "next steps in exploring a collaborative effort with Celera," is addressed to 10 individuals affiliated with the HGP. *See* FRA Exh. F. However, during discovery, plaintiffs limited their depositions of HGP participants to Drs. Varmus and Waterston.

Finally, the general risk cited by the government that, "[I]f NIH were to allow [the plaintiffs to depose every federal official involved in the negotiations] to happen in every case in which NIH was not a party and in which every plaintiff or defendant believed NIH could be helpful, it would become increasingly difficult for us to effectively and effeciently [sic] conduct NIH official business," has no relevance here. Govt. Opp. at 8 (citing FA, Ex. C). To date, plaintiffs have not deposed a single current DHHS employee. Besides Dr. Collins, the only other person for whom plaintiffs sought permission from the DHHS to depose, Dr. Varmus, has not been employed by the DHHS for five years. Thus, the DHHS is exaggerating the potential disruption to its official business that is at issue on the motion.[4]

---

[3] The NIH withheld an additional 179 pages worth of responsive documents in their entirety, as "pre-decisional."

[4] The DHHS implies that plaintiffs are only entitled to depose one DHHS representative. Govt. Opp. at 8-10. While there is no authority for this position, if plaintiffs had been told at the outset that they would be allowed depose only one individual from the DHHS, there can be no doubt that they would have opted to take the deposition of Dr. Collins, as he is clearly the most knowledgeable person concerning the subject negotiations.

8

IV.     THE GOVERNMENT'S "AUTHORITY" IS INAPPLICABLE

The cases relied upon by the government in arguing that the DHHS's denial of plaintiffs' request to depose Dr. Collins was proper are readily distinguishable. In *Moran v. Pfizer*, 99-9969 (WHP) (HBP), 2000 U.S. Dist. LEXIS 11039, *7 (S.D.N.Y. Aug. 3, 2000), plaintiffs were not seeking to call government employees as fact witnesses, as plaintiffs seek to do here. Instead, plaintiffs were attempting to obtain expert testimony from several FDA employees. Moreover, *Moran* supports plaintiffs' position, as there the court stated that a government employee may be properly compelled to testify when he or she possesses "unique knowledge about an event central to the litigation." *See Id.* at 8-9.

The cases cited by defendants are similarly inapplicable. In those cases, courts were reluctant to compel the testimony of government officials who possessed knowledge concerning matters that many government agencies, such as the Occupational Safety and Health Administration, the Environment Protection Agency and the Center for Disease Control, routinely collect in carrying out their official investigative duties. As explained by one court:

> Because of the nature of the programs it administers and enforces, OSHA is particularly vulnerable to the demands of private parties seeking information acquired as a result of official investigations concerning industrial accidents and other mishaps in the workplace. If OSHA employees were routinely permitted to testify in private civil suits, significant loss of manpower hours would predictably result.

*Reynolds Metals Co. v. Crowther*, 572 F. Supp. 288, 290 (D. Mass. 1982); *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989) (same).[5] Conversely, the present motion seeks the testimony of only one individual concerning a unique issue, which is central to the case, and about which the prospective deponent has first-hand knowledge. There is no danger that permitting plaintiffs to depose Dr. Collins will expose the DHHS to a flood of similar requests.

---

[5] *See also Moore v. Armour Pharma. Co. v. Cutter Lab.*, 129 F.R.D. 551, 555 (N.D. Ga. 1990) (noting that given the proliferation of AIDS-related litigation, "there is no reason to believe that granting this request would not result in an onslaught of subpoenas served on the CDC requesting testimony by CDC employees on AIDS-related issues").

9

## V. PLAINTIFFS' MOTION IS TIMELY

Defendants' argument that the present motion is untimely (Def. Resp. at 6-8), for which they do not provide any support, is without merit.[6] First, Dr. Collins was served with a subpoena in July 2004 -- 3 months prior to the discovery cut-off. Second, from the time the subpoena was served, plaintiffs worked diligently to comply with the relevant federal regulations concerning obtaining testimony from federal employees and sought to resolve this issue with the government without the need for motion practice. Third, plaintiffs did not receive all of Dr. Collins' documents until September 23, 2004. Finally, plaintiffs filed this motion prior to the discovery cut-off, and included requests for an expedited briefing schedule and an extension of the discovery cut-off for the limited purpose of taking Dr. Collins' deposition.

## CONCLUSION

Based on the foregoing, plaintiffs respectfully request that the Court grant their motion to compel the testimony of Dr. Francis Collins.

> HURWITZ, SAGARIN & SLOSSBERG, LLC
>
> BY /s/
> David A. Slossberg (CT13116)
> Brian C. Fournier (CT16272)
> 147 North Broad Street
> Milford, CT 06460
> Telephone: (203) 877-8000
> Fax: (203) 878-9800
>
> **MILBERG WEISS BERSHAD
>   & SCHULMAN LLP**
> Sanford P. Dumain (CT08138)
> Lee A. Weiss (CT21345)
> Carlos F. Ramirez (CT25340)
> One Pennsylvania Plaza
> New York, NY 10119
> Telephone: (212) 594-3000

---

[6] Defendants also argue that plaintiffs have mischaracterized the factual record. Def. Resp. at 2-6. However, this argument is only supported by the testimony of their own witnesses and their self-serving interpretation of the documents. If anything, defendants' response illustrates the need for Dr. Collins' testimony so that plaintiffs can properly test defendants' witnesses' accounts of the negotiations. *See U.S. Biosciences*, 150 F.R.D. at 82.

10

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Reply Memorandum in Further Support of Plaintiffs' Motion to Compel the Testimony of Dr. Francis Collins was served by facsimile, and first class mail, on November 19, 2004, on the following:

| | |
|---|---|
| Stanley A. Twardy, Jr., Esq.<br>Thomas D. Goldberg, Esq.<br>Terence J. Gallagher, Esq.<br>Day, Berry & Howard LLP<br>One Canterbury Green<br>Stamford, CT 06901<br><br>Counsel for Defendants | Michael J. Chepiga, Esq.<br>Robert A. Bourque, Esq.<br>William M. Regan, Esq.<br>Laura D. Murphy, Esq.<br>Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, NY 10017<br><br>Counsel for Defendants |

_____
Brian C. Fournier