LEXSEE 2000 USDISTLEXIS 4081

FRANK BORGOGNONE, Plaintiff, -against- TRUMP PLAZA, TRUMP PLAZA HOTEL & CASINO, TRUMP PLAZA HOTEL & CASINO d/b/a THE BOARDWALK at MISSISSIPPI AVE., Defendants.

98-CV-6139 (ILG)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

2000 U.S. Dist. LEXIS 4081; 54 Fed. R. Evid. Serv. (Callaghan) 238

March 9, 2000, Decided

**DISPOSITION:** [*1] Defendants' motions to exclude expert testimony and for summary judgment granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For FRANK BORGOGNONE, Plaintiff: Kenneth F. Popper, Bayside, NY.

For TRUMP PLAZA, TRUMP PLAZA HOTEL & CASINO dba Boardwalk At Mississippi Ave., TRUMP PLAZA HOTEL & CASINO, dba The Boardwalk at Mississippi Avenue, Defendants: Alan D. Kaplan, Amy L. Ruira, Esq., Gallagher, Gosseen, Faller, Kaplan & Crowley, Garden City, NY.

**JUDGES:** I. Leo Glasser, U.S.D.J.

**OPINIONBY:** I. Leo Glasser

**OPINION:**

MEMORANDUM & ORDER

GLASSER, United States District Judge:

Plaintiff brings this negligence action seeking compensation for injuries he allegedly suffered as a result of his slip and fall in a shower stall at a hotel and casino owned by defendants. The defendants have moved to exclude certain expert testimony, and also for summary judgment. For the reasons that follow, the defendants' motions are granted.

BACKGROUND

On April 26, 1997, at around 4:00 p.m., plaintiff presented himself at the health spa located on the premises of the Trump Plaza Hotel and Casino in Atlantic City, New Jersey, to receive a massage for which he had a prior appointment. Upon arrival he was provided with a locker assignment, a robe, and a pair of rubber slippers. Plaintiff undressed, donned the robe and slippers, took steam, sat in a jacuzzi, and finally received his massage. (Borgognone Dep., Pl. Exh. C at 16-18.)

After the massage, he walked over to the showers, still wearing the robe and slippers provided by the spa. (Id. at 19.) Arriving at one of the [*2] shower stalls, plaintiff stepped onto a small ledge setting the stall apart from a common area. As he did so, he fell, injuring himself. (Id. at 20-21, 25).

Borgognone does not recall whether he was wearing the slippers as he stepped into the shower. (Id. at 23.) He does not recall which foot he slipped on. (Id. at 25.) He does not remember the color of the tile on the shower floor where he fell, or whether there was a mat or towel on the floor outside the shower stall. (Id. at 26-27.) Borgognone cannot remember whether any of the tiles in the shower stall were cracked, whether there was soap, shampoo, or any other substance on the floor of that stall, or whether he turned the water on in the shower stall before falling. (Id. at 28, 29-30.) He does recall that the floor in the area where he fell was "wet." (Id. at 28.) Plaintiff also claims that upon a subsequent visit to the spa, he noticed that abrasive strips had been applied to the shower stall step where he had slipped, which had not been there on the day of his accident. (Id. at 34.) n1

Case 3:00-cv-00705-CFD    Document 129-8    Filed 02/03/2005    Page 2 of 7

Page 2
2000 U.S. Dist. LEXIS 4081, *; 54 Fed. R. Evid. Serv. (Callaghan) 238

n1 Accepting the plaintiff's assertion as true, it should be noted that evidence of repairs made after an accident is inadmissible if offered as an admission of negligence or culpability in causing the injury, because the inference is unjust, and public policy forbids it. See, e.g., *Columbia & P.S.R. Co. v. Hawthorne*, 144 U.S. 202, 207, 36 L. Ed. 405, 12 S. Ct. 591 (1892) (noting that in most states evidence of subsequent remedial measures "is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendant"); *Perry v. Levy*, 87 N.J.L. 670, 672, 94 A. 569 (E. & A. 1915) (observing that the "reason for the rule is declared to be that the effect of declaring [evidence of subsequent remedial measures] competent would be to inform a defendant that, if he makes changes or repairs, he does it under a penalty, for, if the evidence is competent, it operates as a confession that he was guilty of a prior wrong"); *Morse v. Minneapolis & St. L. Rv. Co.*, 30 Minn. 465, 468-69, 16 N.W. 358 (1883) (observing that a rule allowing evidence of subsequent remedial measures "puts an unfair interpretation upon human conduct and virtually holds out an inducement for continued negligence").

