LEXSEE 2000 USDISTLEXIS 798

THE CITY OF NEW YORK, THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, AND THE NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Plaintiffs, - against - COASTAL OIL NEW YORK, INC. AND COASTAL OIL REFINING & MARKETING, INC., Defendants.

96 Civ. 8667 (RPP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2000 U.S. Dist. LEXIS 798

January 28, 2000, Decided
January 31, 2000, Filed

**DISPOSITION:** [*1] Defendants' request for additional discovery of Bursky, Cox, and Savage denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Plaintiffs: June R. Buch, Esq., Leslie A. Conason, Esq., Alan Kleinman, Esq., Michael D. Hess, Corporation Counsel of the City of New York, New York, NY.

For Defendants: Brian J. Gallagher, Esq., John Morris, Esq., Kronish, Lieb, Weiner & Hellman LLP, New York, NY.

**JUDGES:** ROBERT P. PATTERSON, JR., U.S.D.J.

**OPINIONBY:** ROBERT P. PATTERSON, JR.

**OPINION:**

OPINION AND ORDER

ROBERT P. PATTERSON, JR., U.S.D.J.

I

Plaintiffs' motion to preclude the testimony of Dr. Phillip K. Verleger, Jr., set forth in his report dated November 15, 1999, is granted.

Dr. Verleger's report takes the position that:

"First, there is only one published indicator of transactions prices in the petroleum market, the spot price." (Report at 3.)

"Second, there can be only one transactions price for No. 2 fuel oil at any time because the product is fungible." (Id. at 4.)

"Third, individuals doing business in the industry do not interpret the rack price quoted as the 'tank wagon price' in publications such as *Platt's* as an indicator of transactions prices." (Id.)

"*Platt's* posted rack prices are not reports of [*2] the prices willing buyers have agreed to pay willing sellers for a specific product, in this case No. 2 distillate fuel oil, or the prices sellers necessarily expect buyers to pay. (Id. at 4-5.)

The conclusions in Dr. Verleger's report are irrelevant to the plaintiffs' claims in this case. First, Plaintiffs' claims does not rest on the proposition that the posted prices are transaction prices as Dr. Verleger's report assumes. Second, Dr. Verleger's finding that there can be only one transaction price for No. 2 fuel oil at any given time is irrelevant to the plaintiffs' claims here. Third, plaintiffs do not claim, as Dr. Verleger's report assumes, that rack prices are reports of the prices willing buyers have agreed to pay willing sellers for No. 2 distillate fuel oil on the prices that sellers necessarily expect buyers to pay. Nor do plaintiffs claim that people in the industry interpret the rack price quoted in *Platt's* as an "indicator of transactions prices." (Report at 3.)

Here, plaintiffs claim that the parties agreed in their contract that a change in the weekly average of the high and low of the rack prices reported to *Platt's* would result in an adjustment to the [*3] prices Coastal would receive from the City under the contract. The amended complaint, dated May 1, 1997, states that the "'rack prices' are the prices posted by a vendor at the fuel oil terminal from which trucks pick up fuel for delivery to the customer." (Amended Complaint P 14); that "the [rack] prices that Coastal reported to *Platt's* during the contract period were false and deceptive prices" (id. P 34) n1; that, with the knowledge of Coastal, "plaintiffs relied upon the truthfulness and accuracy of the reports made to *Platt's* by Coastal," and "believed that those prices would reflect actual sales and actual conditions in the market." (Id. P 42.)

n1 "As a direct result of Coastal's pattern of reporting disproportionately high rack prices to *Platt's*...the *Platt's* High/Low Average was sharply higher during the remainder of the contract price than it would have been if Coastal had not reported fictitious prices." (Amended Complaint P 32.)

As stated in the opinion and order of the Court, [*4] dated July 9, 1999, the record in this case is clear that "rack prices" were the prices posted by the vendor at the fuel oil terminal. Those prices are claimed to be the prices offered by the vendor as available to the purchaser, not necessarily the price reflecting market prices. Plaintiffs are claiming that the defendants posted "rack prices" to *Platt's* which were "fictitious" and false and misleading as "rack prices," resulting in damages to plaintiffs. Accordingly, Defendants have not shown that Dr. Verleger's proposed testimony about rack prices not being an indicator of market prices is relevant.

The Court also does not find that Dr. Verleger's testimony that individuals doing business in the industry do not interpret rack prices as an indicator of transaction prices is competent expert testimony subject to testing for validity. See *Kumho Tire Co. Ltd v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993)*. He does not offer a basis upon which his conclusion can be tested. He does not offer a supporting survey that individuals do not regard rack prices as [*5] an indicator of transaction prices. Instead, his conclusion is based on his position that spot prices are the only indicator of transaction prices. (Report at 3.) Thus, it appears that his definition of "indicator" is an extremely limited one, and is not relevant to plaintiff's claim that it was reasonable for them to rely on the *Platt's* report of rack prices as being bona fide rack prices offered by them to re-sellers.

For the foregoing reasons, the testimony of Dr. Verleger is not allowed as it would not be helpful or necessary to aid the jury's understanding of the issues in this particular case. See *Kumho, 119 S. Ct. at 1175; Daubert, 509 U.S. at 591*.

