UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE: PE CORPORATION SECURITIES  :
LITIGATION                        :   Master File No. 3:00CV-705 (CFD)
                                  :
                                  :   FEBRUARY 16, 2005

### AFFIDAVIT OF SANFORD P. DUMAIN PURSUANT TO FED. R. CIV. P. 56(F) REGARDING THE DEPOSITION OF DR. FRANCIS COLLINS

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

Sanford P. Dumain, being duly sworn, deposes and says:

1. I am a member of Milberg Weiss Bershad & Schulman LLP, Lead Counsel for Lead Plaintiffs in this action and I am familiar with the facts discussed herein. I am also a member of the bar of this Court. I submit this affidavit, pursuant to Fed. R. Civ. P. 56(f), in support of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.

**The Pending Motion to Compel Dr. Collins' Deposition**

2. On October 12, 2004, prior to the completion of fact discovery, plaintiffs' filed a motion to compel the deposition of non-party witness, Dr. Francis Collins ("Pl. Mem.") [Docket No. 113]. As set forth in plaintiffs' motion, the factual record developed in discovery had demonstrated that Dr. Collins, Director of the National Human Genome Research Institute, which was the U.S. government's participant in the Human Genome Project (HGP) under the auspices of the National Institutes of Health, was the most knowledgeable witness concerning the collaboration negotiations between representatives of Celera Genomics Group ("Celera") and the

HGP, which are at the heart of this case and defendants' summary judgment motion. Pls. Mem. at 9-11. Moreover, plaintiffs' motion demonstrated that (a) this Court had the power to compel the deposition (Pls. Mem. at 4-5), (b) plaintiffs had complied with the *Touhy* regulations[1] of the relevant government agency (the Department of Health and Human Services (DHHS)) regarding taking discovery from current government employees (*Id.* at 5-9), (c) Dr. Collins possessed discoverable evidence that was unavailable by other means (*Id.* at 9-11), and (d) the government had no legitimate basis for preventing Dr. Collins's deposition. *Id.* at 11-13.

3. The DHHS and defendants opposed plaintiffs' motion .") [Docket Nos. 117 and 115, respectively]. The DHHS argued that its decision was not arbitrary and capricious, while both the DHHS and defendants argued that Dr. Collins's testimony was duplicative of the testimony of the other HGP witnesses, Dr. Harold Varmus and Dr. Robert Waterston.

4. Plaintiffs replied that although "arbitrary and capricious" was not the operative standard for the motion, they had readily met that standard, as the DHHS did not consider

---

[1] *Touhy* regulations generally provide that a current or former employee may not provide discovery in a legal proceeding, to which the U.S. is not a party, unless that person has permission from the head of the agency. However, it is well-settled that these regulations cannot be used to prevent private litigants from obtaining otherwise discoverable evidence. For example, the Sixth Circuit has held that *Touhy* regulations that preclude discovery of information cannot be enforced:

> We likewise conclude that Congress did not empower the Federal Reserve to prescribe regulations that direct a party to deliberately disobey a court order, subpoena, or other judicial mechanism requiring the production of information. We therefore hold that the language in 12 C.F.R. § 261.14 that requires a party that is served with a subpoena, order, or other judicial process to continually decline to disclose information or testimony exceeds the congressional delegation of authority and cannot be recognized by this court. Such a regulation is plainly inconsistent with Rule 34 and cannot be enforced. To allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found here.

*In re Bankers Trust Co.*, 61 F.3d 465, 470 (6th Cir. 1995).

numerous relevant facts in making its decision, including that Dr. Collins was involved at the highest levels of the subject collaboration negotiations and that he possessed more knowledge of the negotiations than anyone else affiliated with the HGP. *See* plaintiffs' Reply Memorandum In Further Support of the Motion to Compel the Testimony of Dr. Francis Collins at 2-8 .") [Docket No. 118]. Plaintiffs also cited extensive evidence developed during discovery, which demonstrated that Dr. Collins, as the lead negotiator for the HGP with Celera, possessed relevant non-duplicative evidence. *Id.* at 4-6. Finally, plaintiffs pointed out that granting their motion would not lead to a flood of similar requests (as argued by the DHHS), as the motion was narrowly focused on the testimony of a single individual concerning the central issues in the case, about which that individual has first-hand knowledge. *Id.* at 8-9.

