**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-------------------------------------------------------------x
```
In re PE Corporation Securities Litigation      :   Master File No. 3:00 CV 705 (CFD)
                                                :   MARCH 23, 2005
                                                :
                                                :
                                                :
```
-------------------------------------------------------------x
```

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs attempt to defeat Defendants' motion for summary judgment through nothing more than smoke and mirrors.  In a desperate attempt to survive summary judgment, Plaintiffs manufacture confusion, change theories, and misrepresent facts to the Court in lieu of identifying admissible evidence in support of their claim. Defendants ask this Court to see through Plaintiffs' transparent tactic and not allow this case to proceed toward trial without evidence and on the basis of ever-changing legal theories.

Plaintiffs began this case alleging that Celera's Prospectus was false and misleading because it failed to disclose that the United States and United Kingdom governments were going to, and did, punish Celera as a result of its unwillingness to collaborate with the Human Genome Project ("HGP") at a December 29, 1999 meeting. After extensive discovery, Plaintiffs now admit that:

> The HGP *never* petitioned any entity affiliated with the U.S. or U.K. government to retaliate against or punish Celera as a result of the December 29 meeting; (Pl. R.56 St. at ¶46)

> The March 14, 2000 Joint Statement by United States President Bill

> Clinton and United Kingdom Prime Minister Tony Blair is ***not*** evidence that the government retaliated against Celera; (Pl. R.56 St. at ¶47)
>
> Dr. Neal Lane, Director of the President's Office on Science Technology Policy confirmed that the Joint Statement was ***unrelated*** to discussions between Celera and the HGP: "I want to make it absolutely clear that [the Joint Statement] has nothing to do with any ongoing discussions between the public and private sector;" (Pl. R.56 St. at ¶49)
>
> On March 16, 2000, the United States Patent and Trademark Office issued a press release confirming that the Joint Statement ***did not change*** patent law in any way; (Pl. R.56 St. at ¶50)
>
> The drafting of the Joint Statement ***preceded*** discussions between the HGP and Celera; (Pl. R.56 St. at ¶52) and
>
> ***No one*** from the HGP contacted the PTO regarding Celera's ability to obtain intellectual property protection for its genomics discoveries or sought any change in intellectual property law. (Pl. R.56 St. at ¶53)

Plaintiffs have expressly and unequivocally abandoned the only theory pled in the Complaint. Defendants' motion must be granted because no reasonable jury could find in favor of Plaintiffs because Plaintiffs have admitted that the allegations in the Complaint are false.

Based on the admissions listed above, Plaintiffs have no good faith basis to continue this litigation. In lieu of voluntarily dismissing the Complaint, as they should, Plaintiffs have created two new theories of liability - the "business plan" theory and the "bad science" theory. Defendants respectfully implore the Court to examine the Complaint. These two new theories do not appear there, are not properly before the Court, and cannot form the basis for a denial of summary judgment. Nonetheless, even if the Court wishes to entertain Plaintiffs' moving target, once again, summary judgment must be granted because Plaintiffs have not come forward with any admissible evidence

on either of their two new theories.

***The Business Plan Theory***

Plaintiffs now argue that the Prospectus was false and misleading because it failed to disclose that collaboration with the HGP was a component of Celera's business plan, and that there was no likelihood of Celera achieving such a collaboration following the December 29, 1999 meeting. This allegation appears nowhere in the Complaint.

But even assuming this claim was validly pled, Plaintiffs have ***no evidence whatsoever***, let alone admissible evidence, that an agreement to collaborate with the HGP was a component of Celera's business plan. ***Not a single witness*** in this case testified that a collaboration with the HGP was a component of Celera's business plan. ***No document produced*** in this case, whether by Celera or the HGP, makes such a claim.

