UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE: PE CORPORATION :
       SECURITIES LITIGATION :
                                            : Master File No. 3:00CV705 (CFD)
                                            :

**RULING ON CLASS CERTIFICATION**

Pending is a motion for class certification pursuant to Fed.R.Civ.P. 23 filed by the lead plaintiffs, David Berlin and Vinh Voung (collectively "plaintiffs"). The motion seeks certification of a class consisting of all persons who purchased PE Corporation Celera Genomics Group ("Celera") common stock issued in a secondary public offering conducted by PE Corporation ("PE") on February 29, 2000, and who were damaged thereby. For the following reasons, the motion is **GRANTED.**

**I.    Background**[1]

A) Genomic Science

PE is a Delaware corporation which conducts its business through its subsidiaries, Celera and PE Biosystems. Celera generates, sells and supports genomic information and related information management and analysis software.[2] It also discovers, validates and licenses proprietary gene products, genetic markets and information concerning genetic variability.

---

[1] The facts are taken from the complaint. See Shelter Realty Corp. v. Allied Maint. Corp., 574 F.2d 656, 661 n.15 (2d Cir.1978) ("it is proper to accept the complaint allegations as true in a class certification motion").

[2] Genomics is the study of all the genetic information of a species.

Celera bills itself as a "recognized leader in the generation, sale and support of genomic information and enabling data management and analsis software." Scientists believe that genes play a role in the progression or regression of diseases. Thus, in theory, once scientists have fully sequenced the human genome and have discovered which genes play a role in specific diseases, pharmaceutical companies will be able to use the genetic information to develop better and more effective drugs to treat disease. Celera has represented that it believes that "the healthcare and life sciences industry will rely on SNP analysis [a process for measuring the association of a genotype and a disease] to improve the efficacy and safety of pharmaceuticals and the development of more reliable tests for disease with known genetic traits."

B) <u>Human Genome</u>

Celera reportedly began sequencing the human genome in September 1999, after it completed sequencing the genome of Drosophila (the fruit fly). Celera publicly announced in January 2000 that it had compiled ninety percent of the human genome. Other companies, both private and public, have been working to sequence the human genome as well. The most significant undertaking is being made by the Human Genome Project ("the Project"), a worldwide coordinated effort sponsored by governments and nonprofit organizations in the United States, England, Japan and France, among others. In the United States, the majority of the public funding for the Project is provided through the National Institutes of Health ("the NIH").

Following Celera's public announcement in January 2000 that it had mapped ninety percent of the human genome, NIH announced that it had reallocated funding in order to further accelerate the Project's sequencing effort and to attempt to achieve a "working draft" of the

genome by Spring 2000. Thus, Celera was in a "race" with the Project to complete the map of the human genome. The outcome was significant to Celera because the Project intended to make its findings publicly available, while Celera intended to license its findings to customers on a commercial basis. Specifically, Celera has publicly stated that its business strategy is to sequence the human genome and then "use the genomic information derived from its genomic sequencing program as a platform upon which to develop an integrated information and discovery system" that it can license to pharmaceutical companies who are developing new drugs. Celera has further stated that its primary source of revenue will come from selling access to its information through subscriptions, collaborative services and licensing its intellectual property. In sum, Celera's commercial success would, in large part, be directly affected by its ability to obtain patent protection on genes, polymorphisms and proteins it discovered.

      C) <u>Celera Common Stock</u>

A secondary public offering of Celera common stock occurred on February 29, 2000. The price of Celera common stock rose sharply in the months preceding the secondary public offering. On September 14, 1999, Celera common stock traded for $17.88 per share. By February 28, 2000, following Celera's public announcement in January that it had mapped ninety percent of the human genome, its stock traded for $239.00 per share–an increase of 1300%. On February 29, 2000, PE filed with the SEC a final Form S-3 Registration Statement ("the registration statement") for the secondary public offering. On that same day, the prospectus for that offering became effective, and PE sold, through its underwriters, 3.8 million shares of Celera common stock at a price of $225.00 per share. In addition, PE purchased 570,000 shares of Celera common stock from the underwriters through an over-allotment option. The gross

proceeds from the secondary offering, including the exercise of the over-allotment option, were approximately $944 million.

