**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

-----------------------------------------------------------------x
:
:
:
:
:
In re PE Corporation Securities Litigation    : Master File No. 3:00 CV 705 (CFD)
:
: APRIL 1, 2005
:
:
:
-----------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO STRIKE THE EXPERT REPORT OF IVOR R. ELRIFI**

**PRELIMINARY STATEMENT**

The "expert" report of Ivor R. Elrifi (the "Elrifi Report") opines that Celera could not successfully sequence the human genome, nor obtain patents for gene-based discoveries, because its whole genome shotgun sequencing method was inferior. Remarkably, Plaintiffs have managed to write a brief in support of the Elrifi Report without ever mentioning three publicly available undisputed facts: (1) the Prospectus expressly discloses that as of the Secondary Offering, the efficacy of whole genome shotgun sequencing on complex genomes was highly uncertain;[1] (2) after the Secondary Offering, Celera published in a respected and peer reviewed scientific journal a successful sequence and assembly of the human genome using only whole genome shotgun data;[2] and (3) since the Secondary Offering, Celera has received 149 gene patents derived from whole genome shotgun data.[3]

Regardless of the Elrifi Report's obvious lack of merit, or the confusion it would create for a jury, the issue on this motion is relevance – whether the opinions in the Elrifi Report make any fact alleged in the Complaint more or less likely to be true. The Complaint alleges that Celera's Prospectus failed to disclose that the United States and United Kingdom governments were going to, and did, punish Celera as a result of its unwillingness to collaborate with the Human Genome Project ("HGP") at a December 29, 1999 meeting. The Elrifi Report opines that Celera could not receive patents because its whole genome shotgun method generated low-

---

[1]   *See* Prospectus at 8 (whole genome shotgun sequencing "has not been used to sequence a genome with the size and complexity of the human genome . . . there can be no assurance that the Celera Genomics group will be successful in its assembly of the human genome")

[2]   *See* Sorin Istrail, *et. al.*, *Whole-Genome Shotgun Assembly and Comparison of Human Genome Assemblies*, PNAS, Feb. 17, 2004, at 1916-1921 ("We present here a [whole genome shotgun assembly] produced by Celera in December 2001 using only whole-genome shotgun sequence data.") (attached hereto as Exhibit 1).

[3]   *See* Expert Witness Report of Jorge A. Goldstein at 13 (attached hereto as Exhibit 2).

quality sequencing data. That opinion has no relationship whatsoever to the allegations in the Complaint and thus no probative value. Indeed, the discrepancy between the Complaint and the Elrifi Report is so profound that the Elrifi Report would seem to have been written for some other case.

The Plaintiffs have offered the Elrifi Report to overcome a critical problem with their case – Plaintiffs have already admitted that the allegations in the Complaint are false.[4] In an attempt to overcome this fatal admission, Plaintiffs manufacture new theories of liability as if they were alleged in the Complaint, most notably the "business plan" theory and the "bad science" theory. Plaintiffs' opposition then contends that the Elrifi Report is admissible because it is relevant to their new manufactured theories. This Court should reject Plaintiffs' attempt to create confusion and misdirection. Relevance must be determined not by reference to new "expert" theories paid for by Plaintiffs' counsel, but rather *by reference to the Complaint* that has guided the nature and scope of this litigation and extensive discovery for nearly five years.

Nor should this Court consider Plaintiffs' new theories as an amendment to the Complaint. To make the Elrifi Report relevant, the Complaint would have to allege that the Prospectus was false and misleading because it failed to disclose that the whole genome shotgun method could not result in a successful sequence and assembly of the human genome and could not generate patentable discoveries. The Court should not allow such an amendment for two reasons. First, such an amendment would be highly prejudicial. The parties have litigated this case for nearly five years based on the allegations in the Complaint. At no time did any party question Celera witnesses about the efficacy of whole genome shotgun sequencing. Allowing the Plaintiffs to replead their case at this late stage would require the re-opening of fact discovery

---

[4]   *See* Consolidated Local Rule 56 Statement at ¶¶ 46-47, 49-53 and responses and replies thereto.

