```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

In re: PE CORPORATION                    No.  3:00CV705(CFD)(TPS)
SECURITIES LITIGATION


## RULING ON PLAINTIFFS' MOTION TO COMPEL

The lead plaintiffs, David Berlin and Vinh Voung, on behalf of a class consisting of all persons other than the defendants who purchased the common stock of PE Corporation-Celera Genomics Group ("Celera") in a February 29, 2000 secondary public offering conducted by PE Corporation ("PE"), commenced this shareholder action against the defendants, PE and certain officers and directors, alleging that the registration statement and prospectus prepared in connection with the secondary public offering were false and misleading because Celera did not disclose failed negotiations between it and the federally-funded Human Genome Project ("HGP") in violation of sections 11, 12(a)(2), and 15 of the Securities Act of 1933.  Pending before the court is the plaintiffs' Motion to Compel the Testimony of Dr. Francis Collins, and to extend the discovery deadline solely for the purpose of conducting this deposition.  (**Dkt. # 112**).  The plaintiffs' motion is **GRANTED** and the discovery deadline is hereby extended forty-five days from the date of this ruling for the purpose of conducting this deposition.

## BACKGROUND

Celera, a subsidiary of PE, began sequencing the human genome in 1999. (Am. Compl. ¶¶ 7, 17). Its strategy was to sequence the genome and then "use the genomic information derived from its genomic sequencing program as a platform upon which to develop an integrated information and discovery system." (Id. ¶ 20). To implement this strategy, Celera required exclusive patent protection for a period of five years. (See id. ¶ 25). By January 2000, it announced that it had sequenced 90% of the human genome. (Id. ¶ 17).

At the same time, other companies were pursuing the same ends; most significantly, the HGP, "a worldwide coordinated effort . . . sponsored by governments and nonprofit organizations in the United States, England, Japan, and France, among other nations." (Id. ¶ 18). The HGP intended to make its findings publically available. As such, a "race" to map the human genome ensued. (Id. ¶ 19). Because Celera's competitive position was dependant upon its ability to obtain patent protection, it entered into discussions with the HGP regarding a possible collaboration on the project. (Id. ¶ 21, 24). However, such coaction never materialized. (Id.). The plaintiffs argue that because the governments that supported the HGP opposed broad patent protection, such as Celera required, Celera's "ability to obtain protection from the immediate release of the human genome code, in the face of such opposition, was very

attenuated and subject to increased and substantial risk." (Id. ¶ 26).

On or about February 29, 2000, PE filed with the Securities and Exchange Commission ("SEC") for a secondary offering. (Id. ¶ 32). The prospectus became effective and PE sold over 4 million shares for gross proceeds of approximately $944 million. (Id. ¶ 34). While most of the common stock was purchased for $225.00 per share, it has since significantly decreased in value, now selling for approximately eleven dollars. (Id.).

Generally, the plaintiffs argue that the registration statement and several sections of the prospectus issued in connection with the secondary offering were materially false and misleading in light of the fact that Celera would unlikely be able to obtain the requisite patent protection due, in large part, to their competition with and inability to collaborate with the HGP. (Id. ¶¶ 32-48). Specifically, they point to a single undisclosed meeting between senior members of Celera's management and four representatives of the HGP that was held on December 29, 1999 at a hotel near Dulles Airport. (Pl.s' Mem. Supp. Mot. at 1-2). The pending motion seeks to compel the deposition testimony of Dr. Collins, Director of the Human Genome Research Institute, National Institutes of Health ("NIH"), Department of Health and Human Services ("DHHS"), and the lead negotiator for the HGP at this meeting.

On July 2, 2004, the plaintiffs served Dr. Collins with a subpoena to take his deposition under Rule 45 of the Federal Rules of Civil Procedure. (Id. at 2). On July 9, 2004, the plaintiffs received a letter from Attorney Paul J. Robertson of the DHHS, which oversees the NIH, advising them of the DHHS's "obligations and responsibilities in proceedings in which the United States is not a party" under 45 C.F.R. Part 2, and referring the plaintiffs to Dr. Elias Zerhouni, Director of the NIH. (Fournier Aff., 10/12/04, Ex. A at 1).

