UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

———————————————————————

IN RE:  PE CORPORATION SECURITIES
LITIGATION

Master File No. 3:00CV-705 (CFD)

:
:
:
:                June 7, 2005

———————————————————————

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR APPROVAL OF THEIR PROPOSED NOTICE OF PENDENCY OF CLASS ACTION

Plaintiffs respectfully submit this memorandum of law in support of their Motion for Approval of the Proposed Notice of Pendency of Class Action, pursuant to Fed. R. Civ. P. 23(c)(2)(B) and Local Rule 7.  As demonstrated below, defendants' anticipated objections to plaintiffs' proposed notice of pendency of class action (the "Proposed Class Notice") are without merit.  The Proposed Class Notice amply satisfies the mandatory notice requirements of Rule 23(b)(3) and accordingly, the Court should approve the Proposed Class Notice.

### PRELIMINARY STATEMENT

By Order dated March 31, 2005, the Court granted plaintiffs' motion for class certification.  Consistent with the mandate of Federal Rule of Civil Procedure 23 ("Rule 23"), plaintiffs are now endeavoring to provide notice to the Class.  The parties have agreed to all of the components of the Proposed Class Notice, Proposed Summary Notice and Proposed Notice Order, annexed to plaintiffs' motion, except for the description of this action, which is set forth in paragraph 8 of the Proposed Class Notice.

Based upon their proposed language regarding the description of plaintiffs' claims, and the arguments in their motions for summary judgment and to strike the report of plaintiffs'

intellectual property expert, plaintiffs anticipate that defendants will oppose this motion on the

principal ground that certain omissions in the subject Registration Statement and Prospectus

identified by plaintiffs, should be excluded from the Proposed Class Notice because some of the

facts regarding those claims, and the Expert Report of Dr. Ivor R. Elrifi (the "Elrifi Report")

which directly supports those claims, were not specifically alleged in the First Amended

Consolidated Class Action Complaint, (the "Complaint").  However, as discussed further below,

those omissions were asserted in the Complaint, and thus, are properly included in the Proposed

Class Notice.  Moreover, there is no requirement that a notice of pendency of a class action be

limited to the specific allegations in the complaint.  Indeed, here, where merits and expert

discovery have been conducted, potential class members should make the decision whether or

not to exclude themselves from the action based upon a fair description of the relevant facts.

Accordingly, the Court should approve plaintiffs' Proposed Class Notice.

## RELEVANT FACTUAL BACKGROUND[1]

Plaintiffs, on behalf of a class of purchasers of PE Corporation Celera Genomics

("Celera") tracking stock pursuant, or traceable, to a prospectus (the "Prospectus") filed with the

Securities and Exchange Commission on February 29, 2000 in connection with a secondary

offering (the "Offering")[2], allege that with respect to Celera's business plan to become the next

_____

[1]  A complete recitation of the facts is set forth in Plaintiffs' Statement of Disputed Facts,
[Docket No. 133], filed in connection with Plaintiffs' Memorandum of Law in Opposition to
Defendants' Motion for Summary Judgment.  [Docket No. 144].

[2]  The parties have agreed upon the following class definition, which is set forth in the Proposed
Class Notice and Proposed Summary Notice:

> All persons who purchased the common stock of PE Corporation Celera
> Genomics Group ("Celera") in or traceable to a secondary public offering of
> Celera common stock conducted by PE Corporation on or about February 29,
> 2000, excluding defendants, members of the individual defendants' immediate

Bloomberg or Lexis-Nexis of genomic information, the Prospectus failed to disclose that Celera

needed to collaborate with the publicly funded Human Genome Project (the "HGP") to obtain

the necessary exclusivity for the human genome sequence that was to serve as the foundation for

that business. *See* Compl., ¶ 21[3] ("Celera's competitive position . . . was dependant upon its

ability to protect its database information through patent and copyright protection."); *Id.*, ¶ 42

("Maintaining exclusive rights to this information was material to Celera's business strategy.

First, it would continue to fuel their genomic database subscription business . . . . Second, Celera

would be able to keep important genomic information away from its competitors . . . ."); *Id.*, ¶ 46

(Celera needed exclusive rights to the human genome sequence because "public dissemination of

the human genome map was a material risk to Celera's business strategy . . . ."); *Id.*, ¶ 48 ("[The

Prospectus] was false and misleading because it failed to mention that Celera itself believed,

above anything else, that maintaining exclusive rights to the human map was the most important

aspect of its business strategy.").

