UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------------------x
                                                                 :
                                                                 :
                                                                 :
                                                                 :
                                                                 :
In re PE Corporation Securities Litigation                       :  Master File No. 3:00 CV 705 (CFD)
                                                                 :
                                                                 :  June 28, 2005
                                                                 :
                                                                 :
-----------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR APPROVAL OF THEIR PROPOSED
<u>NOTICE OF PENDENCY OF CLASS ACTION</u>**

**Table of Contents**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .................................................................................................................................3

I. THE PROPOSED CLASS NOTICE DOES NOT COMPLY WITH RULE 23 ................4

    A. Plaintiffs' Description of the Nature of the Action is Misleading..........................4

        1. The "Government Retaliation Theory" is the Only Theory Pled in the Complaint ...................................................................................................5

        2. Plaintiffs' New Theories are Not Pled in the Complaint and Were Not Developed During Discovery ...................................................................7

    B. Defendants' Proposed Language Will Adequately Inform Potential Class Members of the Issues to be Tried...........................................................................9

II. PLAINTIFFS MUST BEAR THE COST OF CLASS NOTICE, INCLUDING THE COST OF OBTAINING THE NAMES AND ADDRESSES OF POTENTIAL CLASS MEMBERS ...................................................................................................................... 10

CONCLUSION ............................................................................................................. 13

## Table of Authorities

### Cases

*Ansam Assoc., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442 (2d Cir. 1985)................................ 5

*Berse v. Berman*, 60 F.R.D. 414 (S.D.N.Y. 1973) ....................................................................... 4

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ........................................................... 10, 11

*Erhardt v. Prudential Group, Inc.*, 629 F.2d 843 (2d Cir. 1980)............................................ 4, 9

*Gates v. Dalton*, 67 F.R.D. 621 (E.D.N.Y. 1975) ...................................................................... 10

*Gerentine v. United States*, No. 00 Civ. 0813, 2001 U.S. Dist. LEXIS 10975
(S.D.N.Y. Aug. 2, 2001) ........................................................................................................ 5, 9

*In re School Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988)......................................................... 9

*Libront v. Columbus McKinnon Corp.*, No. CIV-83-858E, 1984 U.S. Dist. LEXIS 21259
(W.D.N.Y. Dec. 13, 1984) ........................................................................................................ 4

*Macarz v. Transworld Sys.*, 201 F.R.D. 54 (D. Conn. 2001)...................................................... 4

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).................................................. 11, 12

*Uniondale Beer Co. v. Anheuser-Busch, Inc.*, 117 F.R.D. 340 (E.D.N.Y. 1987) ...................... 10

### Rules

Fed. R. Civ. P. 23(c)(2)(B)............................................................................................................ 4

Defendants PE Corporation, Tony L. White, Dennis L. Winger, and Vikram Jog (collectively, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' Motion for Approval of the Proposed Notice of Pendency of Class Action ("Proposed Class Notice"). The Proposed Class Notice cannot be approved because: (i) it alleges a theory of liability entirely different from the claim set forth in the operative First Amended Complaint (the "Complaint"); and (ii) the proposed order accompanying the Proposed Class Notice does not require Plaintiffs to bear the costs of class notice.

## PRELIMINARY STATEMENT

In their Proposed Class Notice, Plaintiffs seek to inform potential class members of a case that, put simply, does not exist. For four years, the operative Complaint in this case has alleged a single theory of liability – that the Prospectus and Registration Statement prepared in connection with Celera's February 29, 2000 secondary public offering ("Prospectus") was false and misleading because it failed to disclose that the United States and United Kingdom governments were going to, and in fact did, take aggressive and punitive action against Celera because Celera did not reach an agreement to collaborate with the federally-funded Human Genome Project ("HGP") at a meeting that occurred on December 29, 1999. This "government retaliation" theory is the centerpiece and linchpin of Plaintiffs' case.