[*3]

After being attended to by Ed Nawrocki, a Trump Plaza employee working at the spa that day, Borgognone, walking under his own power, was escorted by a security guard to a nurse on duty at the hotel, and offered Tylenol for pain he was complaining of. (Parlin Dep., Pl. Exh. D at 11-12; Borgognone Dep., Pl. Exh. C at 35-39.) That evening he attended a boxing match at the casino, and returned to New York the next day, in accord with previous plans. (Borgognone Dep., Pl. Exh. C at 39-42.)

Plaintiff recalls being told by Ed Nawrocki, a Trump Plaza employee working at the spa that day, and the first person to attend to him after the accident, that "a lot of people" had fallen in the shower area before him. (Id. at 33, 36). For his part, Nawrocki states that in six years working at Trump, he is unaware of any other slip-and-fall incident in the vicinity of the shower stalls other than plaintiff's accident. (Nawrocki Dep., Pl. Exh. E at 25.)

Stewart Parlin, a security guard employed by Trump Plaza, was summoned to the spa after the accident, and later filed a written report about it. Parlin testifies that he asked plaintiff whether he had been wearing the spa-issued slippers at the [*4] time of his fall, and that plaintiff replied that he had not been. (Parlin Dep., Pl. Exh. D at 12-13.) Nawrocki, the spa attendant, testifies that he believes that plaintiff's slippers were lying outside the stall when he first responded to plaintiff's cries for aid. (Nawrocki Dep., Pl. Exh. E at 27.) He also states that on the day of the accident a no-slip mat was placed at the entrance to the shower stall, and a towel underneath the mat to soak up water. (Id. at 17-20.)

Nawrocki says that at the time of plaintiff's accident the shower area was given a "major cleanup" once a week on Sunday night. (Id. at 12.) There was also a daily protocol for cleaning sinks and toilets, vacuuming rugs, and dusting, and it was part of Nawrocki's daily responsibilities to keep the showers free of debris, discarded clothing, and razors. (Id. at 13, 16, 34.)

In September of 1999, some two-and-a-half years after the accident, plaintiff's expert, Leonard Goldblatt, a licensed professional engineer, conducted an inspection of the shower area where the accident occurred, which formed the basis for an expert report here at issue both as evidence in opposition to the motion for summary judgment, [*5] and as the subject of a motion to exclude. Goldblatt's report concludes that plaintiff's accident may be ascribed to "improper construction and maintenance of incident location with absence of suitable handrails." (Pl. Exh. A, Goldblatt Report at 1.) Specifically, the report faults (i) the flooring of the common part of the shower area as "very slippery," and as "excessively sloped . . . in an area where it can be assumed that the tiles will be wetted by water, soap and oils"; (ii) an "unexpected change in floor height" between the common area and the stall; and (iii) a failure to warn regarding both of those hazards, as well as the need to wear slippers at all times. (Id. at 3, 7.) Goldblatt gratuitously maintains that the handrail in view at the time of his inspection between the common area and the stall was not in place at the time of the incident, but there is no basis for this assertion in the report, and it is contradicted by the testimony of Nawrocki. (Id.; Nawrocki Dep., Pl. Exh. E at 35-36.) Goldblatt also notes that "the generally low level of lighting" in the shower area obscures the discrepancy between the floor level in the common area and the stall. (Pl. Exh. [*6] A, Goldblatt Report at 4.) Finally, Goldblatt charges that the above-cited defects constitute violations of both state and municipal regulations. (Id. at 8-9.)