II

At argument on plaintiffs' motion to strike the proposed testimony of defendants' expert witness Philip K. Verleger, Jr., defendants made an application to re-take the additional deposition testimony of Messrs. Bursky and Cox and Ms. Savage, particularly with respect to their understanding of the terms "posted prices" and "rack prices." Defendants based their application on the claim that they still understood that the Amended Complaint, dated May 1, 1997, charged fraud by defendants [*6] in that the prices they reported to *Platt's* during the contract period (1992-1993) were false and deceptive in that they were not the same as the prices Coastal actually received from its customers. Coastal's argument is based on Paragraph 34 ("The prices that Coastal reported to *Platt's* during the contract period were false and deceptive prices and were not justified by prices actually charged by Coastal to its customers."), Paragraph 41 ("*Platt's* relied upon reporting vendors, including Coastal, truthfully to report actual sales prices offered to customers, so that *Platt's* reports would reflect actual sales and actual market conditions."), and Paragraph 42 ("Plaintiffs relied upon the truthfulness and accuracy made to *Platt's* by Coastal and other vendors and reasonably believed that those reports would reflect actual sales and actual conditions in the market. Coastal knew that plaintiffs so relied.").

Defendants' reading of the amended complaint is at odds with what has been plaintiffs' clearly articulated position for over a year and is unjustified. The amended complaint, when read in full, makes clear in paragraphs 14 and 28-38, that the conduct complained [*7] of was Coastal's reporting fictitious "rack prices" to *Platt's* for publication in *Platt's* Oilgram Price Report. "Rack prices" are defined in Paragraph 14 of the amended complaint as "the prices posted by a vendor at the fuel oil terminal from which trucks pick up fuel for delivery to the customer." (Amended Complaint P 14.)

The Court's opinion of July 9, 1999, denying defendants' motion pointed out that the plaintiffs' claim is that Coastal reported to *Platt's* a posted rack price for No. 2 oil in New York which was not the rack price," the price at which it was offering to sell No. 2 oil to customers at its terminals.

Due to concern that defendants' counsel could possibly have been misled to believe, up until argument on January 27, 2000, that plaintiffs' claim was that the rack price posted in *Platt's* was fictitious and false and deceptive, (id. P 32), because they did not reflect actual prices charged by Coastal to customers, (id. P 34), or actual sales, (id. PP 41, 42,), the Court undertook to review its opinion of July 12, 1999 and certain materials referenced by the parties, (1) the transcripts of testimony by Cox, Bursky, and Savage, attached as [*8] exhibits to Plaintiffs' Statement of Disputed Material Facts pursuant to Local Rule 56.1., filed on November 20, 1998, in opposition to Defendants' Motion for Summary Judgment and (2) testimony cited in Paragraph 15 of the Comparison of Defendants' Statement of Undisputed Material Facts and Plaintiffs' Statement of Disputed Material Facts prepared by defendants on December 4, 1998. Both of the parties' submissions support the conclusion that posted prices are rack prices offered at the terminal to sellers of petroleum products and that plaintiffs' claims are that defendants were reporting posted prices to *Platt's* for No. 2 oil from October 1992 to October 1993 which were not the posted prices they were asking in New York.

In its Opinion and Order dated July 9, 1999, and filed on July 12, 1999, the Court, at pages 11-16, made clear that the defendants' claim that the city could not claim an overcharge unless it showed "that it was charged prices over the current market price," (Opinion and Order at 11) was incorrect. The Court stated that "artificial manipulation of *Platt's* rack price average would directly impair the value of the contract for the City," (id. at 15), and [*9] that if Coastal "posted prices higher than its wholesale asking prices, it would violate the intentions of the parties, (id. at 15), and Coastal's duty of good faith and fair dealing (id. at 16).

As to the plaintiff's claim for fraud, the Court, in its Opinion and Order filed July 12, 1999, denying defendants' summary judgment motion except in so far as it duplicated plaintiffs' contract claim, again rejected Coastal's claim that if it made false representations of fact, that "any impact that [Coastal's] rack prices in *Platt's* may have had on the City's prices would be material only if the prices charged under the contract deviated from the market price, (id. at 19). The Opinion and Order clearly stated that the City's fraud claim could be supported if the City shows that Coastal intended for the City to rely on Coastal's fraudulent representations to *Platt's* and 'the damage the City sustained on other contracts were directly, immediately, and proximately caused by the fraudulent representations... to *Platt's*." (Id. at 23.)

Nothing could be clearer than that plaintiffs' claim did not depend on the relationship of Coastal's rack prices posted to *Platt's* [*10] to actual market prices was irrelevant to plaintiffs' claim and that what was relevant was whether Coastal's rack prices posted to *Platt's* from October 1992 to October 1993 were in fact actual rack prices or fictitious rack prices.

Both parties have engaged in additional fact discovery since November 1999. The trial date was re-set for February 14, 2000 on December 1, 1999. Accordingly, not only has defendant not shown that it has been prejudiced or that any additional discovery of Bursky, Cox, and Savage is necessary, but its request is too late. Defendants' request for additional discovery of Bursky, Cox, and Savage is denied.

SO ORDERED.

Dated: New York, New York

January 28, 2000

Robert P. Patterson, Jr.

U.S.D.J.