5. On February 4, 2005, this Court issued an Order referring plaintiffs' motion to Magistrate Judge Smith.

**Defendants' Motion for Summary Judgment**

6. As set forth in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pls. SJ Opp. Mem."), defendants' summary judgment motion relies heavily on their version of the facts surrounding the collaboration discussions between the HGP and Celera in 1999, which culminated in the December 29, 1999 meeting. Indeed, one need only look at the subheadings of the first section of defendants' argument to appreciate this:

    A.    **The Discussions Regarding Potential Interactions Between Celera and the HGP Were Disclosed in the Prospectus**

    B.    **The December 29 Meeting Was Neither Material Nor Adverse**

    C.    **The December 29 Meeting Did Not Lead to Retaliatory or Punitive Government Action**

    D.    **The December 29 Meeting Had No Effect on Celera's Business Plan**

7. While plaintiffs are confident that the testimony and documentary evidence they have developed in discovery is readily sufficient to show that there are issues of fact regarding the collaboration discussions, and their importance to Celera's business model, as it was described in the Prospectus that is the subject of this action, the deposition of Dr. Collins would bolster plaintiffs' arguments in this area. Indeed, as set forth in plaintiffs' motion to compel, Dr. Collins engaged in the following conduct, which is highly relevant to issues raised by defendants' summary judgment motion:

- Assisted in drafting a document entitled "Important Issues to be Negotiated," outlining what the HGP hoped to accomplish at the December 29 meeting, which he forwarded to the government's negotiating team prior to the meeting.

- Set the HGP's agenda for the December 29 meeting.

- Sent defendants the proposed December 29 meeting agenda and the "Shared Principles" document, and then communicated with Dr. Venter by e-mail and telephone during the hours leading up to the meeting regarding Celera's concerns.

- Acted as the HGP's primary spokesperson at the December 29 meeting.

- Drafted a proposed press release announcing the collaboration discussions between Celera and the HGP, which was scheduled for release after the December 29 meeting.

- Engaged in a conversation with defendant White on January 22, 2000, during which defendant White reiterated Celera's demands that it receive commercial protection over its sequence data for at least 3 to 4 years.

- Drafted a detailed letter sent by the HGP to Celera on February 28, 2000, discussing the failed negotiations.

8. As also set forth in plaintiffs' motion to compel, the e-mails produced in the litigation (which comprise the majority of the government's production), over 100 of which bear Dr. Collins's name, confirm that (i) almost all of the information concerning the negotiations that was shared among the HGP members either originated from, or were sent to, him, (ii) he was involved in coordinating every element of the negotiations with Celera, and (iii) he engaged in

-4-

discussions with Celera officers concerning the potential collaboration, to which the other HGP deponents, Drs. Harold Varmus and Robert Waterston, were not privy.

9. Additionally, defendants rely on Dr. Venter's testimony regarding a joint announcement by the HGP and Celera in the Spring of 2000, as supposed evidence that the collaboration negotiations were not a disaster for Celera and did not break down at the December 29, 1999 meeting, but instead, that the discussions continued thereafter and culminated in the joint announcement. Def. Br. at 17. As defendants acknowledge, this announcement was the result of several meetings between Dr. Collins and Dr. Venter. *Id.* While the record and common sense do not support defendants' argument regarding the import of this announcement, if the Court is considering placing any weight on this, which it should not, then it would be inequitable for defendants to rely on Dr. Venter's testimony, without allowing plaintiffs to depose Dr. Collins.

10. Finally, the DHHS produced Dr. Collins's handwritten notes from the December 29, 1999 meeting during discovery. These notes contain references to statements apparently made during the meeting by Celera's CEO, defendant Tony White, which raise issues of fact concerning two of defendants' principal arguments. First, defendants have contended that the collaboration negotiations and December 29, 1999 meeting focused on toning down the public rhetoric. However, Dr. Collins's notes state "Tony . . . Rhetoric has been *positive* for stock value" (emphasis in original). Second, defendants have repeatedly argued that the December 29, 1999 meeting had no effect on their business plan and that they were not seeking a commercial monopoly over the human genome sequence. Yet, Dr. Collins' notes state "TW *does* buy possibility of a better product but sees advantage of monopoly as crucial" (emphasis in original).

**Conclusion**

11. During discovery, plaintiffs zealously pursued the deposition of Dr. Collins by moving to compel the deposition only after they had made numerous attempts (including compromise offers to limit the scope of the deposition), to have the DHHS voluntarily produce him. Now that defendants have placed the facts surrounding the collaboration negotiations at the forefront of their summary judgment motion, if the Court does not determine that plaintiffs have raised triable issues of fact in opposition to the motion on the existing record (which plaintiffs believe they readily have) it should allow plaintiffs to depose Dr. Collins and to supplement the record with his testimony.

_____
SANFORD P. DUMAIN

Sworn to before me this
16 day of February, 2005

_____
Notary Public

DEIRDRE KORNHISER
Notary Public, State of New York
No. 01KO6077107
Qualified in Kings County
Commission Expires July 1, 2006