The only document suggesting that an HGP collaboration was a component of Celera's business plan *is the legal memorandum written by Plaintiffs' counsel* in opposition to Defendants' motion. Plaintiffs' brief purports to identify "evidence" supporting the contention that a collaboration was a component of Celera's business plan. The "evidence" cited, however, consists entirely of internal HGP email and the testimony of HGP scientists regarding their personal views about Celera, its sequencing strategies, and speculations as to Celera's motives for considering interactions with the HGP. Such "evidence," which Plaintiffs misleadingly cite, provides no support whatsoever for the contention that a collaboration was a component of Celera's business model, and proves nothing of relevance in this case. Indeed, Plaintiffs

acknowledge with respect to Francis Collins, the director of the HGP that "[i]n any event, Dr. Collins's [stet] view is irrelevant to the issue of whether defendants are liable under Section 11 of the Securities Act of 1933."  Pl. R.56 St. at ¶30.

Moreover, Plaintiffs fail to bring to the Court's attention the actual testimony of Drs. Waterston and Varmus on whether they had any knowledge that a collaboration with the HGP was a component of Celera's business plan:

| Dr. Robert Waterston | Dr. Harold Varmus |
| --- | --- |
| Q.  Did anyone affiliated with Celera ever convey to you that a collaboration with the human genome project was a component of the Celera's business plan? A.  Again, I don't have any communication with people from Celera. (DX 7 at 179)  Q.  Prior to the December 29th meeting, did you believe that an agreement on the terms outlined in the shared principles document would be beneficial to Celera's business? A:  I didn't.  I -- I -- I don't know enough about their business to know if it was beneficial or not.  That wasn't my concern. *Id.* | Q.  In the course of your conversations regarding a potential collaboration between Celera and The Human Genome Project did anyone at Celera ever indicate to you that a collaboration with The Human Genome Project was a component of Celera's business plan? A.  No. (DX 6 at 135) |

The business plan theory is nothing more than a claim that in Plaintiffs' view, Celera's business plan *should have* included a collaboration with the HGP.  But Plaintiffs do not get to choose what Celera's business plan *should have* been.  The Prospectus actually describes Celera's business plan.  Celera attempted to implement the business plan described in the Prospectus.  There is no evidence to the contrary.  Because Plaintiffs have no admissible evidence upon which a reasonable jury could find that a collaboration was a component of Celera's business plan, Defendants' motion for summary judgment must be granted.

**The Bad Science Theory**

Plaintiffs' newest claim - the bad science theory - appeared for the first

time in this case in the December 2004 Rule 26 Report of Ivor Elrifi (the "Elrifi Report").

Mr. Elrifi, a purported expert in patent law, opined that in his view, Celera's whole

genome shotgun methodology could not lead to patentable discoveries.  Based on Mr.

Elrifi's opinion, Plaintiffs now contend that the Prospectus was false and misleading

because it failed to disclose that Celera's whole genome shotgun sequencing

methodology could not produce patents.

Like the business plan theory, the bad science theory appears nowhere in

the Complaint.  Plaintiffs conducted no discovery regarding the scientific validity of

Celera's sequencing methodology and waited until after the Court-ordered close of fact

discovery to introduce the new claim.  Plaintiffs' bad science theory should not be

considered by this Court and cannot form the basis of a denial of summary judgment.

Nonetheless, even assuming that this claim appeared in the Complaint,

Defendants' motion for summary judgment must be granted because no reasonable jury

could find that Celera's whole genome shotgun method could not result in patents.  Mr.

Elrifi's opinion - that Celera would not be able to obtain patents - is absurd on its face.

The undisputed and publicly available evidence is that Celera's whole genome shotgun

method has produced *147 gene patents in less than 5 years,* and that Celera's patent

application *success rate is in excess of 86%.*  To deny these facts is sanctionable.

For the foregoing reasons, and for the reasons explained more fully below,

Defendants respectfully request that the Court grant their motion for summary judgment

and dismiss the Complaint in its entirety and with prejudice.

## ARGUMENT

Once a properly supported motion for summary judgment has been made, the non-moving party has the burden of presenting "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The party opposing summary judgment cannot create a genuine issue of material fact by presenting contradictory but unsupported statements. *See Kasper v. City of Middletown,* 352 F. Supp. 2d 216, 228 (D. Conn. 2005) (Droney, J.); *Hanton v. Marto,* No. 3:02CV997, 2005 WL 465422, at *1 (D. Conn. Feb. 17, 2005) (Droney, J.). The evidence presented by the party opposing summary judgment must be such that a reasonable jury could find for the non-movant. *Christman v. Kick,* 342 F. Supp. 2d 82, 84 (D. Conn. 2004) (Droney, J.) (citation omitted).