        D) <u>Loss of Value</u>

The complaint further alleges that during the period preceding the secondary offering, when Celera and the Project appeared to be in competition to finish mapping the human genome, Celera and the Project were engaged in discussions to combine their efforts in order to finish the human genome project more quickly. Those discussions ultimately broke off because the parties were unable to come to an agreement concerning Celera's demands that it have exclusive rights to the human genome map for an extended period of time. The discussion between Celera and the Project were not widely known by the public and were never referenced in Celera's public filings or press releases, nor were they disclosed in the prospectus for the secondary offering of Celera's common stock. More specifically, the complaint alleges that a story appearing in the *Los Angeles Times* on March 6, 2000, first revealed that Celera and the Project had been in ongoing discussion concerning their proposed collaboration, and had met on December 29, 1999, at Dulles International Airport near Washington, D.C. Following the publication of the story in the *Times*, the price of Celera common stock declined from $247.00 per share, on March 6, 2000, to $189.00 per share on March 13, 2000.

The complaint also alleges that on March 14, 2000, President Clinton and Prime Minister Blair of the United Kingdom issued a major, joint statement in which they reiterated the position of their respective governments that all information about gene sequencing and the human genome project should be publicly available. This announcement made it clear that the power of the U.S. and U.K. governments would be brought to bear to oppose any efforts to obtain

exclusive rights to the sequencing of the human genome for any protracted period of time and to obtain patent and copyright protection of information obtained from the sequencing.  After this announcement, the price of Celera common stock further declined from $189 per share to approximately $119–almost fifty percent less than it was sold for in the secondary offering fourteen days earlier.  This decline continued over the next several months, and, on August 17, 2001, Celera common stock closed at $26.21.

## II. Procedural History

In 2000, four cases were filed in the United States District Court for the District of Connecticut alleging that the defendants had violated federal securities laws in connection with the sale of Celera common stock through the secondary offering.  On August 4, 2000, those four cases were consolidated into one action before this Court, under the heading "In Re: PE Corporation Securities Litigation."  On July 6, 2001, this Court appointed David Berlin and Vinh Voung lead plaintiffs, and the law firms of Milberg Weiss Bershad Hynes & Lerach LLP and Hurwitz & Saragin LLC as lead counsel for the purported class members.  On August 20, 2001, the lead plaintiffs filed the first amended consolidated class action complaint, which set forth claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, ("the 1933 Act"), as amended.  See 15 U.S.C. §§ 77k, 77l(2) and 77o.  On March 3, 2003, the Court denied the defendants' motion to dismiss.  The plaintiffs subsequently filed the instant motion for class certification.

## III. Law

The plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23.  Under Rule 23, there is a two-part inquiry for class certification.  First, a court must determine whether the plaintiffs

satisfy the four requirements of Rule 23(a), which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 155-56 (1982); Marisol A. v. Giuliani, 126 F.3d 372, 375-78 (2d Cir. 1997) (per curiam).

Second, the Court must determine whether the plaintiffs have satisfied one of the prongs of Rule 23(b). Here, the plaintiffs argue that a class is maintainable under section (b)(3) of Rule 23, which provides, in relevant part:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

Fed. R. Civ. P. 23(b)(3).

"In light of the importance of the class action device in securities fraud suits, these factors are to be construed liberally." Gary Plastic Packaging Corp. v. Merrill, 903 F.2d 176, 179 (1990); see also Civic Ass'n of the Deaf of New York City, Inc. v. Giuliani, 915 F. Supp. 622, 632 (S.D.N.Y. 1996) (court should use liberal, not restrictive, interpretation). At this stage, the only issue is whether the requirements of Rule 23 have been met, and not whether the plaintiffs have stated a cause of action or will prevail on the merits. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974). The Supreme Court has cautioned, however, that a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of