2

and result in a gross waste of judicial and party resources.  Second, the amendment would be futile because, as indicated above, the Prospectus expressly disclosed that at the time of the Secondary Offering, the efficacy of whole genome shotgun sequencing was uncertain with respect to complex genomes, and the public record reveals that subsequent to the Secondary Offering, Celera successfully sequenced the human genome and received 149 gene patents.

Plaintiffs have failed to satisfy their burden of demonstrating that the Elrifi Report is relevant to any fact that is of consequence to the determination of the action.  Plaintiffs have similarly failed to demonstrate that the Court should treat the Elrifi Report as a motion to amend the Complaint.  Following Supreme Court guidance, the Court should strike the Elrifi Report because it does not relate in any way to the allegations in the Complaint.

### ARGUMENT

**I.     PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THE ELRIFI REPORT IS RELEVANT TO THE ALLEGATIONS IN THE COMPLAINT**

**A.     The Complaint Does Not Contain Any Allegations Regarding Celera's Need to Collaborate with the HGP**

Contrary to the assertion in their opposition, Plaintiffs *do not allege* in the Complaint that Celera needed a collaboration with the HGP to derive the human genome sequence.  To support this contention, Plaintiffs cite four paragraphs in the Complaint.  *See* Pl. Opp. at 8.  An examination of these paragraphs reveals that they do not relate to any alleged need to collaborate with the HGP.  As Plaintiffs have repeatedly taken liberties with their interpretations of the evidence in this case, they now take liberties with the allegations in their own Complaint.[5]

---

[5]     Footnote 3 of Plaintiffs' brief grossly misrepresents the evidence in this case, similar to the misrepresentations made in Plaintiffs' Local Rule 56(a)(2) Statement.  Neither Dr. Venter nor Mr. White ever testified that "Celera could not produce quality sequence data without help from the HGP" or that Celera's sequencing method was "flawed."  In the testimony cited by Plaintiffs, Dr.

3

- Paragraph 20 simply states that Celera's business strategy was to "sequence the human genome and then 'use the genomic information derived from its genomic sequencing program as a platform upon which to develop an integrated information and discovery system.'" Complaint at ¶ 20.

- Paragraph 39(c) alleges that the Prospectus was false and misleading because "the discussions between the Human Genome Project and Celera had broken down in December 1999 over the issue of how long Celera would have exclusive rights to the data." *Id.* at ¶ 39(c).

- Paragraph 42 alleges that the HGP was opposed to granting Celera exclusive rights over a merged version of the human genome for more than a year, but does not state anything about Celera's need to collaborate with the HGP. *Id.* at ¶ 42.

- Paragraph 48 states that a collaboration simply would have "sped up the time it would take Celera to map the human genome" and that Celera was actually "willing to foreclose collaborating" with the HGP. *Id.* at ¶ 48.

As Plaintiffs' own citations demonstrate, nowhere does the Complaint allege that Celera needed to collaborate with the HGP. Indeed, paragraph 48 of the Complaint suggests the exact opposite. Because Plaintiffs do not allege that Celera needed a collaboration, the Elrifi Report cannot be admitted to support that claim. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591

---

Venter testified that gene patenting was not a significant part of Celera's business strategy (Ex. 3 (Venter Tr.) at 23-24) and that it was unclear whether there were any unique genes left to patent (*Id.* at 125-26). Mr. White testified that the ability to locate commercially useful genes is an "evolving science." Ex. 4 (White Tr.) at 111.

During discovery, Plaintiffs asked two HGP scientists for their personal views on Celera's scientific strategies. Defendants objected to such questions based on the clear lack of relevance to the Complaint. Relevance aside, the responses of the HGP scientists reveal the Elrifi Report's complete lack of merit. The capability of the whole genome shotgun sequencing method was a question of scientific debate, to which Dr. Varmus and Dr. Waterston testified. Ex. 5 (Varmus Tr.) at 43; Ex. 6 (Waterston Tr.) at 171. This scientific debate was disclosed in the Prospectus: "[s]ome genomic scientists have criticized Celera Genomics group's sequencing strategy . . . as having limitations when applied on a large scale in sequencing the human genome. Others have stated that the human genome cannot be sequenced using whole genome shotgun sequencing." Ex. 7 (Prospectus) at 8.