On July 15, 2004, plaintiffs' counsel wrote a letter to Dr. Zerhouni requesting permission to take the deposition of Dr. Collins. (Fournier Aff., 10/12/04, Ex. B). The plaintiffs received a letter dated August 6, 2004 from Dr. Raynard S. Kingston, Deputy Director of the DHHS, denying their request due to their purported failure "to demonstrate how Dr. Collins' testimony will promote the objectives of the [DHHS]" and to "sufficiently explain why the testimony sought from Dr. Collins is not available through other means." (Fournier Aff., 10/12/04, Ex. C at 1).

In a letter dated August 20, 2004, plaintiffs' counsel requested that the DHHS reconsider its denial of their request, claiming that the testimony sought from Dr. Collins could not in fact be obtained from any other source. (Fournier Aff., 10/12/04, Ex. D). The plaintiffs supported their claim with the deposition testimony of Dr. Robert Waterston, another HGP participant in the

-4-

negotiations with Celera, who testified, among other things, that Dr. Collins was one of the individuals primarily in contact with Celera during the days leading up to the December 29 meeting and was the most knowledgeable person on the HGP side of the talks. (Id.).

On September 27, 2004, after a telephone conversation with Attorney Robertson wherein he indicated that the DHHS was not inclined to produce Dr. Collins for a deposition, plaintiffs' counsel sent a letter to Attorney Robertson offering to limit the scope and duration of Dr. Collins's deposition. (Fournier Aff., 10/12/04, Ex. E).

In a second letter dated September 27, 2004, Dr. Kingston denied the plaintiffs' request for reconsideration. (Fournier Aff., 10/12/04, Ex. F). On October 12, 2004, the plaintiffs filed this Motion to Compel the Testimony of Dr. Francis Collins, and to extend the discovery deadline solely for the purpose of conducting this deposition.

## DISCUSSION

The DHHS, like many other federal agencies, has enacted what are known as Touhy regulations,[1] which are derived from the federal

---

[1] The regulations earned their name from the Supreme Court case which validated the federal government's power to create "housekeeping" rules that allow it to prevent its employees from providing evidence in private actions. United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951). In Touhy, a state prisoner who had instituted a federal habeas corpus proceeding caused a subpoena *duces tecum* to be served on an agent of the Federal Bureau of

"housekeeping" statute, which provides, in relevant part, that: "The head of an Executive department . . . may prescribe regulations for the . . . conduct of its employees . . . and the custody, use, and preservation of its records, papers and property." 5 U.S.C. § 301. The regulation at issue in this case, which applies to any legal proceeding to which the United States is not a party, states that:

> No employee or former employee of the DHHS may provide testimony or produce documents in any proceedings to which this part applies concerning information acquired in the course of performing official duties or because of the person's official relationship with the Department unless authorized by the Agency head pursuant to this part based on a determination by the Agency head, after consultation with the Office of the General Counsel, that compliance with the request would promote the objectives of the Department.

45 C.F.R. § 2.3. The regulation also specifies the manner by which a party to a litigation may obtain the testimony of a DHHS

---

Investigation ("FBI"). Touhy sought to have produced certain records that he claimed would serve as evidence that his conviction was brought about by fraud. Relying on a regulation adopted by the Department of Justice pursuant to a predecessor "housekeeping" statute, the agent declined to produce the records. The regulation required subordinates in the Department served with a subpoena *duces tecum* to disobey the subpoena except in the discretion of the Attorney General. For his disobedience, the FBI agent was found guilty of contempt in the district court. The order of contempt was reversed by the Court of Appeals for the Seventh Circuit. In affirming the Seventh Circuit, the Supreme Court concluded that the Attorney General's regulation was appropriate, reasoning that: "When one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged is obvious." Id. at 468.

employee:

> All requests for testimony by an employee or former employee of the DHHS in his or her official capacity . . . must be addressed to the Agency head in writing and must state the nature of the requested testimony, why the information sought is unavailable by any other means, and the reasons why the testimony would be in the interest of the DHHS or the federal government.