      Plaintiffs further allege that the Prospectus failed to disclose that negotiations in the Fall

of 1999 between the HGP and Celera regarding such a collaboration culminated in a meeting

between senior officials from both sides on December 29, 1999, which ended in disaster for

Celera.  Compl., ¶ 39(c) ("discussions between the Human Genome Project and Celera had

broken down in December 1999 over the issue of how long Celera would have exclusive rights

to the data;"); *Id.*, ¶ 40 (the Prospectus "failed to disclose discussions between the Company and

---

      family, PE Corporation's officers and directors, any entities in which any
      defendant has or had a controlling interest, any entities that are a parent or
      subsidiary of or are controlled by PE Corporation, and any affiliates, legal
      representatives, heirs, predecessors, successors and assigns of any of the excluded
      parties.

[3] References to "Compl. ¶ __" and "Compl. ¶¶ __" are to paragraphs in the Complaint.

the Human Genome Project or that those discussions had broken off in December 1999."). By

the end of the meeting it was apparent that Celera would be unable to achieve the necessary

foundation for its information business. *Id.*

The Elrifi Report bolsters these allegations. Specifically, Dr. Elrifi opines that even

before Celera began to sequence the human genome, defendants knew that Celera could not

successfully implement its information business strategy without collaborating with the HGP

because the Whole Genome Shotgun sequencing method employed by Celera (the "WGS

Method") was incapable of producing a quality, commercially viable gene sequence that could

serve as the foundation for this business. *See, e.g.,* Docket 146, Exh. 65 (Elrifi Rep., ¶¶ 21-22).[4]

Plaintiffs also allege, with respect to Celera's intellectual property business strategy, that

statements in the Prospectus that Celera planned "to apply for patent protection upon

identification of candidate novel genes, novel gene fragments and their biological function or

utility" and certain risk factors therein emphasizing the importance of Celera's patenting

strategy, were false and misleading because, among other things, Celera failed to disclose that

---

[4]  Documents produced by, and testimony from, senior HGP scientists, expressing wide-spread
concerns that Celera could not produce quality sequence data without the HGP's help, confirms
Dr. Elrifi's opinion. *See* Docket 146, Exh. 3 (Waterston Tr. at 17-18, 44, 54, 170); *Id.,* Exh. 14
(Nov. 21, 1999 email from Waterston to Dr. Morgan stating that Waterston believed Celera
wanted to collaborate to validate their sequence, of which many people were skeptical); *Id.,* Exh.
13 (Nov. 19, 1999 email from Dr. Varmus to Dr. Waterston stating: "I am not ready to
acknowledge that Celera could put the human [genome] sequence together without the public
effort."); *Id.,* Exh. 6 (Varmus Tr. at 20-21, 42-43) (testifying that he "was dubious about whether
whole genome sequencing can be used to assemble the sequences of [the human] genome" and
that he did not believe that Celera could complete sequencing the human genome without help
from the HGP); *Id.,* Exh. 12 (Dr. John Sulston stated in a Nov. 14, 1999  memo that, in his view,
he was not convinced that Celera had the capability or commitment to sequence the human
genome); *see also* Exh. 65 (Elrifi Rep., ¶ 40 ("As discussed above, the predictive value of
Celera's computational methods to derive information from genomic DNA is questionable
because there is a large variance in accuracy between different computational methods for
genomic DNA analysis. *Indeed, Dr. Craig Venter, Celera's former president agrees that this is
the case.*") (citing Venter et al. Science 291(5507):1304-1351, at 1317) (emphasis added).

"the true risks of Celera's ability to obtain patent protection for its genomic discoveries were significantly greater than represented." Compl., ¶ 47; *see also Id.*, ¶ 39(f) ("the Company's ability to implement its 'strategy' of sequencing the human genome and patenting discoveries . . . was problematic at best and certainly subject to increased risk and uncertainty . . ." beyond those disclosed); *Id.*, ¶ 42 (quoting Prospectus' purported risk factors p. 48); *Id.* ¶¶ 47-48 (quoting Prospectus purported risk factors pp. 11-12).[5]

As the Elrifi Report explains, the WGS method was not suitable for generating meaningful intellectual property, because it generated genomic DNA as opposed to cDNA used by Celera's commercial competitors. Elrifi Rep., ¶¶ 41-42. Structural differences in DNA as compared to cDNA made gene sequencing and assembly of the sequence more difficult and susceptible to mistake, (*Id.*, ¶ 43), and made it less likely that Celera could satisfy recently revised 1999 U.S. Patent and Trademark office guidelines. *Id.*, ¶16.