Attached as Exhibit A is the Complaint. By comparing the Complaint to Plaintiffs' moving brief, the Court will see that Plaintiffs' misleadingly cite words and phrases that appear in different paragraphs of the Complaint, take those words and phrases out of context, and improperly attempt to "reconstruct" a new Complaint in the guise of class notice. Plaintiffs' moving brief, and the Proposed Class Notice, bear no resemblance to the Complaint itself. Contrary to Plaintiffs' spin, there are no allegations in the Complaint that are independent

of "government retaliation." Indeed, without "government retaliation," the Complaint does not allege any set of facts by which the Prospectus could possibly be considered false or misleading, or even that anything negative ever happened to Celera.

And Plaintiffs have completely abandoned any allegation of "government retaliation." In their Local Rule 56 statement submitted in opposition to Defendants' pending motion for summary judgment, Plaintiffs *admitted* that:

- The HGP *never* petitioned any entity affiliated with the U.S. or U.K. government to retaliate against or punish Celera as a result of the December 29 meeting. Pl. R.56 St. at ¶ 46.[1]

- The March 14, 2000 Joint Statement by United States President Bill Clinton and United Kingdom Prime Minister Tony Blair is *not* evidence that the government retaliated against Celera. *Id.* at ¶ 47.

- Dr. Neal Lane, Director of the President's Office on Science Technology Policy confirmed that the Joint Statement was *unrelated* to discussions between Celera and the HGP: "I want to make it absolutely clear that [the Joint Statement] has nothing to do with any ongoing discussions between the public and private sector." *Id.* at ¶ 49.

- On March 16, 2000, the United States Patent and Trademark Office ("PTO") issued a press release confirming that the Joint Statement *did not change* patent law in any way. *Id.* at ¶ 50.

- The drafting of the Joint Statement *preceded* discussions between the HGP and Celera. *Id.* at ¶ 52.

- *No one* from the HGP contacted the PTO regarding Celera's ability to obtain intellectual property protection for its genomics discoveries or sought any change in intellectual property law. *Id.* at ¶ 53.

---

[1] Plaintiffs' Response To Defendants' Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried is cited herein as "Pl. R.56 St. at ¶ __."

2

Having thoroughly and completely abandoned the Complaint, Plaintiffs improperly seek to use the class notice device as a mechanism to amend their complaint. Plaintiffs seek to amend the Complaint and notify potential class members of *new* theories of liability that are wholly unrelated to "government retaliation" – the "business plan theory" and the "bad science theory." Of course, Rule 15 of the Federal Rules of Civil Procedure is the appropriate mechanism for amending complaints, not class notice.

The purpose of class notice is to inform potential class members of the nature of the action in order to enable them to make an informed decision about their participation in the class, not to amend the Complaint or plead new theories of recovery. The Proposed Class Notice, if approved, would provide potential class members with a false and misleading description of the issues that will ultimately be tried. The Court has a duty to ensure adequate class notice and should not countenance Plaintiffs' attempt to amend the Complaint through the class notice device.

Moreover, the Proposed Class Notice is also defective because it does not make clear that Plaintiffs are required to bear the cost of obtaining the names and addresses of the potential class members from Defendants' transfer agent. Plaintiffs erroneously contend that the names of the potential class members are in the nature of discovery and that the cost of obtaining that information should be paid by Defendants. The Supreme Court long ago settled this issue and decidedly held that Plaintiffs must bear these costs.

## **ARGUMENT**

Because Rule 23 requires class notice to accurately inform potential class members of the nature of the action, which must be taken from the allegations in the Complaint,

3

and the Supreme Court requires Plaintiffs to bear the costs of obtaining the names and addresses of potential class members, the Court must reject the Proposed Class Notice.

I.   **THE PROPOSED CLASS NOTICE DOES NOT COMPLY WITH RULE 23**

   A.   **Plaintiffs' Description of the Nature of the Action is Misleading**

Notice to class members is crucial to the entire scheme of Federal Rule of Civil Procedure 23(b)(3). *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980) (citation omitted). The main purpose of the notice requirement is to "fairly insure the protection of absent parties who are to be bound." *Berse v. Berman*, 60 F.R.D. 414, 416 (S.D.N.Y. 1973). Specifically, Rule 23 requires that:

> [f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. ***The notice must concisely and clearly state in plain, easily understood language . . . the nature of the action***.