DISCUSSION

I. Defendants' Motion to Exclude Expert Testimony

Case 3:00-cv-00705-CFD    Document 129-8    Filed 02/03/2005    Page 3 of 7

Page 3
2000 U.S. Dist. LEXIS 4081, *; 54 Fed. R. Evid. Serv. (Callaghan) 238

Defendants move to exclude the testimony of plaintiff's expert, Leonard Goldblatt. It is appropriate for a district court to decide questions regarding the admissibility of evidence, including expert opinion evidence, on a motion for summary judgment. *Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)*. This is so because on a summary judgment motion, a "district court properly considers only evidence that would be admissible at trial." *Nora Beverages v. Perrier Group of America, 164 F.3d 736, 746 (2d Cir. 1998)*. Evidence contained in an expert's report must therefore be evaluated under *Fed.R.Evid. 702* before it is considered in a ruling on the merits of a summary judgment motion. If a proffer of expert testimony in the form of an expert report is excluded as inadmissible under Rule 702, the summary judgment determination is made on a record that does not include that evidence. *Raskin v. Wyatt Co., 125 F.3d 55, 66-67 (2d Cir. 1997)*. [*7]

A. Admissibility of Expert Testimony under Rule 702

*Federal Rule of Evidence 702* governs the admissibility of expert testimony, and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The Supreme Court has characterized the admissibility standard under Rule 702 as imposing a two-fold task of "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals. Inc., 509 U.S. 579, 597, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993)*. In applying this standard, "the district court functions as the gatekeeper for expert testimony." *Raskin, 125 F.3d at 66*. A district court should be particularly mindful of the relevance standard articulated by Daubert: "expert testimony which does not relate to any issue in the case is not relevant and ergo, non-helpful." *Daubert, 509 U.S. at 591*. The Court [*8] has also recently held that Rule 702 applies not only to scientific testimony but also to expert testimony based on technical or other specialized knowledge. *Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999)*.

In Daubert the Supreme Court articulated four factors pertinent to determining the reliability of an expert's reasoning or methodology: (i) whether the theory or technique relied on has been tested; (ii) whether the theory or technique has been subjected to peer review and publication; (iii) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation in the case of a particular scientific technique; and (iv) whether the theory or method has been generally accepted by the scientific community. *Daubert, 509 U.S. at 593-94*. In Kumho Tire, the Court emphasized that this list is non-exclusive, and its application must be flexible -- particularly where, as here, the proffered testimony is based on "technical" or "other specialized" (rather than "scientific") knowledge. *Kumho Tire, 526 U.S. at 141*.

Expert engineering [*9] testimony may rest on scientific foundations, the examination of which invokes the Daubert factors directly, but may also rest on the personal knowledge or experience of the engineer. *Kumho Tire, 526 U.S. at 150*. In the latter cases, the Daubert factors may nevertheless be useful in the assessment of reliability. It may, for example, be appropriate for the trial judge to ask "how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community." *Kumho Tire, 526 U.S. at 151*.

B. Admissibility of Goldblatt's Proffered Testimony

Plaintiff's expert Goldblatt has a Bachelor of Science in Civil Engineering from NYU, and is a professional engineer with an "active" license to practice his profession in New York, New Jersey, and Florida. (Pl. Exh. A.) His resume reflects professional experience as a forensic engineering consultant and investigator. At issue here are the reliability of the methods he brought to bear in preparing the report proffered by plaintiff in support of the allegations of negligence, and the basis for and relevance [*10] of his "opinions" to the plaintiff's assertion of how and where his injury allegedly occurred.

Goldblatt makes 11 discrete claims that may be deemed at issue on this motion to exclude his testimony: (i) the shower stall where plaintiff slipped and fell "is a hazard to pedestrians because of the biomechanics of pedal motion in the upright human" (Pl. Exh. A, Goldblatt Report at 6); (ii) because "human sensory functions degrade with aging," and because this degradation "affects the 'pattern of gait' in the elderly," the shower stall posed a particular risk to plaintiff, who was over sixty at the time of the accident (id.); (iii) the ceramic tiles making up the flooring in the incident stall is "very slippery," and untreated by certain "surface treatments . . . that could have served to prevent this incident" (id. at 7); (iv) "the 9% grade of the flooring at one location [of the shower area] . . . constitute[s] a slipping hazard" (id.); (v) at the stall where plaintiff fell