## I.     NO REASONABLE JURY COULD CONCLUDE THAT THE PROSPECTUS CONTAINS A FALSE OR MISLEADING STATEMENT

### A.     Plaintiffs Have Admitted That The Government Retaliation Claim - The Only Claim Asserted In The Complaint - Is Meritless

Plaintiffs are in full retreat from the most critical document in this case - the Complaint. For nearly five years, the parties have litigated whether Defendants violated the Securities Act of 1933 based on the only allegation in the Complaint - that Celera's Prospectus was false and misleading because it did not disclose that the United States and United Kingdom governments would and did take punitive action against Celera as a result of Celera's unwillingness to agree to a collaboration with the HGP. (Compl. ¶¶ 26, 30) The linchpin of Plaintiffs' claim, and the only reason that Plaintiffs allege the December 29 meeting was significant, is that President Clinton and Prime Minister Blair's Joint Statement was a "punitive" action taken against Celera as a direct and proximate result of that meeting. (Compl. ¶30)

Plaintiffs have now admitted what was plainly evident in the public record at the time the Complaint was filed - that the Joint Statement was **not** connected in any way to the discussions between Celera and the HGP, and did **not** in any way impair or affect Celera's ability to obtain intellectual property protection.  (Pl. R.56 St., ¶¶46-47, 49-53).  As a direct result of these admissions, no reasonable jury could find in favor of Plaintiffs.  The Court need not proceed any further in its analysis; the remainder of Plaintiffs' contentions have nothing whatsoever to do with the Complaint.

**B.      The Business Plan Theory Cannot Survive Summary Judgment**

**1.      The Business Plan Theory Is Not Pled In The Complaint**

Plaintiffs' business plan theory asserts that "[I]n order to make the statements [in the Prospectus] not misleading, Celera was required to, but did not, disclose that the plan to use its human genome sequence as the foundation for its information business relied upon the successful development of that sequence, for which Celera needed to collaborate with the HGP, and that negotiations regarding such a collaboration had completely broken down at the December 29 meeting."  (Pl. Br. at 33) Plaintiffs' business plan theory cannot be submitted to the jury because it cannot be found, expressly or impliedly, anywhere in the Complaint.

## 2.    Plaintiffs Have No Evidence That A Collaboration With The HGP Was A Component Of Celera's Business Plan

Moreover, Plaintiffs have come forward with no evidence whatsoever, let alone admissible evidence, to support the critical factual allegation underlying the theory that "Celera's business model hinged on a successful collaboration" with the HGP.  (Pl. Br. at 34).  It is undisputed that no current or former employee of Celera testified that a collaboration with the HGP was a component of Celera's business plan.  No representative of the HGP ever testified that a collaboration was a component of Celera's business plan.  No document produced in this case states that a collaboration was a component of Celera's business plan.

In a transparent effort to create triable issues of fact, Plaintiffs make up four arguments why, in their view, a collaboration with the HGP was a critical component of Celera's business model:  (1) Celera recognized that it had or would soon have gotten just about all it was going to get of commercial value from the shotgun sequencing effort; (2) Celera needed to validate its sequence, about which many people were already skeptical; (3) Celera wanted a monopoly over the human genome map, which would give it an advantage over competing commercial database suppliers; and (4) Celera could not completely sequence the human genome map without help from the HGP.  (Pl. Br. at 13-14)  As demonstrated below, the "evidence" cited by Plaintiffs' in support of these "facts" is comprised entirely of *internal HGP speculation* about what Celera's business model was or might have been.  Indeed, Plaintiffs introduce their so-called facts with the phrase "[s]enior HGP scientists identified several critical reasons why Celera needed to collaborate."  (Pl. Br. at 13)  Of course, Plaintiffs offer this Court no explanation for the logical gap - what relevance does speculation or wishful thinking

by HGP scientists have to what Celera's business plan actually was?