6

Rule 23(a) have been satisfied." General Tel. Co., 457 U.S. at 161; accord Sheehan v. Purolator, Inc., 839 F.2d 99, 103 (2d Cir. 1988); Civic Ass'n of the Deaf, 915 F. Supp. at 632.  Further, a court is to determine whether an action shall be maintained as a class action based on the allegations of the complaint, which are accepted as true.  See Shelter Realty Corp. v. Allied Maint. Corp., 574 F.2d 656, 661 n.15 (2d Cir.1978) ("it is proper to accept the complaint allegations as true in a class certification motion").  Yet, a court may also consider material outside the pleadings in determining the appropriateness of class certification.  Kaczmarek v. International Business Machines Corp., 186 F.R.D. 307, 311 (S.D.N.Y.1999) (citing Sirota v. Solitron Devices, Inc., 673 F.2d 566, 571 (2d Cir. 1982)); see also Reynolds v. Giuliani, 118 F. Supp. 2d 352, 388 (S.D.N.Y. 2000).  Thus, it is sometimes necessary for district courts to "probe behind the pleadings before coming to rest on the certification question."  General Tel. Co., 457 U.S. at 160; see Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) ("class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action").

    It is well recognized that class actions are a particularly appropriate means for resolving securities fraud actions. See, e.g., Green v. Wolf Corp., 406 F.2d 291, 296 (2d Cir. 1968) ("a class action in a federal securities action may well be the appropriate means for expeditious litigation of issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf"); Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir. 1985) ("class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, since the effectiveness of the securities laws may depend in large measure on the

application of the class action device" [internal quotations omitted]).  Finally, "the interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action." Id. (quoting Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir.1968); see also Kennedy v. Tallant, 710 F.2d 711, 718 (11th Cir.1983) (suit involving fraudulent scheme against a large number of individuals is particularly appropriate for class action treatment).

## IV.   Analysis

As noted previously, the Court must first address the four criteria of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a); see also In re PolyMedica Corp. Securities Litigation, 224 F.R.D. 27 (D.Mass. 2004) (examining the requirements of Rule 23).  Each criterion will be addressed in turn.

### 1) Numerosity

The defendants have not contested the ability of the purported class to meet the numerosity requirement.  Under Rule 23(a)(1), plaintiffs need not prove the exact number of proposed class members as long as they can reasonably estimate the size of the class.  See Garfinkel v. Memory Metals, Inc., 695 F.Supp. 1397, 1401 (D.Conn.1988) (quoting Deary v. Guardian Loan Co., Inc., 534 F.Supp. 1178, 1190 (S.D.N.Y.1982)).  Additionally, "courts may make common sense assumptions to support a finding of numerosity."  Weissman v. ABC Fin. Servs., Inc., 203 F.R.D. 81, 84 (E.D.N.Y. 2001) (internal quotation omitted).  The Second Circuit has found that "numerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  Furthermore, the Second Circuit lists the following other considerations for finding numerosity: "judicial economy arising from the

avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir.1993); see also 7A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1762, at 195 (addressing factors to consider).  The plaintiffs claim that, although they cannot identify the exact number of purported class members, given that almost 4 million shares of stock were sold in the secondary offering, the class could number in the thousands. See Brosious v. Children's Place Retail Stores, 189 F.R.D. 138, 145 (D.N.J. 1999) (numerosity requirement met when the defendants sold at least 4,000,000 shares of Children's Place stock pursuant to an IPO).  The Court agrees, and finds that the class is sufficiently numerous and that individual joinder would be virtually impossible. Marisol A., 126 F.3d at 376.