4

(1993); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 137 F. Supp. 2d 147, 163 (E.D.N.Y. 2001), *aff'd,* 303 F.3d 256 (2d Cir. 2002).

**B.    Plaintiffs' Allegations Regarding Intellectual Property Protection Relate to Government Retaliation, Not Celera's Sequencing Methodology**

Plaintiffs cite a string of cases for the proposition that "evidence need not have been included in the Complaint to be admissible in opposition to summary judgment (or at trial), so long as the evidence is relevant to an allegation in the Complaint." Pl. Br. at 9. While Defendants do not quarrel with this general proposition, the fundamental point is that in each case the evidence on which plaintiffs sought to rely was relevant to proving the allegations in the complaint. Here, Plaintiffs have failed to satisfy their burden of demonstrating even a tenuous connection between the Elrifi Report and the Complaint. *See Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003) (proponent of expert testimony must establish its admissibility by a preponderance of the evidence).

Plaintiffs misleadingly state that the "Complaint plainly alleges that Celera would be unable to patent new gene sequences." Pl. Br. at 10. However, the only reason why Plaintiffs allege that Celera would be unable to patent new gene sequences is the single theory pled in the Complaint – retaliation. Specifically, the Complaint alleges that following the "collapse" of negotiations, "it was highly likely that Celera would face aggressive and punitive actions by the U.S. and U.K. governments . . . that would make it much more difficult than disclosed for Celera to obtain patent or copyright protection for its genomic discoveries and database information, including genes, polymorphism[s], and proteins." Complaint at ¶ 39(e). Indeed, every allegation in the Complaint relating to Celera's ability to obtain patent protection is immediately followed by an allegation regarding retaliation by the government. *See, e.g., id.* at ¶ 26 ("Celera's ability . . . to obtain protection from the immediate release of the human genome code, in the face of

5

[opposition by the U.S. and U.K. governments], was very attenuated and subject to increased and substantial risk."), ¶ 27 ("The power of the U.S. and U.K. governments to stop or impede a party from obtaining patent or copyright protection for genomic data was (and is) very substantial."), ¶ 30 (Joint Statement "made it clear that the enormous power of the U.S. and U.K. governments would be brought to bear to oppose any efforts to . . . obtain patent and copyright protection of information obtained from sequencing"); *see also id.* at ¶¶ 39(d), 39(e), 39(f), 43, 44, 47. No allegation in the Complaint addresses the efficacy of Celera's sequencing method.

## II.    THE COURT SHOULD NOT CONSIDER PLAINTIFFS' NEW THEORIES ON SUMMARY JUDGMENT

Recognizing that the Elrifi Report is irrelevant to the Complaint, Plaintiffs ask the Court to consider Plaintiffs' new theories of liability and treat them as a motion to amend the Complaint. Pl. Opp. at 10.[6] If the Court were to treat the Elrifi Report and Plaintiffs' assertion of new theories as a motion to amend, that motion should be denied. *See Gerentine*, 2001 U.S. Dist. LEXIS 10975, at *20-21 ("[T]o allow Plaintiff to assert entirely new, and at the same time entirely deficient, factual bases for her tort claims near the close of discovery and after the Individual Defendants have filed their motion . . .would substantially prejudice the defendants and essentially extinguish the already-minimal requirement of notice pleading.") (citation omitted). The Supreme Court has stated that leave to amend should be denied where there is

---

[6]   The courts did not permit the amendment in three of the four cases cited by Plaintiffs for the proposition that this practice is "well settled" in the Second Circuit. *See Seaboard Terminals Corp. v. Standard Oil Co.*, 104 F.2d 659, 660 (2d Cir. 1939) (affirming district court decision not to consider affidavits alleging information outside of the complaint); *Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir. 1986) (affirming district court decision not to consider additional theories asserted by *pro se* plaintiff, stating that "[w]e cannot fault the District Judge for not considering these matters to be 'claims' in this lawsuit. They were not pleaded as such in the complaint, and, more significantly, they were not called to the Court's attention when [*pro se* plaintiff] was twice ordered to respond to the defendants' motion for summary judgment."); *Gerentine v. United States*, No. 00 Civ. 0813, 2001 U.S. Dist. LEXIS 10975, at *20-21 (S.D.N.Y. Aug. 2, 2001) (refusing to allow Plaintiff to assert an "entirely new" theory of recovery).