45 C.F.R. § 2.4(a). The purpose behind such regulations is to "conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business." Boron Oil Co. v. Downie, 873 F.2d 67, 70 (4th Cir. 1989) (citing Reynolds Metals Co. v. Crowther, 572 F.Supp. 288, 290 (D. Mass. 1982)). The plaintiffs claim to have fulfilled their obligations under the DHHS's Touhy regulations. (Pl.s' Mem. Supp. Mot. at 7-9). The DHHS disagrees, and asserts that even if the plaintiffs did fulfill their Touhy obligations, it remains within its discretion to deny their request to depose Dr. Collins in accordance with the "arbitrary and capricious" standard of review established by the Administrative Procedure Act of 1946 ("APA"). (Mem. Opp'n Mot. to Compel at 5, 11). Furthermore, the defendants oppose the plaintiffs' motion on the grounds that it is untimely and seeks unnecessary and duplicative discovery. (Defs.' Resp. & Partial Opp'n at 2). The court is persuaded that the plaintiffs have complied with their obligations under 45 C.F.R. § 2.4(a) and declines to apply the standard of review furnished by the APA. The court also finds the testimony sought from Dr. Collins to be

-7-

neither unnecessary nor duplicative.

**A.**

The plaintiffs' July 15, 2004 request to Dr. Zerhouni clearly described the nature of the requested testimony, which relates to the negotiations between Celera and the HGP spanning a three to four month period and the resulting meeting that took place on December 29, 1999. (Fournier Aff., 10/12/04, Ex. B at 1-2). The plaintiffs also claimed that the discovery sought from Dr. Collins could not be obtained by any other means because

> he played a lead role in the negotiations between Celera and the HGP, including at the December 29, 1999 meeting, which lie at the core of plaintiffs' allegations. Also, as director of the National Human Genome Research Institute, which oversees the HGP, Collins was involved at the very highest levels of the negotiations and would certainly have more knowledge of the talks than anyone else on the government side.

(Id. at 2). Dr. Kingston replied in his initial rejection of August 6, 2004 that the plaintiffs "failed to sufficiently explain why the testimony sought from Dr. Collins is not available through other means" since "there were several individuals that were party to the discussion(s) at issue. Those individuals could be called to testify as to what occurred during these meetings." (Fournier Aff., 10/12/04, Ex. C at 1). The plaintiffs countered in their August 20, 2004 request for reconsideration with deposition testimony from Dr. Waterston, who often deferred to others, particularly Dr. Collins, regarding questions on the specifics of the meeting in question and could recall, for example, neither Celera's position regarding reach-through patent rights nor details

-8-

of a discussion concerning whether a public announcement should be made that the meeting took place, both relevant issues to the plaintiffs' shareholder action. (Fournier Aff., 10/12/04, Ex. D; Ex. G, Waterston Dep., at 82, 84).

Moreover, Dr. Waterston testified at his deposition--the transcript of which was offered to Dr. Kingston in the plaintiffs' request for reconsideration--that Dr. Collins was one of only a handful of people involved from the very outset of negotiations to collaborate with Celera (Fournier Aff., 10/12/04, Ex. G, Waterston Dep., at 37); Dr. Collins appears to be the only participant in a telephone conversation with Dr. Craig Venter, President of Celera, one day before the December 29 meeting, during which Dr. Venter expressed dissatisfaction with a "Shared Principles" document drafted by the HGP and forwarded to Celera in anticipation of the meeting (Id. at 69-73); and Dr. Collins was privy to discussions with other NIH officials concerning events surrounding the falling out between Celera and the HGP, to which Dr. Waterston was not. (Id. at 160-61). The plaintiffs' characterization of Dr. Collins as the leader of the government effort to collaborate with Celera is further supported by testimony from Dr. Harold Varmus, then Director of the NIH, who testified at his deposition that Dr. Collins was "the leader of our team of four" and "took the lead in the [meeting.]" (Fournier Aff., 10/12/04, Ex. H, Varmus Dep., at 98, 104).