Prior to filing this motion, plaintiffs' provided defendants with a Proposed Class Notice, that contained a description of plaintiffs' claims that is consistent with the Complaint and the foregoing facts (*see* Exhibit A hereto).

---

[5] Testimony from senior officials of PE Corporation and Celera, including Celera's President and PE Corporation's CEO, confirms plaintiffs' assertions regarding misstatements in the Prospectus regarding Celera's patenting strategy. *See, e.g.,* Docket No. 146, Exh. 5 (Venter Tr. 23-24 (testifying that he opposed the gene patenting prong of Celera's business strategy because, "at best [Celera] would get - - have intellectual property on a few hundred human genes."); *Id.* at 125-26 (testifying that there were very few unique genes to be discovered and patented); *Id.*, Exh. 8 (White Tr. at 110-11 - admitting that at the time of the secondary offering, Celera did not have the ability to locate commercially useful genes).

In response, defendants proposed language that described additional allegations in the Complaint, but which plaintiffs believed presented an incomplete, and thus misleading, description of the claims (*see* Exhibit B hereto).

In an effort to insure that Class members received the most comprehensive description of plaintiffs' claims, in a manner that was not misleading, plaintiffs integrated elements from defendants' proposed language into their description of the claims and proposed the following language to defendants:

> Plaintiffs allege that the Registration Statement and Prospectus failed to disclose that: (i) Celera needed exclusive rights to the human genome sequence to implement its stated business plan; (ii) a collaboration with the Human Genome Project was critical to Celera's ability to obtain exclusive rights to the human genome sequence that was necessary to implement its business model; (iii) collaboration discussions between Celera and the Human Genome Project, which had occurred throughout the Fall of 1999, culminated at a December 29, 1999 meeting at Dulles Airport, where negotiations broke down because Celera wanted the exclusive rights to license the joint Celera/Human Genome Project human genome sequence for an extended period of time; (iv) after the December 29, 1999 meeting, Celera knew that it would not be able to achieve the necessary collaboration with the Human Genome Project and Celera faced the real risk that the power of the US and UK governments, the principal sponsors of the HGP, could be utilized to prevent Celera from reaching its goal of stalling the release of the human genome code and obtaining patent and copyright protection for its genomic discoveries, which was evidenced by a March 14, 2000 joint statement issued by President Clinton and Prime Minister Tony Blair reiterating the position of their respective governments that all information about gene sequencing and the human genome should be publicly available; and (v) Celera was incapable of producing patentable gene sequences. Plaintiffs allege that these omissions caused Celera's Registration Statement and Prospectus, and certain statements therein, to be materially false and misleading, thereby artificially inflating the price of Celera's stock, in violation of the federal securities laws.

Defendants refused to consent to this language on the ground that it purportedly "does not fairly reflect Plaintiffs' allegations." Defendants neither explained the basis of their position, nor did they offer a new proposal. Thus, plaintiffs were compelled to make this motion.

# ARGUMENT

### A.    Class Members Are Entitled To Receive "The Best Notice Practicable"

For classes certified pursuant to Rule 23(b)(3), the court is required to direct the "best notice practicable" to class members to allow them the opportunity to protect their individual interests in their potential monetary recovery and to opt out of the class if desired.  Fed. R. Civ. P. 23(c)(2)(B); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir. 1987).  Indeed, "[n]otice to class members is crucial to the entire scheme of Rule 23(b)(3)" because "[i]t sets forth an impartial recital of the *subject matter* of the suit, informs members that their rights are in litigation, and alerts them to take appropriate steps to make certain their individual interests are protected."  *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980) (emphasis added) (citing *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1125 (9th Cir. 1977); *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977)).

The mandatory notice procedures are designed to protect a class member's constitutional due process rights by requiring that the notice sufficiently describe, among other things, "the nature of the action," the "class claims, issues, or defenses" and class members' rights in the action.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); *Agent Orange*, 818 F.2d at 169; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).  Indeed, the content and form of the notice should allow class members to make informed choices regarding their rights in the litigation.  *Id.*  "[N]otices to class members which are factually or legally incomplete . . . or contain untruths will surely result in confusion and adversely affect the administration of justice."  *Erhardt*, 629 F.2d 843 at 846.