Fed. R. Civ. P. 23(c)(2)(B) (emphasis added). "The Court bears the responsibility of directing the best notice practicable to class members and of safeguarding them from unauthorized, misleading communications from the parties or their counsel." *Macarz v. Transworld Sys.*, 201 F.R.D. 54, 57 (D. Conn. 2001) (internal quotations omitted); *see also Erhardt*, 629 F.2d at 846 ("It is the responsibility of the court to direct the 'best notice practicable' to class members.")

Because the complaint serves as the "roadmap" in every litigation, the "nature of the action" must be derived from the allegations in the Complaint. Thus, where allegations are not contained in the Complaint, they are not properly before the court and cannot form the basis for class notice. *See Libront v. Columbus McKinnon Corp.*, No. CIV-83-858E, 1984 U.S. Dist. LEXIS 21259, at *4-5 (W.D.N.Y. Dec. 13, 1984) (court ordered proposed class notice to be revised "[i]n view of the allegations in the Complaint").

4

Paragraph 8 of the Proposed Class Notice describes a case that is not pled in the Complaint and, essentially, does not exist. Instead, Plaintiffs' Proposed Class Notice describes a theory of this case that Plaintiffs created five years after it began by taking words and phrases from the Complaint out of context and "reconstructing" a new Complaint after the close of fact and expert discovery. Plaintiffs' failure to accurately describe the nature of the action is certainly misleading and the Court, therefore, cannot approve the Proposed Class Notice.

Furthermore, class notice cannot serve as a vehicle to amend the Complaint. *Cf. Ansam Assoc., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (affirming district court decision not to permit amendment of complaint where proposed amendment contained new theories of recovery); *Gerentine v. United States*, No. 00 Civ. 0813, 2001 U.S. Dist. LEXIS 10975, at *20-21 (S.D.N.Y. Aug. 2, 2001) ("[T]o allow Plaintiff to assert entirely new, and at the same time entirely deficient, factual bases for her tort claims near the close of discovery and after the Individual Defendants have filed their motion . . . would substantially prejudice the defendants and essentially extinguish the already-minimal requirement of notice pleading."). Plaintiffs, however, seek to do just that. Plaintiffs are asking this Court to wholly ignore the operative Complaint that was filed in 2001 and allow them to notify potential class members of what they wish the Complaint actually alleged. The Complaint alleges only one theory of recovery – the "government retaliation theory" – and that is the only theory about which potential class members should be notified.

1. **The "Government Retaliation Theory" is the Only Theory Pled in the Complaint**

The Complaint pleads a single, straightforward theory on why Plaintiffs believe the Prospectus was false and misleading. According to the Complaint, Celera's failure to reach an agreement to collaborate with the HGP at a December 29 meeting was likely to result in

5

punitive action against Celera by the United States and United Kingdom governments. *See, e.g.,* Complaint ¶ 26 (government would take "aggressive and punitive action against Celera"); ¶ 27 ("power of the U.S. and U.K. governments to stop or impede a party from obtaining patent or copyright protection for genomic data was (and is) very substantial"); ¶ 30 ("aggressive and punitive government action . . . materialized"); ¶ 44 ("U.S. and U.K. governments would vigorously contest purported patents on genomic discoveries"). Plaintiffs allege that without that disclosure, the Prospectus was false and misleading, in violation of Section 11 and 12 of the Securities Act of 1933. *Id.* at ¶¶ 39(d); 39(e); 42; 43; 47. Government retaliation is the entire basis for the Complaint – each and every allegation relates to the efforts the government would take to harm Celera after the December 29 meeting. Indeed, other than the government's alleged retaliation against Celera, Plaintiffs do not allege that anything detrimental happened to Celera whatsover.

For the past four years, this "government retaliation theory" has controlled this litigation. It was refuted in Defendants' motion to dismiss, it guided all discovery efforts, and it was proved to be without merit in Defendants' presently pending motion for summary judgment.[2] Plaintiffs are now pretending that this theory does not exist. Instead, they are trying to interject new theories into this litigation in the hope that the Court will not read the complaint and see it for what it really is – a baseless cause of action that should be dismissed.[3] The Court should see through Plaintiffs' attempt to plead new allegations at this late stage of the litigation

---

[2] Plaintiffs have admitted that the public record, documentary evidence produced by Celera and other non-parties, and sworn testimony from Celera employees and members of the HGP unequivocally prove that Plaintiffs' "government retaliation" theory – the only theory pled in the Complaint – is without merit. *See* Pl. R.56 St. at ¶¶ 46, 47, 49-56.