Case 3:00-cv-00705-CFD   Document 129-8   Filed 02/03/2005   Page 4 of 7

Page 4

2000 U.S. Dist. LEXIS 4081, *; 54 Fed. R. Evid. Serv. (Callaghan) 238

"the floor has three distinct vertical levels," posing an additional hazard to persons attempting to negotiate the entrance to the stall (id.); (vi) the shower area "is frequently used by individuals [*11] who had [sic] just undergone massage therapy during which body oils are used," thus exacerbating the slippery condition of the tile in the area (id.); (vii) at the time of the accident, there were no handrails mounted on the wall adjacent to the stall where the accident occurred (id.); (viii) there were no written instructions mounted in the shower area warning patrons against slippery conditions, and advising them to wear the slippers provided by the spa at all times (id. at 7-8); (ix) the shower area "was not well illuminated" (id. at 8); (x) the shower area was cleaned only once a week (id.); and (xi) the "improper maintenance of the shower room" constituted violations of three different provisions of applicable state and municipal ordinances (id.). These claims are assessed in turn under the standards of admissibility set forth above.

Goldblatt's first and second claims, touching respectively on the "biomechanics of human pedal motion," and on the effect of aging on "human sensory functions," are patently not within the purview of Goldblatt's expertise. Indeed, the mere statement of them calls into serious question his objectivity, and strongly suggests [*12] instead that Goldblatt has abandoned his obligation under Rule 702 to "assist the trier of fact" in favor of partisan advocacy on behalf of the plaintiff's cause. Moreover, Goldblatt's report says nothing about his methodology in arriving at these conclusions, making them incapable of evaluation under Rule 702. Thus, Goldblatt's testimony on these issues is excluded.

Goldblatt's third and fifth claims -- regarding the slipperiness of the tile flooring in the incident shower stall, and tiering of the floor levels at either side of the ledge that separates that stall from the general shower area -- are both based on Goldblatt's own direct observations and measurements, and are within the general purview of his expertise to make as a civil engineer with significant experience in industrial design and construction. The claims are also relevant to the dispositive issues in this case.

The problem here is that there is no indication in Goldblatt's report of the engineering protocols and methods he employed in arriving at the normative conclusions embodied within the claims. Civil engineers presumably have objective methods and scientific standards that may be brought to bear in the assessment [*13] of such familiar, lay categories as the "slipperiness" of tile flooring, n2 or the construction of shower stalls with tiered floor levels. Goldblatt makes no mention of these methods or standards in opining on these matters, appearing to rest solely on his laurels as a civil engineer, whose opinions just by virtue of that fact are admissible as relevant expertise. But this manner of proceeding is precisely what Daubert and Kumho Tire will not countenance. An expert, regardless of how sterling his credentials, must make clear in his proffer the methods and standards he proposes to apply in arriving at his opinions and evaluations, and must make clear in doing so that those methods and standards are reliable, and subject to objective evaluation by the expert's peers. In his statements about the design and construction of the shower area at issue, Goldblatt fails entirely to do this, and consequently his testimony on these matters is not admissible as expert testimony under Rule 702. A district court "is responsible for making sure that when scientists testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work." *Braun v. Lorillard Inc., 84 F.3d 230, 234 (7th Cir. 1996)* [*14] (Posner, J.). Under Kumho Tire, of course, the same must be said of engineers, and accordingly, it must also be said that here the proffered testimony singularly fails to adhere to the standards of intellectual rigor that are demanded of civil engineers.

> n2 Although it may, with reason, be doubted whether a jury requires expert assistance to determine that a tile floor may become slippery when wet, an expert could conceivably help a jury understand the way different materials have different friction coefficients, and in doing so, help a jury evaluate whether flooring made of a particular material is more "slippery" than flooring made of another material. Goldblatt's report provides no such assistance, and displays no such expertise.

Goldblatt's fourth claim -- regarding the "9% grade" of the floor in a "non-incident" location in the shower area -- is similarly unsupported by any indication of its methodological underpinnings. But it must be excluded for a more fundamental reason, namely that it is concededly [*15] irrelevant. The grade in a part of the shower area where plaintiff admits he was not standing when he slipped does not touch on any issue raised by his complaint, and testimony regarding it must be excluded, whether expert or non-expert in form.