The remainder of this Section addresses in detail why the evidence cited in the four categories in Plaintiffs' opposition papers does not provide any support whatsoever for the notion that a collaboration was a component of Celera's business plan.

> **a.** **There is no evidence that "Celera recognized that it had or would soon have gotten just about all it was going to get of commercial value from the shotgun sequencing effort."**

For this proposition, the only evidence cited by Plaintiffs is a single email from Robert Waterston to Francis Collins (both members of the HGP) dated December 3, 1999.  (PX 16)  There, Waterston writes "I am getting a bit more outside feedback about the situation - *the speculation* on why Celera is pushing this now is that PE recognizes that they have or will soon have gotten just about all they are going to get of commercial value from the shotgun sequencing effort."  The Waterston email is admittedly "speculation."   It is also hearsay from unidentified sources regarding Celera's motives. Plaintiffs' brief, however, improperly presents Waterston's speculation to the Court as admissible evidence of absolute fact.

> **b.** **There is no evidence that Celera needed to collaborate "to validate Celera's sequence."**

This speculation makes no sense.  As explained in Defendants' moving brief, the HGP adhered to the Bermuda Accord, and thus Celera always had access to HGP data to do whatever validation Celera believed necessary.  (Def. Br. at 10)  For the same reason, Celera had little if any interest in a full-scale collaboration with the HGP. (Def. Br. at 15).

Plaintiffs cite no evidence whatsoever to dispute this critical fact.  Instead, Plaintiffs cite a single HGP email in which HGP members discussed the *possibility* that

the Bermuda Accord should be modified so that the public could not impose any restrictions on products derived from HGP sequencing data.  (Pl Br. at 26, n.9; PX 71).

Plaintiffs misleadingly fail to inform the Court that no such restriction was ever adopted.

To this day, all members of the public, including Celera, are free to download and use HGP sequencing data.

Plaintiffs' assertion that "many people were already skeptical" of Celera's sequence is wholly irrelevant to any fact in this litigation.  Moreover, Plaintiffs cite a November 21, 1999 email from Robert Waterston to John Sulston (both of the HGP) reporting on an internal HGP call about whether the HGP should consider working with Celera.  (PX 14)  The pertinent portion of the email reads "[b]oth Francis [Collins] and Harold [Varmus] showed some skepticism, with Eric [Lander] being the salesman."  It is clear that the discussion concerned the merits of working with Celera, not the viability of Celera's sequence.

> **c.**      **There is no evidence that Celera needed a collaboration "to gain a monopoly over the human genome map" or that Tony White saw a monopoly as crucial to Celera's business.**

The evidence cited by Plaintiffs does not support this proposition.

Plaintiffs again cite the November 21, 1999 email from Waterston to Sulston summarizing an internal HGP discussion about the merits of working with Celera.  (PX 14)  The pertinent portion states:  "Celera would have its database and they would be in a monopoly position for a while.  The failure to allow redistribution of their data would put other software companies a disadvantage *but they would be that position regardless*." (emphasis added).  This email supports the ***exact opposite*** of what Plaintiffs cite it for.

Plaintiffs also rely on a November 17, 1999 email from Eric Lander to

Francis Collins and Harold Varmus (all three members of the HGP) (PX 13):

> "Realistically, Celera would be doing more for the
> scientific community than Incyte or HGS by making the
> data itself available:  this would be a significant
> contribution.  Celera would be trying to gain a significant
> advantage over other commercial database suppliers by
> preventing them from sucking up their data.  This is not
> unreasonable, since they did pay for it." (RW 00018).

Nothing in this email supports the proposition that Celera wanted or needed a monopoly.

Plaintiffs' contention that White saw a monopoly as crucial to Celera is equally frivolous.  Plaintiffs, of course, do not cite White's sworn testimony, but instead cite one line from handwritten notes purportedly taken by Francis Collins at the December 29 meeting (PX 64):  "TW does buy possibility of better product but sees advantage of monopoly as crucial."  (PX 64 at FC 00132)  Nothing in the documents indicates whether the language is a quote from Tony White, or speculation by Francis Collins as to White's views.  Additionally, these handwritten notes are inadmissible, unauthenticated hearsay.