    2) Commonality

    The defendants have also not challenged the plaintiffs' showing of commonality under Rule 23(a)(2), apparently conceding that there is a uniform course of conduct applied to all purported class members.  Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." See also Marisol A., 126 F.3d at 376 ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact").  These questions must "predominate over questions peculiar to individual members of the class." Civic Ass'n of the Deaf, 915 F.Supp. at 632-33 ("When such common questions do predominate, differences among the questions raised by individual members will not defeat commonality.").  "This requirement is the 'heart of the class action concept.'" Matyasovsky v. Housing Auth. of City of Bridgeport, 226 F.R.D. 35, 41 (D.Conn. 2005) (quoting 7 Newberg on Class Actions § 23:3 (4th ed.)).  Rule

23(a) next requires the existence of "questions of law or fact common to the class." Fed.R.Civ.P. 23(a). Courts have commented that "the test for commonality is not demanding" and is met so long as there is at least one issue common to the class. Cashman v. Dolce International/Hartford, Inc. v. OLY/Hartford Hotel, 225 F.R.D. 73, 91 (2004) (citing Mullen v. Treasure Chest Casino, LLC., 186 F.3d 620, 625 (5th Cir. 1999).

In this case, all of the claims concern the allegedly false and misleading statements made in the prospectus for the secondary offering of Celera common stock. Consequently, at this stage of the analysis, the Court finds that the purported class meets the commonality requirement. See Korn v. Franchard Corp., 456 F.2d 1206, 1210 (2d Cir. 1972) (commonality deemed satisfied when "the alleged misrepresentations in the prospectus relate to all the investors, and the existence and materiality of such misrepresentations obviously present important common issues"); Daniels v. Blount Parrish & Co., Inc., 211 F.R.D. 352, 353 (N.D.Ill. 2002)(commonality requirement, for class action certification of securities fraud class action, was satisfied by allegations that underwriter of city bonds prepared prospectus containing material misrepresentations and omissions); Brosious, 189 F.R.D. at 145 ("each plaintiff alleges that the defendants issued a false and misleading prospectus in conjunction with the IPO. Therefore, the Rule 23(a) commonality requirement is satisfied in this case").

3) Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality ... requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to

prove the defendant's liability." Marisol A., 126 F.3d at 376 (internal citation omitted). The typicality requirement limits the class claims to those fairly encompassed by or interrelated with the named plaintiffs' claims. See Gen. Tel. Co., 446 U.S. at 330. "Minor conflicts, however, do not make a plaintiff's claims atypical; it is when the conflict goes to the very subject matter of the litigation that the conflict will defeat the claim of representative status." Walsh v. Northrop Grumman Corp., 162 F.R.D. 440, 445 (E.D.N.Y.1995). Therefore, the Second Circuit has cautioned that "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation" so as to create "a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Merrill, 903 F.2d at 179. "On the other hand, where absent class members will not suffer, the fact that a 'representative party may be barred from recovery by defenses peculiar to him which would not bar other members' need not in itself defeat certification." In re Colonial Partnership Litigation, 1993 WL 306526 at *4 (D.Conn. 1993) (quoting 3B Moore's Federal Practice ¶ 23.06-2 at 23-180 (2d ed. 1992)); see also Mersay v. First Republic Corp., 43 F.R.D. 465, 469 (S.D.N.Y. 1968) (defendants' claim that proposed class representative could not prove reliance or damages not appropriate at class certification stage).

The complaint sets forth claims under Sections 11, 12 and 15 of the 1933 Act. The defendants contend that the claims of the proposed class representatives, Berlin and Voung, are not typical because neither party can set forth successful claims under Section 11 or 12 due to the manner in which they purchased Celera common stock. This argument is unpersuasive. Here, the putative class, including the plaintiffs, put forth one claim, namely whether the prospectus issued for the secondary offering of Celera stock contained false or misleading

information. There was only one prospectus issued, and it applied equally to all purchases of stock during that secondary offering. Although the defendants may be able to prove that Berlin and Voung purchased some of their shares before the secondary offering, this goes to each party's damages; also, they purchased at least some of their shares after the secondary offering, and therefore their claims are typical of the class. Moreover, this Court already has addressed some of these arguments concerning standing under Section 12 in denying the defendants' motion to dismiss. Finally, in regard to Section 11, the defendants contend the "majority position" should not be followed, that this Court should limit the application of Section 11 to initial purchases in the secondary offering, and that Berlin and Voung are not such purchasers–therefore they are not typical of the class. However, the "majority position" was established by the United States Court of Appeals for the Second Circuit in <u>DeMaria v. Anderson</u>, 318 F.3d 170, 175-77 (2d Cir. 2003).