6

evidence of undue prejudice, undue delay, bad faith, futility or dilatory motive. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Gerentine*, 2001 U.S. Dist. LEXIS 10975, at *15. Several of these exceptions are present here.

### 1. Consideration of the Elrifi Report Would Prejudice Defendants

Plaintiffs have had more than three years to amend their Complaint but chose not to do so. Indeed, Plaintiffs represented to the Court that they did not anticipate an amendment to the pleadings. *See* Rule 26(f) Report of Parties' Planning Meeting at (V)(D), approved and so ordered on June 12, 2002. The Elrifi Report is nothing more than a "last ditch attempt" to salvage Plaintiffs' case "in light of the overwhelming evidence" that the allegations in the Complaint are baseless. *Gerentine*, 2001 U.S. Dist. LEXIS 10975, at *18. "As such, there is an element of bad faith in [Plaintiffs'] untimely bid to add [these allegations] now." *Id.* (citations omitted). The Court should see through this tactic and grant Defendants' motion to strike.

Contrary to Plaintiffs' assertion, Defendants already have been and will continue to be prejudiced if the Elrifi Report is admitted as evidence. Neither the Complaint nor discovery provided notice to the Defendants of Plaintiffs' contention that whole genome shotgun sequencing was incapable of generating patentable discoveries. *See Kuczynski v. Ragen Corp.*, 732 F. Supp. 378, 381 (S.D.N.Y. 1989) ("Pleadings may not be amended to add an entirely new set of operative facts if the original complaint did not provide fair notice to the defendant. . . ."). As demonstrated above, the Complaint does not contain any allegations relating to deficiencies in Celera's sequencing methodology or its resulting difficulties in obtaining patent protection. Plaintiffs did not explore the efficacy of Celera's whole genome shotgun method during discovery, nor did they explore whether that sequencing method could lead to patentable discoveries. Plaintiffs did not depose Celera's patent counsel. Plaintiffs did not mark any of Celera's patent applications for identification during any of the depositions taken in this case.

7

Given the absence of allegations regarding Celera's sequencing methodology, Plaintiffs' non-existent to cursory examination of Celera's intellectual property strategy during depositions,[7] and Plaintiffs' failure to question a single witness about Celera's patent applications, Defendants did not have fair notice that the adequacy of Celera's sequencing method and its ability to meet the standards set out by the United States Patent and Trademark Office were issues in this litigation. Accordingly, Defendants did not conduct discovery that would be necessary to defend the claim that whole genome shotgun sequencing could not succeed. For example, Defendants would have deposed the scientists directly responsible for Celera's sequencing efforts, and the Celera scientists who published an accurate sequence and assembly of the human genome using whole genome shotgun data. Defendants would have also deposed Celera's patent counsel at the time of the Secondary Offering, who would have testified under oath that Celera has been highly successful in obtaining patents on discoveries derived from whole genome data.

### 2. Consideration of the Elrifi Report Would be Futile

The Court should not consider the Elrifi Report because its conclusions are nonsensical, illogical, lacking in merit, and will confuse any rational jury. The Report's conclusion – that Celera could not generate patentable gene sequences – flies in the face of indisputable, publicly available, admissible evidence. First, the Elrifi Report ignores the cautionary disclosures in the Prospectus regarding the unproven nature of Celera's sequencing methodology and Celera's ability to obtain patent protection. *See*, *e.g.,* Ex. 7 (Prospectus) at 8, 11, 12, 47-49. The third risk factor disclosed in the Prospectus states:

> [Some scientists] have stated that the human genome cannot be sequenced using whole genome shotgun sequencing. Although

---

[7] *See* footnote 3, *supra.*

> scientists at The Institute for Genomic Research have used the whole genome shotgun strategy to sequence the genomes of other organisms, *the strategy has not been used to sequence a genome with the size and complexity of the human genome* . . . [T]here can be no assurance that the Celera Genomics group will be successful in its assembly of the human genome . . . [F]ailure to complete the sequencing and assembly effort in a timely manner may have a material adverse effect on the Celera Genomics group's business.