Despite this new information, Dr. Kingston maintained in his

second denial of September 27, 2004 that the plaintiffs "have not sufficiently explained why Dr. Collins' memory would be any better than the individual(s) who has or will testify or any contemporaneous documents produced."[2] (Fournier Aff., 10/12/04, Ex. F at 1). How the plaintiffs could establish whether Dr. Collins has a better memory of the relevant events than other participants in the discussions without deposing him one is left to wonder. Regardless, this is not the standard by which the court evaluates the plaintiffs' motion. Instead, the court looks to

---

[2] Dr. Kingston further noted in this second denial of September 27, 2004 that

> [i]t appears that what [plaintiffs] really desire is to examine all the Federal officials that were present at these meetings or involved in these matters. If NIH were to allow this to happen in every case in which NIH was not a party, and in which every plaintiff or defendant believed NIH could be helpful, it would become increasingly difficult for us to effectively and efficiently conduct NIH official business.

(Id.). Numerous individuals affiliated with the HGP were involved at various levels in formulating its negotiating position with Celera. For example, an email from Dr. Collins thanking participants in "[a] conference call about possible next steps in exploring a collaborative next step with Celera" six days prior to the December 29 meeting was addressed to ten other people. (Fournier Aff., 11/19/04, Ex. F). To date, the plaintiffs have not deposed a single current DHHS employee, and the only person besides Dr. Collins for whom the plaintiffs sought permission from the DHHS to depose, Dr. Varmus, has not been employed by the DHHS for five years. (Pl.s' Reply Mem. Supp. Mot. at 8). Likewise, the DHHS's characterization of the testimony sought from Dr. Collins--the undisputed principal negotiator for the HGP at the meeting in question who devoted a significant amount of both his and the government's time engaging in talks with Celera--as merely "helpful" is an understatement. While potential disruption is certainly a legitimate concern for the DHHS, such exaggerations and unsupported assertions cause the court to doubt the validity of that concern here.

whether the plaintiffs have satisfied the requirements of 45 C.F.R. § 2.4(a), particularly, whether the testimony sought from Dr. Collins is available through other means.  Given the undisputed leading role Dr. Collins played in the discussions between the HGP and Celera, the deference shown to him by Drs. Waterston and Varmus when asked about key aspects of the December 29 meeting (See, e.g., Fournier Aff., 10/12/04, Ex. G, Waterston Dep., at 84-92), and his participation in relevant discussions to which others were not privy, the plaintiffs have adequately demonstrated that Dr. Collins's deposition testimony is not in fact available through other means.

Finally, the plaintiffs are required under 45 C.F.R. § 2.4(a) to state why the testimony sought would be in the interest of the DHHS or the federal government.  The initial July 15, 2004 request to Dr. Zerhouni described the federal government's interest in the defendants' alleged issuance of false and misleading offering materials in violation of federal securities laws and the resulting sharp drop in the value of Celera stock. (Fournier Aff., 10/12/04, Ex. B at 2).  Nevertheless, Dr. Kingston denied the plaintiffs' request on August 6, 2004 for "fail[ure] to demonstrate how Dr. Collins' testimony will promote the objectives of the [DHHS.]" (Fournier Aff., 10/12/04, Ex. C at 1).  Dr. Kingston restated this conclusory rationale in his denial of the plaintiffs' request for reconsideration.  (Fournier Aff., 10/12/04, Ex. F at 1).  The DHHS's own Touhy regulations, however, stipulate that the party

seeking testimony must give "reasons why the testimony would be in the interest of the DHHS *or the federal government*."  45 C.F.R. § 2.4(a) (emphasis added).  Thus, the plaintiffs can satisfy the last element of the Touhy regulations by showing that the testimony sought will further the interest of the federal government, if not the DHHS directly.