**B.     The Proposed Class Notice Is The Best Practicable Notice Because It Accurately Describes The Claims That Plaintiffs Are Pursuing**

In order to afford class members their due process rights, and to allow them to make an informed choice as to whether to exclude themselves from the Class, the Proposed Class Notice, rather than ignoring the discovery record, seeks to advise Class members of the claims that plaintiffs intend to pursue at trial.  This will allow Class members to accurately evaluate their claims and make an informed decision as to whether to request exclusion.  *Phillips*, 472 U.S. at 812 (due process for class-action plaintiffs requires "notice plus an opportunity to be heard and participate in the litigation").  To mechanically adhere to the Complaint, while excluding a description of the current state of plaintiffs' claims, as defendants suggest, would at a minimum, be misleading to class members and force them to blindly make decisions affecting their individual rights based upon inaccurate information.  Moreover, the law in this Circuit plainly states that plaintiffs must provide class members with notice of the *subject matter* of their claims. *Erhardt*, 629 F.2d 843 at 846.  The law does not require that the class notice mirror the Complaint and ignore the current factual record, developed through months of discovery. Accordingly, plaintiffs' proposed language complies with Rule 23's due process requirement.

Under the guise of attacking the Proposed Class Notice, defendants are making yet another attempt to have this Court ignore the facts that plaintiffs developed during discovery. First, defendants contend that the omissions set forth in the Proposed Class Notice were not asserted in the Complaint, and thus, must be excluded from the notice.  Contrary to defendants' contention, however, each of the three omissions identified by plaintiffs that defendants are not including in their proposed description of the claims was alleged in the Complaint.  *See* Proposed Class Notice, ¶ 8(i) ("Celera needed exclusive rights to the human genome sequence to implement its stated business plan," alleged in the Complaint at ¶¶ 21, 42, 46, 48); *Id.*, ¶ 8(ii) ("a

collaboration with the Human Genome Project was critical to Celera's ability to obtain exclusive rights to the human genome sequence that was necessary to implement its business model," alleged in the Complaint at ¶¶ 21, 42); *Id.*, ¶ 8(v) ("Celera was incapable of producing patentable gene sequences," alleged in the Complaint at ¶¶ 39(f); 42, 47, 48).

Second, defendants seek to exclude plaintiffs' description of the omissions because, in their view, certain evidence supporting those claims – namely the opinions in the Elrifi Report – are not relevant admissible evidence because the opinions in the Elrifi Report were not specifically included in the Complaint. However, the opinions contained in the Elrifi Report need not specifically appear in the Complaint to be admissible at trial so long as the evidence is relevant to an allegation in the Complaint. *See Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) (on summary judgment court should consider evidence outside the pleadings); *Equal Employment Opportunity Comm'n v. New Cherokee Corp.*, 829 F. Supp. 73, 76 (S.D.N.Y. 1993) (affidavits and exhibits outside of pleadings are appropriate for consideration on motion for summary judgment); *In re Info. Res. Sec. Litig.*, No. 89 C 3772, 1992 U.S. Dist. LEXIS 8384, at *10-11 (N.D. Ill. June 12, 1992) (holding that accounting theories contained in the report of plaintiffs' expert were evidence with respect to claims raised in the complaint, not new claims).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion should be granted and the Court should enter the Proposed Notice Order approving the Proposed Class Notice.

Respectfully submitted,

THE PLAINTIFFS

By _____
David A. Slossberg (CT13116)
Brian C. Fournier (CT16272)
**HURWITZ, SAGARIN
  & SLOSSBERG, LLC**
147 N. Broad Street, P.O. Box 112
Milford, CT 06460
(203) 877-8000

*Liaison Counsel for Class Plaintiffs*

Sanford P. Dumain (CT08138)
Lee A. Weiss (CT21345)
Shannon L. Hopkins
**MILBERG WEISS BERSHAD
  & SCHULMAN LLP**
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

*Lead Counsel for Class Plaintiffs*

DOCS\282101v1

10

## Certificate of Service

This is to certify that a copy of the foregoing was mailed, first class mail on June 7, 2005 to:

Stanley A. Twardy, Jr., Esq.
Thomas D. Goldberg, Esq.
Terence J. Gallagher, Esq.
Day, Berry & Howard, LLP
One Canterbury Green
Stamford, CT 06901

Michael J. Chepiga, Esq.
Robert A. Bourque, Esq.
William M. Regan, Esq.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954

_____
Brian C. Fournier