[3] These alternative theories are without merit for the reasons set forth in Defendants' Reply Memorandum in Further Support of Their Motion for Summary Judgment.

6

and hold Plaintiffs to the allegations in their Complaint. The Court should further refuse to allow Plaintiffs to mislead potential class members into believing that this case is about something that it clearly is not.

### 2. Plaintiffs' New Theories are Not Pled in the Complaint and Were Not Developed During Discovery

Contrary to Plaintiffs' assertion, neither the "bad science theory" nor the "business plan theory" are "alleged in the Complaint" or were "developed through months of discovery." Pl. Br. at 8.[4] Plaintiffs first articulated their "bad science theory" on December 20, 2004 and their "business plan theory" on February 16, 2005.

On December 20, 2004, Plaintiffs served the Expert Report of Ivor R. Elrifi ("Elrifi Report"), which for the very first time raised the "bad science theory", *i.e.,* that Celera was incapable of producing patentable gene sequences due solely to its scientific methods.[5] Prior to that date, Plaintiffs never alleged that: (a) Celera's patenting strategy and method of sequencing made it more difficult to obtain patent protection on gene sequences; (b) Celera's data was inferior to other types of DNA data; or (c) Celera's strategies and methods were inadequately disclosed in the Prospectus. Plaintiffs' assertion that the Elrifi Report "bolsters" the allegations in the Complaint is therefore disingenuous. *See* Pl. Br. at 4. In fact, the Elrifi Report appears on its face to bear no relationship to the allegations in the Complaint. The Complaint alleges that as a result of the government's alleged retaliation against Celera, Celera would be unable to patent its genomic discoveries. The Elrifi Report, on the other hand, contains the novel

---

[4] Plaintiffs' citations to various' words and phrases which purportedly hint at the "bad science" or "business plan" theory ignore the fact that *every* allegation in the Complaint is inextricably tied to "government retaliation."

[5] Defendants moved to strike the Elrifi Report on the ground that it is not relevant to the facts in issue in this litigation. *See* Defendants' Memorandum of Law in Support of Defendants' Motion to Strike the Expert Report of Ivor R. Elrifi, dated Feb. 2, 2005.

7

opinion that Celera's difficulty in obtaining patent protection was the result not of government retaliation but of an inferior sequencing methodology. *See* Elrifi Report at ¶¶ 21-22. Indeed, the Complaint makes clear that all of Plaintiffs' allegations are inextricably tied to government retaliation. For example:

- Based on the collapse of the negotiations with the Human Genome Project that would result in aggressive and punitive actions against Celera, Celera's ability to patent its genomic discoveries was subjected to increased risk and uncertainty. Complaint ¶ 39(f).

- Because the Human Genome Project, as well as the U.S. and U.K. governments, opposed the patenting of the human genome and its variants, the risks associated with patenting [gene sequences] were significantly more 'uncertain' than described in the Prospectus. *Id.* ¶ 47.

- Celera's failure to collaborate with the HGP was "a move which could only jeopardize Celera's ability to seek patent protection for its genomic discoveries from the governments involved in the publicly funded effort." *Id.* ¶ 48.

As Defendants argued in their motion to strike the Elrifi Report, the Court should not permit the use of expert discovery to allege new – and baseless – theories of recovery. *See* Defendants' Motion to Strike the Expert Report of Ivor R. Elrifi at 5-9. The Court should also not allow Plaintiffs to use the class notice mechanism to amend their deficient Complaint.