The proffered testimony concerning the accumulation of body oils on the shower area floor (the sixth claim enumerated above), the absence of instructions concerning the slipperiness of the shower area floors and the need to wear slippers while showering (the eighth), and the cleaning schedule (the tenth) are not matters touching in any way on Goldblatt's expertise or direct knowledge. Thus, Goldblatt's testimony on these matters is excluded. Similarly, Goldblatt's assertions

Case 3:00-cv-00705-CFD    Document 129-8    Filed 02/03/2005    Page 5 of 7

Page 5
2000 U.S. Dist. LEXIS 4081, *; 54 Fed. R. Evid. Serv. (Callaghan) 238

concerning the absence of handrails at the time of the incident (the seventh claim) can only be based on hearsay from an unidentified source. To the extent that plaintiff is unable to present direct evidence on the issue, Goldblatt may not testify to facts of which he has no knowledge and which appear to issue from little more than cavalier speculation. See *Braun, 84 F.3d at 237* (observing in review of a Rule 702 ruling that a "district judge did not abuse [*16] her discretion in excluding [the proffered expert] witnesses as purveyors of unreliable hearsay").

Goldblatt's assertion of inadequate lighting (the ninth claim), although presumably based on direct observation, is not supported by any indication of his method in arriving at this observation, or of the standards that might apply to the formation of such a judgment. More importantly, there is no basis for believing that the lighting in the incident shower stall two and a half years later is material to the lighting conditions at the time of the accident, and, in any event, the lighting conditions at the time of the accident are not an issue in this case, since the plaintiff makes no mention of lighting in his deposition testimony. It follows that his testimony on this issue must be excluded as well, as both unreliable and irrelevant.

Finally, Goldblatt makes a vague assertion of municipal and state building code violations (the eleventh claim). He cites no relevant provision of any statute or regulation. His claims give the impression of pure speculation, offered for the sole purpose of prejudicing the defendants, and so enhancing the plaintiff's chances in this litigation. Consequently, [*17] his testimony on these alleged violations is also excluded.

In sum, because nothing in Goldblatt's report discloses the methodological basis for the conclusions it propounds, and because much of it has no relevance to the issues in the case, his proffered expert testimony must be excluded as unreliable, and therefore inadmissible under *Rule 702 of the Federal Rules of Evidence.* Of course it follows that the testimony may not be considered as part of the record on defendants' motion for summary judgment.

II. Defendants' Motion for Summary Judgment

A. Governing Law

As an initial matter, this Court must determine the governing law in this diversity action presenting issues of common law negligence. n3 In a diversity action, a district court looks to the choice-of-law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941); Jackson v. Domtar Indus., Inc., 35 F.3d 89, 92 (2d Cir. 1994).* In the tort context, New York courts apply an "interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation. [*18] " *Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 620 N.Y.S.2d 310, 311, 644 N.E.2d 1001 (1994)* (discussing the choice-of-law rules originally formulated in *Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279 (1963)).* Interest analysis requires the court to determine whether the purpose of the legal standards at issue is to regulate conduct or to allocate losses, and to identify the significant contacts among the parties and the states involved. Id.

> n3 Neither the plaintiff nor the defendants briefed this threshold issue, and both sides appear to have assumed (as it turns out, incorrectly) that New York law controls their dispute.

Under "Babcock" choice-of-law analysis, rules of law that regulate conduct, such as rules concerning the duties of innkeepers and hotel owners to their guests, are generally supplied by the law of the place where the tort occurred because that state has "the greatest interest in regulating behavior within its borders." [*19] Id.; see also *Reale v. Herco, Inc., 183 A.D.2d 163, 165-68, 589 N.Y.S.2d 502, 504-06 (2d Dep't 1992)* (discussing Babcock rules in context of clear conflict between conduct-regulating standards of New York and Pennsylvania). In this case the accident occurred in New Jersey, on premises maintained and owned by defendant corporate entities who are long-standing domiciliaries of New Jersey. The only nexus of this matter to New York is plaintiff's domicile in Brooklyn. There can be no doubt that, as between New York and New Jersey, New Jersey has the greater interest in regulating the conduct of casinos and hotels operated within its territory. It follows that New Jersey law governs the conduct that resulted in the accident at issue in this case.