> **d.      There is no evidence that "Celera could not completely
> sequence the human genome map without help from the
> HGP."**

Beyond dispute, Celera did not need to collaborate with the HGP to sequence the human genome because Celera already had access to the HGP's data due to the Bermuda Accord.  (Def. Br. at 10, 15)  Moreover, Plaintiffs' reliance on the Varmus testimony is grossly misleading.  Dr. Varmus did not testify that Celera could not sequence the genome without help from the HGP, or even that he believed Celera could not complete the sequence without the HGP.  The actual testimony cited by Plaintiffs reads:

> "Well, as I mentioned before, I had my doubts about

whether the assembly of a shotgun sequencing effort would allow correct assembly without using the public sequence, which . . . was readily available to Celera . . . [The HGP's sequencing effort] was in public databases and was accessible to investigators anywhere, private or public sector . . . It is still an arguable issue, and it's been argued in scientific journals right up until last year." (PX 6 at 42-43)

Finally, Plaintiffs rely on a Varmus to Waterston email of November 19, 1999, (PX 13), in which Varmus writes:

"[y]ou should know that I don't agree with everything in [Eric Lander's summary of the benefits of collaboration]. For instance, though it may be impolitic to say this in the spirit of negotiations, I am not ready to acknowledge that Celera could put the human sequence together without the public effort."

Whether Dr. Varmus was ready to acknowledge the fact is irrelevant; it is undisputed that Celera successfully sequenced the human genome.

> **e.    Plaintiffs' have no evidence to support their other miscellaneous contentions.**

Plaintiffs assert that actions of Tony White, Celera's CEO, belie the contention that Celera's business model did not require a collaboration because White demanded exclusivity at the December 29 meeting, and wanted to prevent Celera's competitor's from reselling Celera's data. Pl. Br. at 26-27. Once again, Plaintiffs deliberately ignore the only relevant evidence.

Tony White *testified under oath* as to why he demanded exclusivity: to make clear that he viewed the HGP's proposal as unreasonable. Exclusivity was not a component of Celera's business plan, and it was not a suggestion that Mr. White believed would be acceptable to the HGP. The purpose of Mr. White's suggestion was to make clear that the HGP proposal was unreasonable. *See* Def. Br. at 16 and exhibits cited

therein.

Celera expressly disclosed in the Prospectus that it always planned to prevent commercial competitors from repackaging its data:

> "The Celera Genomics group believes that current efforts by some companies to obtain data made publicly available for the purpose of private resale may continue, and that the need to protect the value of its information while honoring its intention to share this data with the research community will affect its data disclosure strategy." (DX 1 at 38)

### C.    The Bad Science Theory Cannot Survive Summary Judgment

#### 1.    The Bad Science Theory Is Not Pled In The Complaint

After the close of fact discovery, Plaintiffs apparently realized that the Complaint and the business plan theory were both lacking in merit. Given this realization, Plaintiffs submitted the Rule 26(a) report of Ivor Elrifi, who offered the laughable opinion that Celera's sequencing strategy was unlikely to yield successful patents. (PX 65 at ¶46) Based on Dr. Elrifi's opinion, Plaintiffs now contend "defendants needed to, but did not, disclose that Celera's WGS technique was generating data that would not permit Celera's patent applications for any purported gene sequences to comply with recently revised USPTO guidelines regarding utility and written description." (Pl. Br. at 35) Like the business plan theory, the bad science theory does not appear in the Complaint, and cannot be considered on a motion for summary judgment.

> ### 2.    No Reasonable Jury Could Conclude That The Whole Genome Shotgun Method Could Not Result In Patents

The bad science theory is frivolous.  It is a matter of public record - which Plaintiffs' so-called expert ***did not even review*** - that Celera received 147 patents in the last five years.   Of Celera's published patent applications that have reached final resolution, Celera received patents at an 86.1 % success rate.  (DX 56, Exs. 2 and 3)

In lieu of addressing the patents Celera has actually received, Plaintiffs argue that "[n]umerous senior scientists at the major laboratories that comprised the HGP believed that Celera's genome sequencing shotgun method was incapable of producing quality sequence data."  (Pl. Br. At 12)  Yet the record reveals that no witness offered any such testimony.