Therefore, the plaintiffs have proven that "the claims of the representative parties are typical of the claims or defenses of the class" and thus, have adequately satisfied the typicality requirement of Rule 23(a)(3). See <u>Steinberg v. Nationwide Mut. Ins. Co.</u>, 224 F.R.D. 67, 75 (E.D.N.Y. 2004) (because class sought to litigate issue in defendant's standard policy of insurance, individual defenses of class representative did not threaten to become the focus of the litigation); <u>In re Data Access Systems Securities Litigation</u>, 103 F.R.D. 130, 145 (D.N.J. 1984), rev'd on other grounds, 843 F.2d 1527 (3d Cir. 1988) (rejecting argument about tracing the class representative's shares because "[i]t would be wholly improper for the court to deny a class certification motion simply because a plaintiff might have difficulties in proving his case").

    4) <u>Adequate Representation</u>

12

Rule 23(a)(4) also requires that "the representative parties will fairly and adequately protect the interests of the class." In the Second Circuit, adequacy of representation involves inquiry as to whether: 1) the plaintiff's interests are antagonistic to the interest of other members of the class and 2) the plaintiff's attorneys are qualified, experienced and able to conduct the litigation. Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.2d 52, 61 (2d Cir. 2000); In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992); Raymond v. Rowland, 220 F.R.D. 173, 180 (D.Conn. 2004); see also Spann v. AOL Time Warner, Inc., 219 F.R.D. 307, 320 (S.D.N.Y. 2003) ("The adequacy criteria tend to merge with the commonality and typicality requirements, although courts chiefly inquire whether the named plaintiffs' interests are antagonistic to those of the class, and whether class counsel are competent"). Thus, "class representative status may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1077-78 (2d Cir. 1995)(internal quotations omitted). However, the Supreme Court in Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 370-374 (1966), expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance. Therefore, as one district court has explained: "It is unrealistic to require a class action representative to have an in-depth grasp of the legal theories of recovery behind his or her claim. It is more important that the representative actively seeks vindication of his or her rights and engages competent counsel to prosecute the claims." In re Resources America Sec. Litig., 202 F.R.D. 177, 187 (E.D.Pa. 2001).

Both of the criteria recognized by the Second Circuit are satisfied in this case. The

named plaintiffs' interests are directly aligned with those of the absent class members: they are purchasers of Celera common stock who suffered significant losses as a result of the investments. Their attorneys are all qualified, experienced and able to conduct complex securities litigation. Although the defendants claim that Berlin and Voung are inadequate because they do not fully understand the factual allegations or procedural issues in this case, the Court finds that these concerns are not supported by the record, and that both Berlin and Voung will be adequate representatives of the class.  Moreover, this conclusion is buttressed by the adequacy and competence of the counsel employed by Berlin and Voung: the law firms of Milberg Weiss Bershad Hynes & Lerach LLP as lead counsel and Hurwitz & Saragin LLC as liaison counsel. See, e.g., Klien v. A.G. Becker Paribas Inc., 109 F.R.D. 646, 651-52 (S.D.N.Y. 1986) ("it is unreasonable to expect an ordinary investor . . . to have the requisite sophistication and legal background to assist counsel in assessing liabilities under sections 11 and 12(2), or Rule 10b-5. [Plaintiff's] counsel has an outstanding reputation in the securities field, and is clearly capable of handling this litigation").

In sum, the Court finds that all of the criteria of Rule 23(a) have been established.

5) Rule 23(b)

Having established that the plaintiffs meet the requirements of Rule 23(a), the Court must next determine whether they also meet the requirements of Rule 23(b).  See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997) ("In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)").  The plaintiffs claim that they meet subsection (3), which provides that, if all of the requirements for Rule 23(a) are met, a district court may certify a class if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). As the Supreme Court has summarized: "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'["the predominance requirement"]; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' [the superiority requirement"]" Amchem Products, 521 U.S. at 615; accord In re Visa Check/MasterMoney, 280 F.3d 124, 136 (2d Cir. 2001).