*Id.* at 8 (emphasis added). The Prospectus also discloses that the "granting of patents on genomic discoveries is uncertain worldwide and is currently under review and revision in many countries . . . The Celera Genomics group cannot ensure that any changes to, or interpretations of, the patent laws will not adversely affect its patent position." *Id.* at 48. Because the so-called risk identified in the Elrifi Report is expressly disclosed in the Prospectus, it cannot form the basis for a claim under Section 11 of the Securities Act. *See Olkey v. Hyperion 1999 Term Trust*, 98 F.3d 2, 5 (2d Cir. 1996) (affirming dismissal of Section 11 claim where the "prospectuses warn[ed] investors of exactly the risk the plaintiffs claim was not disclosed.").

Moreover, the Elrifi Report essentially argues that Celera should have disclosed that whole genome shotgun sequencing could not work, *when history demonstrates conclusively that whole genome shotgun sequencing was a complete success*. It is undisputed that Celera published a sequence and assembly of the human genome using data solely derived from the whole genome shotgun method. *See* Ex. 1 (Sorin Istrail, *et. al.*, *Whole-Genome Shotgun Assembly and Comparison of Human Genome Assemblies*, PNAS, Feb. 17, 2004, at 1916-1921). It is also undisputed that Celera's intellectual property program based on discoveries derived from whole genome shotgun sequencing has been highly successful – Celera has received 149 gene patents in less then five years. *See* Ex. 2 at 13.

9

Given the frivolous findings in the Elrifi Report and the ample disclosures in the Prospectus regarding the topics addressed the Elrifi Report, the Court should reject Plaintiffs' attempt to amend the Complaint to include its findings. *See Livingston v. Bev-Pak, Inc.*, 112 F. Supp. 2d 242, 247-248 (N.D.N.Y. 2000) ("[E]ven if the Court were inclined to construe Plaintiff's assertion as a motion to amend, it would nevertheless deny the motion on the grounds that the amendment would be futile.") (citation omitted).

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendants' Motion to Strike, Defendants respectfully request that the Court strike the Elrifi Report in its entirety.

OF COUNSEL:

Michael J. Chepiga (ct01173)
Robert A. Bourque (ct05269)
William M. Regan (ct25100)
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY  10017
(212) 455-2000
(212) 455 2502 (fax)
mchepiga@stblaw.com (e-mail)

DEFENDANTS PE CORPORATION,
TONY L. WHITE, DENNIS L. WINGER
and VIKRAM JOG

By: _____
     Stanley A. Twardy, Jr. (ct05096)
     Thomas D. Goldberg (ct04836)
     Terence J. Gallagher (ct22415)
     Day, Berry & Howard LLP
     One Canterbury Green
     Stamford, CT 06901
     (203) 977-7300
     (203) 977-7301 (fax)
     tdgoldberg@dbh.com(e-mail)

**CERTIFICATION**

    This is to certify that a copy of the foregoing was sent by first class mail this 1st day of April, 2005, to:

| | |
|---|---|
| J. Daniel Sagarin, Esq.<br>Hurwitz, Sagarin & Slossberg, LLC<br>147 N. Broad Street<br>P.O. Box 112<br>Milford, CT 06460 | Sanford P. Dumain, Esq.<br>Carlos F. Ramirez, Esq.<br>Milberg Weiss Bershad & Schulman LLP<br>One Penn Plaza – 49th Floor<br>New York, NY 10119 |
| Liaison Counsel | Lead Counsel for Plaintiffs |

_____
Terence J. Gallagher

11