The DHHS's refusal to produce Dr. Collins is based in part on its view of this case as merely a "private matter between the parties" in which the federal government has, at most, a nominal interest.  (Fournier Aff., 10/12/04, Ex. C at 1; Ex. F at 1).  The court, however, takes a more weighty view of the government interest served by shareholder class actions.  "While it is certainly true that these actions involve claims by shareholders [], all private citizens, for large losses they have incurred, it is also true that the interests they seek to vindicate are those that Congress has regarded as very much in the federal public interest."  In re United States Bioscience Sec. Litig., 150 F.R.D. 80, 82 (E.D. Pa. 1993).[3]  Faced with an almost identical situation in Bioscience, the district court compelled the depositions of three Food and Drug Administration employees who possessed evidence relevant to securities laws violations and who were "the only

---

[3] "Moreover, [the Supreme Court] repeatedly ha[s] emphasized that implied private actions provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [Securities and Exchange] Commission action.'" Bioscience, 150 F.R.D. at 82 (citing Bateman Eichler, Hill, Richards, Inc. v. Berner, 472 U.S. 299, 310 (1985)).

independent sources for discovery and evidence" on issues crucial to the litigation. Id. The Bioscience court explained its reasoning as follows:

> The Bioscience representatives who were part of communications with these three FDA employees have told, or will tell, their story in depositions and at trial. In order to confirm the completeness and truthfulness of those accounts, the only possible test available to plaintiffs is to depose the FDA participants in those interchanges.

Id. Likewise, here Dr. Collins is being called as a fact witness because he was the lead representative of the HGP who was involved in all phases of the negotiations with the defendants, including the December 29 meeting, and therefore the best witness to test the accounts of the defendants' witnesses. Thus, while the federal government's interest lie in its agencies operating efficiently with as few disruptions as possible, as the DHHS points out, "[that interest] also includes the Congressionally-mandated assurance of the integrity of the public securities markets that are so crucial to the nation's economic well-being. This issue is most assuredly involved here." Id.

**B.**

The DHHS further argues that the APA, 5 U.S.C. § 706(2)(A), provides the appropriate standard of review to be applied on this motion, which it contends is "whether the [DHHS's] action in not authorizing the testimony of Dr. Collins was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'" (Mem. Opp'n Mot. to Compel at 5), relying on the Second

-13-

Circuit's opinion in <u>United States Envtl. Prot. Agency v. General Electric Co.</u>, 212 F.3d 689 (2d Cir. 2000) ("GE II"). In <u>GE II</u>, however, the Second Circuit expressly declined to decide whether the APA's standard of review should govern the district court's evaluation of the Environmental Protection Agency's refusal to comply with the third-party subpoena at issue, specifically noting that "a plausible argument can be made in support of the idea that Section 706 of the APA is not necessarily the appropriate standard of review." <u>Id.</u> at 690. More recently, the Second Circuit held that "the question of whether APA § 706 governs courts' review of agency non-compliance with discovery requests--[is] a question which is, in any event, *far from settled*." <u>Semon v. Stewart</u>, 374 F.3d 184, 192 (2d Cir. 2004) (emphasis added). The court observed that "some of our sister circuits have affirmatively held that APA § 706 does not apply to motions to compel agency compliance with subpoenas." <u>Id.</u> at 191 (<u>citing</u> <u>Exxon Shipping Co. v. United States Dep't of Interior</u>, 34 F.3d 774, 778-79 (9th Cir. 1994); <u>Linder v. Calero-Portocarrero</u>, 251 F.3d 178, 180-81 (D.C. Cir. 2001)). In <u>Exxon</u>, the Ninth Circuit stated:

> We acknowledge the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations. However, we are confident that district courts can, and will, balance the government's concerns under the general rules of discovery. The Federal Rules of Civil Procedure explicitly provide for limitations on discovery in cases such as this. Rule 26(c) and Rule 45(c)(3) give ample discretion to district courts to quash or modify subpoenas causing "undue burden."

Id. at 779.  Accordingly, on this motion, the court need only balance the plaintiffs' right to obtain relevant evidence pursuant to the applicable federal discovery rules against the government's concerns regarding the potential disruption of Dr. Collins's official duties.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that

> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery.  See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988).

A party may object to a request if it is "overly broad" or "unduly burdensome."  Charles A. Wright, et al., 8A Federal Practice & Procedure § 2174, at 297 (2d ed. 1994).  To assert a proper objection on this basis, however, one must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad.  Compagnie Francaise

D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984). Instead, the objecting party bears the burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." Id. (internal citations and quotation marks omitted). See also Hickman v. Taylor, 329 U.S. 495, 507 (1947) (stating that "the deposition-discovery rules are to be accorded a broad and liberal treatment").