Plaintiffs did not articulate their new "business plan theory" – that a collaboration with the Human Genome Project was critical to Celera's ability to obtain exclusive rights to the human genome sequence that was necessary to implement its business model – until they opposed Defendants' motion for summary judgment on February 16, 2005. Plaintiffs' Complaint alleges that the December 29, 1999 meeting was significant only because the United States and United Kingdom governments were going to punish and retaliate against Celera, thereby harming the company's business plan. Nowhere in the Complaint do Plaintiffs allege

8

that Celera's business model suffered as a result of its failure to collaborate with the HGP *absent retaliation by the U.S. and U.K. governments.*

Plaintiffs have not pled these theories of recovery and therefore they should not be permitted to rely on them at the eleventh hour of this litigation. *See Gerentine*, 2001 U.S. Dist. LEXIS 10975, at *20-21. Similarly, allowing potential class members to consider these theories would be misleading and result in confusion. *See Erhardt*, 629 F.2d at 846; *see also In re School Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988) ("Misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally.") If the Proposed Class Notice were approved, class members would be misled as to the nature of the claims in this action.

### B.  Defendants' Proposed Language Will Adequately Inform Potential Class Members of the Issues to be Tried

Defendants proposed the following description of the nature of the action to Plaintiffs:

> Plaintiffs allege that Defendants failed to disclose in the registration statement and prospectus prepared in connection with the February 29, 2000 secondary public offering of PE Corp. - Celera Genomics group common stock (the "Secondary Offering") that Celera discussed the possibility of collaborating with the Human Genome Project ("HGP") to complete the sequencing and assembly of the human genome. More specifically, Plaintiffs allege that the discussions between Celera and the HGP culminated in a December 29, 1999 meeting at Dulles Airport, where negotiations broke down because Celera wanted at least five years of exclusive rights to license the data produced by the merging of the two sides' efforts. As a result of this breakdown, Plaintiffs allege that the power of the US and UK governments, the principal sponsors of the HGP, would be utilized to prevent Celera from reaching its goal of stalling the release of the human genome code and obtaining patent and copyright protection for its genomic discoveries. The aggressive and punitive government action that would inexorably follow the failed negotiations between Celera

9

>and the HGP materialized on March 14, 2000 when President Clinton and Prime Minister Tony Blair issue a joint statement in which they reiterated the position of their respective governments that all information about gene sequencing and the human genome should be publicly available.  Plaintiffs allege that Defendants failure to disclose these facts in connection with the Secondary Offering caused substantial losses to members of the Class.

Defendants' proposed language accurately reflects the allegations in the Complaint and the parties' discovery efforts.  Plaintiffs, however, refused to agree to this language and proposed an alternative description of the nature of the action.  *See* Pl. Br. at 6.  Plaintiffs' alternative language, however, uses out of context references to set forth nothing more than their "reconstructed" version of this case developed after the close of fact and expert discovery.  Moreover, it does not delete any of the improper allegations that do not appear anywhere in the Complaint (*i.e.,* the "business plan theory" and the "bad science theory").  The Court should not permit Plaintiffs' to retreat from the Complaint.  Accordingly, paragraph 8 of Plaintiffs' Proposed Class Notice should be replaced by Defendants' proposed language.

## II.  PLAINTIFFS MUST BEAR THE COST OF CLASS NOTICE, INCLUDING THE COST OF OBTAINING THE NAMES AND ADDRESSES OF POTENTIAL CLASS MEMBERS

In addition to the defects in the Proposed Class Notice described above, Plaintiffs' motion should be also be denied because the Proposed Class Notice does not require Plaintiffs to bear the cost of providing notice.  It is well-accepted that a plaintiff in a class action must bear the cost of class notice.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *Uniondale Beer Co. v. Anheuser-Busch, Inc.*, 117 F.R.D. 340, 345 n.4 (E.D.N.Y. 1987) ("plaintiffs are required to give all class members the best notice practicable and are required to bear the costs of such notice"); *Gates v. Dalton*, 67 F.R.D. 621, 633 (E.D.N.Y. 1975) (noting that it is "clear" that plaintiffs must bear the cost of notice) (citing *Eisen*, 417 U.S. at 179).  In *Eisen*, the Supreme Court stated:

> The usual rule is that a plaintiff must initially bear the cost of notice to the class. . . Where, as here, the relationship between the parties is truly adversary, ***the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit***.