B. The Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings [and] depositions ... together with the affidavits ... show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c).* A "moving party is 'entitled to judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an [*20] essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).* A genuine factual issue exists if there is sufficient evidence favoring the nonmovant that a jury could return a verdict in its favor. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242,*

Case 3:00-cv-00705-CFD    Document 129-8    Filed 02/03/2005    Page 6 of 7

Page 6
2000 U.S. Dist. LEXIS 4081, *; 54 Fed. R. Evid. Serv. (Callaghan) 238

*249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. Therefore, in response to a summary judgment motion, the nonmoving party must come forward with facts, and not merely doubts as to the veracity of the moving party's allegations: "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to the interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, 477 U.S. at 324*.

In considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson, 477 U.S. at 249*. In doing so, "the district court must draw [*21] all reasonable inferences and resolve all ambiguities in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party." *Sutera v. Schering Corp., 73 F.3d 13, 15 (2d Cir. 1995)* (citation omitted). Finally, it bears repeating that only admissible evidence is to be considered in ruling on a motion for summary judgment. *Nora Beverages v. Perrier Group of America, 164 F.3d at 746*.

C. Elements of a Negligence Claim Under New Jersey Law

Negligence is conduct which falls below a standard recognized by law as essential to the protection of others from unreasonable risks of harm. *Montague v. Petit-Clair, 203 N.J. Super. 210, 213, 496 A.2d 393 (Law Div. 1995)* (citing *Sanzari v. Rosenfeld, 34 N.J. 128, 134, 167 A.2d 625 (1961)*). Three elements are essential for the existence of a cause of action in negligence: (1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) an injury to plaintiff proximately caused by defendant's breach. *Endre v. Arnold, 300 N.J. Super. 136, 142, 692 A.2d 97 (App. Div. 1997)*. [*22]

Under New Jersey law, the "duty of a motel owner is not to insure the safety of guests but only to exercise reasonable care to discover and correct dangerous conditions." *Ranalli v. Edro Motel Corp., 298 N.J. Super. 621, 627, 690 A.2d 137 (App. Div. 1997)*. Thus,

> [a] motel guest reasonably can expect that the owner diligently will inspect the premises for defects and cure any deficiency discovered. But the guest cannot reasonably expect that the owner will correct defects of which he is unaware and that cannot be discerned by a reasonable inspection. This basic element of actual or constructive notice in the area of motel owner liability 'arising out of the duty to maintain and repair [the] rented premises is ingrained in our law as a necessary prerequisite to a finding of negligence -- the failure to exercise reasonable care.'

*Id. at 627-28* (citing *Dwyer v. Skyline Apts., Inc., 123 N.J. Super. 48, 53, 301 A.2d 463, (App. Div.), aff'd, 63 N.J. 577, 311 A.2d 1 (1973))*; see also *O'Shea v. K. Mart Corp., 304 N.J. Super. 489, 492-93, 701 A.2d 475 (App. Div. 1997)* (stating legal standard defining the duty owed to business invitees). [*23]

The Ranalli Court's analysis co-exists with another line of New Jersey cases holding that "where the conduct of the defendant, in and of itself, creates a foreseeable risk of harm . . . actual or constructive notice is not an element of proof." *Maugeri v. Great Atlantic and Pacific Tea Co., 357 F.2d 202, 203 (3rd Cir. 1966)* (construing New Jersey law); see also *Bozza v. Vornado, Inc., 42 N.J. 355, 360, 200 A.2d 777 (1964)* ("When plaintiff has shown that the circumstances were such as to create the reasonable probability that the dangerous condition would occur, he need not also prove actual or constructive notice of the specific condition."). By contrast, where a dangerous condition arises through no fault of the defendant, "the defendant cannot be held liable unless he had actual or constructive notice of the condition." *Maugeri, 357 F.2d at 203*.