Plaintiffs cite the Waterston and Varmus testimony to support their assertion that Celera's sequencing method was "incapable" of producing quality sequencing data.  *Id.*  The cited testimony supports nothing more than the proposition that Drs. Waterston and Varmus were, in 1999, personally skeptical of Celera's sequencing methods.  But testimony regarding the personal skepticism of individual researchers as to the efficacy of whole genome sequencing provides no support whatsoever for Plaintiffs claim that whole genome sequencing was "incapable" of producing quality sequence data.  Moreover, Plaintiffs fail to bring Waterston's most pertinent testimony to the Court's attention:

> "Q:  Is it fair to say, in - that in the fall of 1999, it was a
> question of scientific debate whether Celera could
> successfully sequence the human genome by the whole
> genome shotgun method?  A:  It was a debate, sure." (DX 7
> at 171)

**II.    THE CHALLENGED STATEMENTS IN THE PROSPECTUS ARE PROTECTED BY THE REFORM ACT SAFE HARBOR AND THE BESPEAKS CAUTION DOCTRINE**

As explained more fully in Defendants' moving brief, summary judgment must be granted because the statements in the Prospectus that Plaintiffs challenge as misleading are protected under the safe harbor provisions of the PSLRA, 15 U.S.C. § 77z-2 (2004), *i.e.,* the statements are forward-looking and either:  (i) accompanied by cautionary statements *or* (ii) made without actual knowledge of falsity.  *See* 15 U.S.C. § 77z-2(c).

Here, the Prospectus for Celera's secondary offering is the prototype envisioned by the Reform Act.  It discloses in extensive, narrowly tailored detail all of the risks that Celera - a unique start-up company in a developing industry - believed it faced.  No reader could conclude that the Prospectus understated the risks to Celera's business.

Plaintiffs' contention that Defendants' knew the forward-looking statements in the Prospectus were false and misleading lacks any evidentiary support. Plaintiffs have identified no facts, no testimony, and no documents that demonstrate that anyone at Celera - let alone any of the Defendants - had any knowledge that any of the statements in the Prospectus were not accurate.  And, as demonstrated in Section I, Plaintiffs could not identify any such evidence because the statements in the Prospectus are demonstrably accurate.  Absent proof of actual knowledge, Plaintiffs' Section 11 and 12(a)(2) claims are barred by the PSLRA's safe harbor provision for forward-looking statements.

**CONCLUSION**

Defendants respectfully request that the Court to take this opportunity to

acknowledge this case for what it is - a meritless securities class action brought in the

hope of sustaining a long and expensive litigation.  But on this motion, Defendants have

laid bare the lack of substance in Plaintiffs' case, which must now be dismissed with

prejudice.

| | |
|---|---|
| OF COUNSEL:  Michael J. Chepiga (ct01173) Robert A. Bourque (ct05269) William M. Regan (ct25100) Simpson Thacher & Bartlett LLP 425 Lexington Avenue New York, NY  10017 (212) 455-2000 | DEFENDANTS PE CORPORATION, TONY L. WH L. WINGER and VIKRAM JOG   By: _____ Stanley A. Tv (ct05096) Thomas D. Goldberg (ct04836) Terence J. ( (ct22415) Day, Berry & Howard LLP One Canterbury Stamford, CT 06901 |

## CERTIFICATION

This is to certify that a copy of the foregoing was sent by first class mail this 23rd
day of March, 2005, to:

| | |
|---|---|
| J. Daniel Sagarin, Esq. Hurwitz & Sagarin, LLC 147 N. Broad Street P.O. Box 112 Milford, CT 06460      Liaison Counsel | Sanford P. Dumain, Esq. Carlos F. Ramirez, Esq. Milberg Weiss Bershad Hynes & Lerach LLP One Penn Plaza - 49th Floor New York, NY 10119      Lead Counsel for Plaintiffs |

_____
Terence J. Gallagher