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002) (quoting Amchem, 521 U.S. at 623). "It is a more demanding criterion than the commonality inquiry under Rule 23(a)." Id. (emphasis added). With Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Amchem, 521 U.S. at 617. In sum, "[t]he Court's [prior] discussion of Rule 23(a)'s commonality and typicality requirements informs its inquiry under Rule 23(b)(3)." Cashman, 225 F.R.D. at 95.

The defendants maintain that the proposed class does not meet the predominance test of Rule 23(b) because common questions will not predominate at trial of this action. Essentially, the defendants maintain a truth in the market defense–that the information which the plaintiffs' claim was missing from the prospectus was made publicly known prior to that date–predominates, and therefore individualized issues concerning each particular class member's knowledge of that information will become a distracting central issue at trial of this matter.[3] This argument is inconsistent with other arguments made by the defendants, however: namely, that "every member of the proposed class purchased Celera stock in the secondary offering after the alleged omission was reported in national newspapers." Thus, this defense–that this information was available to all purchasers prior to the secondary offering–will be against the entire class, and not the individual purchasers. Rather than become a distracting side issue, this defense is central to the main claim being set forth on behalf of the class. In other words, common questions and common defenses will predominate at trial. Moreover, questions of whether the information was disseminated and available prior to the secondary offering, and what weight to give to that information, are factual questions that go to the merits of the plaintiffs' claims, and therefore are inappropriate to address at this stage of the proceedings. See Ganino, 228 F.3d at 167 ("[t]he truth-on-the-market defense is intensely fact-specific"); Provenz v. Miller, 102 F.3d 1478, 1493 (9th Cir. 1996) (addressing truth on the market defense at summary judgment stage); see also Rubin v. Trimble, 1997 WL 227956 at *7 (N.D.Cal., Apr. 28, 1997) (citing Provenz fo proposition that "[a]s the truth-on-the-market defense raises factual issues, it is

---

[3]Under the truth on the market defense, "a misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market." Ganino v. Citizens Utilities Co., 228 F.3d 154, 167 (2d Cir. 2000).

generally a question for summary judgment or trial").

The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." In re Warfarin Sodium Antitrust Litigation, 391 F.3d 516, 534 (3d Cir. 2004) (quotations omitted). Rule 23(b)(3) sets out several factors relevant to this inquiry, including:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Given the complexities of a securities litigation case, the interest of individual stockholders in controlling the prosecution of separate actions is low. The parties have not identified any other cases involving Celera common stock, which further may indicate a lack of interest in individual prosecution of claims. In re Warfarin Sodium Antitrust Litigation, 391 F.3d at 534. Because the four suits underlying this consolidated action originally were filed in the District of Connecticut, it is desirable to maintain this action in this forum. Finally, the Court is not aware of any difficulties likely to be encountered if this case is to proceed as a class action. Indeed, because there is only one principal issue in this case–whether the defendants made proper disclosures in conjunction with the secondary public offering, the Court finds that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Amchem Products, 521 U.S. at 615.

Consequently, the Court finds that the plaintiffs have satisfied both of the requirements of Rule 23(b).

17

V.    Conclusion

The Court grants the plaintiffs' request to certify this action under Rule 23(a) and (b)(3) **[Doc. # 57]** with Berlin and Voung as lead plaintiffs and class representatives.  Pursuant to the request made in the complaint and the instant motion for certification, the class consists "of all persons who purchased PE Corporation Celera Genomics Group ('Celera') common stock in a Secondary Public Offering conducted by PE Corporation on or about February 29, 2000 and who were damaged thereby."

SO ORDERED this   31st    day of March 2005, at Hartford, Connecticut.

                                                    /s/ CFD
                                     **CHRISTOPHER F. DRONEY**
                                     **UNITED STATES DISTRICT JUDGE**