If a party resists or objects to discovery, Rule 37(a) of the Federal Rules of Civil Procedure provides that the other party, "upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery . . . ." Fed. R. Civ. P. 37(a). The defendant, as the objecting party, bears the burden of showing why discovery should be denied. Blakenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975). Moreover, the court is afforded broad discretion in deciding discovery issues. See Wills v. Amerada Hess Corp., 379 F.3d 32, 41 (2d Cir. 2004).

For all of the aforementioned reasons, the relevance of Dr. Collins's testimony in this shareholder action weighs in favor of allowing his deposition. The DHHS's *pro forma* denials and subsequent arguments on this motion have not satisfied its burden

of showing how allowing Dr. Collins to testify would be an "undue burden" on him or the government.  See Fed. R. Civ. P. 26(c) & 45(c)(3)(A)(iv).

### C.

The defendants oppose the plaintiffs' motion as untimely, arguing that they "could have taken steps to secure the testimony of Dr. Collins prior to October 12, 2004, eight days before the current fact discovery cut-off." (Defs.' Resp. & Partial Opp'n at 6). However, Dr. Collins was first served with a subpoena on July 2, 2004, over three months prior to the discovery deadline. From the time the subpoena was served, the plaintiffs worked to comply with the DHHS's Touhy regulations and sought to resolve this issue without the court's intervention. Furthermore, the plaintiffs filed this motion prior to the discovery cut-off and moved the court to extend the deadline solely for the purpose of deposing Dr. Collins. The plaintiffs' motion is therefore timely and the defendants' argument is without merit.  See Fed. R. Civ. P. 26(b)(2)(ii).

The defendants' also oppose the plaintiffs' motion on the ground that it seeks unnecessary and duplicative testimony, pointing out that the plaintiffs have already deposed six of the eight attendees at the meeting in question, including Drs. Waterston and Varmus from the HGP side, and obtained extensive document production from the HGP participants, including substantial communications and notes prepared by Dr. Collins. (Id.

-17-

at 8). The court is unpersuaded by this argument as well, having already mentioned the deference shown to Dr. Collins regarding questions on the specifics of the meeting in question, and how Dr. Collins, as the principal negotiator for the HGP, coordinated virtually every aspect of the negotiations with Celera and was the most knowledgeable person on the HGP side of the talks. Requiring Dr. Collins to be deposed is therefore not "unreasonably cumulative or duplicative." See Fed. R. Civ. P. 26(b)(2)(i).

Under Rule 30 of the Federal Rules of Civil Procedure, "[u]nless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours." Fed. R. Civ. P. 30(d)(2). To minimize the disruption to the DHHS, the plaintiffs offered to limit the scope and duration of Dr. Collins's deposition. (Fournier Aff., 10/12/04, Ex. E at 1-2). The defendants, however, request that the court reject any temporal and subject matter limitations in the event the plaintiffs' motion is granted so that they may have a full and fair opportunity to cross-examine Dr. Collins. (Defs.' Resp. & Partial Opp'n at 10). If the defendants are not given such an opportunity, Dr. Collins's testimony will be deemed inadmissible hearsay at trial. Fed. R. Civ. P. 804(b)(1); Cury v. Philip Morris USA, 1995 U.S. Dist. LEXIS 14798, at *3 (S.D.N.Y. Oct 6, 1995). The court therefore orders the DHHS to produce Dr. Collins for a full deposition pursuant to Rule 30 within forty-five days of the date of this ruling.

For the foregoing reasons, the plaintiffs' motion to compel is

**GRANTED.** This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court unless modified by the district judge upon motion timely made. See 28 U.S.C. § 636(b) (written objections to ruling must be filed within ten days after service of same).

**IT IS SO ORDERED.**

Dated at Hartford, Connecticut this 8th day of April, 2005.

_____
**THOMAS P. SMITH**
**UNITED STATES MAGISTRATE JUDGE**