417 U.S. at 178-79 (emphasis added).

The cost of notice includes the cost of identifying the names and addresses of individual class members. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 357-58 (1978). Where, as here, Plaintiffs can derive the names and addresses of class members with substantially the same effort as Defendants, Plaintiffs must bear the cost because it is they who derive the benefit. *See id.* at 359 ("courts must not stray too far from the principle underlying *Eisen IV* that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action").

The list of potential class members is held by Defendants' transfer agent, who charges the same price to conduct a search of PE Corporation shareholders during the relevant time period regardless of whether the search is requested by Plaintiffs or Defendants. The Supreme Court has held that in this exact situation – where the names and addresses Plaintiffs seek are held by a transfer agent – ordering Plaintiffs to bear the transfer agent's costs is particularly appropriate. *Id.* at 359-60 ("As the expense of hiring the transfer agent would be no greater for [plaintiffs], who seek the information, than for [defendants], [plaintiffs] should bear the expense.") Indeed, the Court in *Oppenheimer* held that an order requiring defendants to bear the cost in such a situation is an abuse of discretion. *Id.* at 359 ("In this case, we think the District Court abused its discretion in requiring [defendants] to bear the expense of identifying class members. The records containing the needed information are kept by the transfer agent, not [defendants].").

11

Defendants have cooperated with Plaintiffs in an attempt to resolve this issue. Defendants provided Plaintiffs with a good faith estimate of what it would cost Defendants' transfer agent to gather the information sought. Plaintiffs, however, sought to impose a cap on their responsibility for costs and argued that they are not obligated to pay the transfer agent's costs because the list they seek is "in the nature of discovery." The Supreme Court expressly rejected this argument in *Oppenheimer*. The Court held that an attempt to obtain the class members' names and addresses solely for the purpose of class notice did not fit within the "relevancy" concept of the federal rules regarding discovery and were therefore not discoverable under Rule 26(b). *Id.* at 352-354. Thus, the only manner in which Plaintiffs may obtain information about potential class members is through an order of the Court in its exercise of discretion under Rule 23(d). *Id.* at 354-55. For the reasons set forth above, the Court should order Plaintiffs to bear the costs associated with class notice, including the fees incurred by the transfer agent.

## **CONCLUSION**

Defendants respectfully request the Court: (1) deny Plaintiffs' motion to approve the Proposed Class Notice; (2) require Plaintiffs to amend the Proposed Class Notice to include Defendants' description of the nature of the action; and (3) order Plaintiffs to bear the costs of class notice, including the cost obtaining the names and addresses of the potential class members from Defendants' transfer agent.

DEFENDANTS PE CORPORATION,
TONY L. WHITE, DENNIS L. WINGER
and VIKRAM JOG

OF COUNSEL:

By:     /s/ Stanley A. Twardy, Jr.

| | |
|---|---|
| Michael J. Chepiga (ct01173) | Stanley A. Twardy, Jr. (ct05096) |
| Robert A. Bourque (ct05269) | Thomas D. Goldberg (ct04836) |
| William M. Regan (ct25100) | Terence J. Gallagher (ct22415) |
| Simpson Thacher & Bartlett LLP | Day, Berry & Howard LLP |
| 425 Lexington Avenue | One Canterbury Green |
| New York, NY 10017 | Stamford, CT 06901 |
| (212) 455-2000 | (203) 977-7300 |
| (212) 455 2502 (fax) | (203) 977-7301 (fax) |
| mchepiga@stblaw.com (e-mail) | tdgoldberg@dbh.com(e-mail) |

## **CERTIFICATION**

This is to certify that a copy of the foregoing was sent by first class mail this 28th day of June, 2005, to:

| | |
|---|---|
| J. Daniel Sagarin, Esq.<br>Hurwitz, Sagarin & Slossberg, LLC<br>147 N. Broad Street<br>P.O. Box 112<br>Milford, CT 06460 | Sanford P. Dumain, Esq.<br>Carlos F. Ramirez, Esq.<br>Milberg Weiss Bershad & Schulman LLP<br>One Penn Plaza – 49th Floor<br>New York, NY 10119 |
| Liaison Counsel | Lead Counsel for Plaintiffs |

/s/
Terence J. Gallagher