The plaintiff too is charged with a duty of reasonable care for his own safety. This includes a duty to make reasonable observations of hazardous conditions, and generally to proceed in the face of such conditions with reasonable care. *Bates v. Valley Fair Enterprises, Inc., 86 N.J. Super. 1, 9-10, 205 A.2d 746 (App. Div. 1964)*. [*24]

Of particular relevance to this case is the decision of the Supreme Court of New Jersey in *Brody v. Albert Lifson & Sons, Inc., 17 N.J. 383, 111 A.2d 504 (1955)*. In Brody, the plaintiff had slipped and injured herself on flooring that expert testimony had characterized as intrinsically slippery, and as "peculiarly liable to become slippery by virtue of introduction of water thereon," which conditions the defendant had not taken reasonable and practical precautions to alleviate. *Id. at 390*. The Court further

> noted in passing that without the presence of water a combination of the proven factors of intrinsic slipperiness of the

Case 3:00-cv-00705-CFD   Document 129-8   Filed 02/03/2005   Page 7 of 7

Page 7
2000 U.S. Dist. LEXIS 4081, *; 54 Fed. R. Evid. Serv. (Callaghan) 238

flooring, sloping of the floor, location of the [area where the accident had occurred,] and absence of use of customary precautions to prevent slipping has been held adequate evidence of negligence to warrant the submission of the matter to a jury.

Id. (citations omitted); see also *Parmenter v. Jarvis Drug Store. Inc., 48 N.J. Super. 507, 510, 138 A.2d 548 (App. Div. 1957)* (citing Brody for proposition that "absent other evidence of knowledge by the proprietor of the dangerous condition [*25] of the flooring, liability postulated upon imputed notice could be sustained by expert evidence that the intrinsic quality of the flooring material and the nature of the construction of the floor were such that, in combination with the presence of water, a slippery condition would ensue").

D. Issues Bearing on Defendants' Potential Liability in this Case

Applying the foregoing principles to the record in this case, it is clear that summary judgment is appropriate. That record is entirely devoid of evidence that raises even the faintest wisp of an issue that defendants were negligent. Plaintiff recalls almost nothing material to the accident -- and not because he was rendered unconscious as a result. (Borgognone Dep., Pl. Exh. C at 28, 32.) The modicum of admissible evidence to be gleaned from the Goldblatt report does little to buttress plaintiff's feeble allegations. The shower area flooring was tile, and there are two levels of flooring separated by a small ledge at the incident shower stall. But these facts obviously do not raise even the first blush of a case for negligence, and provide an apt occasion for citing Pollack's classic remark that "proof of negligence in the air [*26] . . . will not do." Pollock, Torts at 472 (10th ed.).

Plaintiff's papers urge a theory based on defendants' failure adequately to maintain and clean the shower area, insisting that the shower stall had not been cleaned for almost a week when plaintiff fell. But plaintiff distorts the record on this point. A "major cleanup" was done once a week, but Nawrocki also testifies to a daily maintenance protocol that specifically targeted debris, discarded clothing, and razors in the shower area. (Nawrocki Dep., Pl. Exh. E at 13, 16, 34.) Nawrocki's testimony on this point is not disputed by plaintiff.

In any event, plaintiff himself has no recollection of any debris, cracked tile, soap, or shampoo on the floor in or around the incident shower stall at the time of his accident. (Borgognone Dep., Pl. Exh. C at 28-30.) The floor in that stall was, not surprisingly, wet, but New Jersey law makes plain that this fact, standing alone, does not suffice as a basis for assigning liability for negligence. See *Brody v. Albert Lifson & Sons. Inc., 17 N.J. at 390*. Significantly, the record here contains no showing of any of the factors enumerated in Brody as constituents of a slip-and-fall [*27] negligence case, such as flooring that is "intrinsically" slippery or sloped, or a failure to take reasonable precautions. Indeed it is undisputed that defendants did take the reasonable precaution of issuing slip-resistant slippers to plaintiff, and no issue is raised concerning any other allegedly omitted precaution. The conclusion is inescapable that, on such a record, there is no issue substantial enough to resist summary judgment. See *Dombrowska v. Kresge-Newark, Inc., 75 N.J. Super. 271, 274-75, 183 A.2d 111 (App. Div. 1962)* (holding that where plaintiff's account of a fall on an escalator was uncorroborated by eyewitness or expert testimony, there was insufficient evidence for a jury to reasonably infer that defendant was negligent). Accordingly, defendants' motion for summary judgment must be granted.

CONCLUSION

For the reasons set forth above, the defendants' motions to exclude expert testimony and for summary judgment are granted.

SO ORDERED.

Dated: March 9th, 2000

Brooklyn, New York

I. Leo Glasser, U.S.D.J.