UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PE CORPORATION SECURITIES LITIGATION | Master File No. 3:00CV-705 (CFD)<br><br>July 25, 2005 |

### PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR APPROVAL OF PROPOSED NOTICE OF PENDENCY OF CLASS ACTION

Plaintiffs respectfully submit this reply memorandum in further support of their Motion for Approval of the Proposed Notice of Pendency of Class Action (the "Proposed Class Notice"), and in reply to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Approval of Their Proposed Notice of Pendency of Class Action ("Def. Mem.").

### PRELIMINARY STATEMENT

As set forth in plaintiffs' opening memorandum ("Pls. Mem."), all of the prerequisites of Fed. R. Civ. P. 23(c)(2)(B) have been met and accordingly, the Court should approve plaintiffs' Proposed Class Notice. Indeed, rather than focusing on the issue raised by this motion, defendants' memorandum is nothing more than a regurgitation of the same baseless arguments in their Motion to Strike the Expert Report of Ivor Elrifi (the "Elrifi Report") and in their Summary Judgment Reply brief. As predicted by plaintiffs in their opening memorandum, defendants' contend that three alleged omissions identified by plaintiffs in the subject Registration Statement and Prospectus should be excluded from the Proposed Class Notice because they represent "new theories of liability." However, as discussed in plaintiffs' opening memorandum and below, the three omissions were more than sufficiently identified in the operative complaint, plaintiffs' First Amended Consolidated Class Action Complaint (the "Complaint" or "¶ __").

Moreover, as the Complaint was filed nearly four years ago, it would be illogical to disseminate a notice that fails to reflect developments in the case since the filing of the Complaint. If the class notice ignores those developments, as defendants suggest it should, it will unnecessarily provide class members with an inaccurate and incomplete description of the relevant facts and claims that plaintiffs intend to assert at trial, and thus, will not provide the best notice practicable as required by Rule 23 and relevant class action jurisprudence.

## ARGUMENT

### I. THE PROPOSED CLASS NOTICE ACCURATELY DESCRIBES PLAINTIFFS' CLAIMS

In their opposition, defendants have cherry picked paragraphs from the Complaint to support their erroneous conclusion that the "'government retaliation' theory [is] the only theory pled in the Complaint." Def. Mem. at 6, n.2. In asserting this argument, defendants deliberately ignore two other well-pled theories of liability in the Complaint that were the focus of the parties' discovery efforts (Def. Mem. at 6), and effectively ask this Court to issue a notice that ignores facts supporting those claims, established through extensive discovery, because the facts were not specifically alleged in the Complaint. Def. Mem. at 5.

*First*, with respect to the omission regarding the importance of exclusivity to Celera's business plan, defendants argue that:

> Plaintiffs did not articulate their new 'business plan theory'- that a collaboration with the Human Genome Project was critical to Celera's ability to obtain exclusive rights to the human genome sequence that was necessary to implement its business model – until they opposed Defendants' motion for summary judgment . . . .

Def. Mem. at 8. However, the Complaint contains numerous references to Celera's need for exclusive rights to the human genome sequence in order to implement its business plan. *See, e.g.*, ¶21 ("Celera's competitive position . . . was dependant upon its ability to protect its

database information through patent and copyright protection."); ¶42 "[m]aintaining exclusive rights to [the human genome sequence] was material to Celera's business strategy. First, it would continue to fuel their genomic database subscription business . . . . Second, Celera would be able to keep important genomic information away from its competitors . . . ."[1] Moreover, the Complaint alleges, that Celera would be unable to obtain the needed exclusivity for its stated business plan without a collaboration with Human Genome Project. *See, e.g*, ¶46 (collaboration discussions between Celera and the Human Genome Project "had broken off . . . after the Human Genome Project rejected Celera's demands for exclusivity. Thus, public dissemination of the human genome map was a material risk to Celera's business strategy which should have been disclosed").[2]

Notably, although plaintiffs cited the foregoing language from the Complaint in their opening memorandum, defendants' opposition fails to meaningfully address it. Moreover, in his recent deposition, Dr. Francis Collins, the leader of the Human Genome Project, stated that defendant Tony White, CEO of defendant PE Corporation, admitted that Celera needed a monopoly on the human genome sequence to implement its stated business plan. *See* Transcript of deposition of Francis Collins, Ph.D., M.D. (June 15, 2005) ("Collins Tr.") (Docket No. 158,

---

[1] These allegations support the inclusion in the Proposed Class Notice of the alleged omission that "Celera needed exclusive rights to the human genome sequence to implement its stated business plan." Proposed Class Notice, ¶ 8(i).

[2] These allegations support the inclusion in the Proposed Class Notice of the alleged omission that "a collaboration with the Human Genome Project was critical to Celera's ability to obtain exclusive rights to the human genome sequence that was necessary to implement its business model." Proposed Class Notice, ¶ 8(ii).

Exs. 1-3) at 74 ("And I do recall him [defendant White] using the word monopoly on several occasions as an important goal for Celera").[3]

*Second*, with respect to Celera's ability to produce patentable genes, defendants argue that prior to December 2004, plaintiffs never alleged that Celera's gene sequencing method was flawed. Def. Mem. at 8. However, the Complaint undeniably alleges that Celera was incapable of producing patentable gene sequences. *See, e.g.*, ¶¶39(f), 42, 47, 48. Moreover, documents produced by and testimony from, senior HGP scientists during discovery, expressing widespread concerns about Celera's ability to produce quality sequencing data, further support plaintiffs' claim that Celera was incapable of producing quality gene sequences. Thus, from the allegations in the Complaint and supporting facts obtained during discovery, defendants were well aware of plaintiffs' "bad science theory" well before December 2004.[4]

Thus, as demonstrated above, defendants' unexplained contention that plaintiffs have pieced together "words and phrases" from "different paragraphs of the Complaint" to "'reconstruct' a new Complaint," is absurd. Def. Mem. at 1, 5. Defendants do not, and cannot, provide any support or explanation for this unfounded argument.[5]

---

[3] This Court has granted plaintiffs' motion for permission to supplement plaintiffs' Opposition to Defendants' Motion for Summary Judgment with the testimony of Dr. Collins. *See* Docket No. 155.

[4] As discussed more fully in plaintiffs' opening memorandum and in their opposition to defendants motion to strike the Elrifi Report, Dr. Elrifi's opinions further support plaintiffs' claim that Celera's gene sequencing method was flawed and incapable of producing patentable gene sequences. Pls. Mem. at 9 (citing the Elrifi Report, ¶¶41-43). These allegations support the inclusion in the Proposed Class Notice of the alleged omission that "Celera was incapable of producing patentable gene sequences." Proposed Class Notice, ¶8(iv).

[5] Defendants' argument that plaintiffs are attempting to use the class notice "as a vehicle to amend the Complaint" (Def. Mem. at 5) is nothing more than a red herring aimed at distracting this Court from the central issue here, the content of the Proposed Class Notice. Indeed, the cases cited by defendants concerned motions to amend complaints, which obviously have no

## II. DEFENDANTS HAVE NOT BEEN PREJUDICED

Given that defendants have been on notice of plaintiffs' claims since August 2001, when the Complaint was filed, and that they have been privy to the additional facts developed throughout the merits discovery period, defendants cannot reasonably argue that they will be prejudiced if the Court were to permit plaintiffs to rely on these additional facts. Def. Mem. at 9. Moreover, this is yet another argument that is unrelated to the class notice.

Nevertheless, courts in similar circumstances have rejected this argument. For example, in *Sunstrand Corp. v Standard Kollsman Indus., Inc.*, 488 F.2d 807, 811-12 (7th Cir. 1973), the court emphasized that defendants knew from discovery in the case that "events other than those detailed in the complaint were a subject of suit." The court then held that "the fruits of discovery, in particular, provide a wealth of information relevant to discerning the breadth of a complaint." *Id.*; *see also In re Info. Res. Sec. Litig.*, No. 89 C 3772, 1992 U.S. Dist. LEXIS 8384, at *10-11 (N.D. Ill. June 12, 1992) (accounting theories contained in expert report were evidence with respect to claims raised in the complaint, not new claims).[6]

---

bearing on this motion. *See Ansam Assoc., Inc. v. Cola Petroleum, LTD*, 760 F.2d 442, 446 (2d Cir. 1985); *Gerentine v. United States*, No. 00 Civ. 0813, 2001 U.S. Dist. LEXIS 10975, at * 14-15 (S.D.N.Y. Aug. 2, 2001).

[6] Defendants' reliance on three cases they cite to support their prejudice argument, is misplaced. In *Gerentine*, unlike here, plaintiff asserted a new claim lacking any factual basis near the close of discovery. *Gerentine*, 2001 U.S. Dist. LEXIS 10975, at * 20. Here, plaintiffs do not assert new claims, only new facts, which were developed throughout discovery, and thus, are not at the "eleventh hour" as defendants contend. Def. Mem. at 9. The remaining two cases have nothing to do with the content of a proposed class notice. In *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843 (2d Cir. 1980), the court found that defendants' correspondence with class members after the class notice was mailed, which contained warnings that a successful defense might make them liable for costs, was confusing and ordered defendants to send a new class notice. *Id.* at 845. Similarly, in *In re School Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988), defendants were members of a lobbying and public education group ("SBA"), not a party to the litigation, that distributed a booklet during the pendency of the litigation commenting on core issues in the litigation. *Id.* at 675. The Third Circuit, in reversing the district court's order requiring the SBA to identify the

Finally, it cannot be ignored that all of the evidence that defendants claim is prejudicial was submitted to the Court in support of plaintiffs' opposition to defendants' summary judgment motion on February 17, 2005. Defendants filed their reply on March 23, 2005, yet they have never served a motion to strike any of plaintiffs' evidence, other than the Elrifi Report. Thus, the instant claim of prejudice is clearly spurious.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion should be granted and the Court should enter the Proposed Notice Order approving the Proposed Class Notice.[7]

Dated: July 25, 2005

                                              Respectfully submitted,

                                              THE PLAINTIFFS

                                              By_____
                                              David A. Slossberg (CT13116)
                                              Brian C. Fournier (CT16272)
                                              **HURWITZ, SAGARIN**
                                                  **& SLOSSBERG, LLC**
                                              147 N. Broad Street, P.O. Box 112
                                              Milford, CT 06460
                                              (203) 877-8000

                                              *Plaintiffs' Liaison Counsel*

---

members of the group on all future communications with possible class members, held that the order, purporting to regulate the conduct of counsel under Rule 23, was too broad. *Id.* at 681.

[7] Plaintiffs will agree to bear the reasonable costs of obtaining the names and addresses of the potential class members from defendants' transfer agent, and have revised the Proposed Class Notice, submitted with this reply, accordingly.

Sanford P. Dumain (CT08138)
Lee A. Weiss (CT21345)
Shannon L. Hopkins
**MILBERG WEISS BERSHAD
 & SCHULMAN LLP**
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

*Plaintiffs' Lead Counsel*

## Certificate of Service

This is to certify that a copy of the foregoing was mailed, first class mail on July 25, 2005 to:

Stanley A. Twardy, Jr., Esq.
Thomas D. Goldberg, Esq.
Terence J. Gallagher, Esq.
Day, Berry & Howard, LLP
One Canterbury Green
Stamford, CT  06901

Michael J. Chepiga, Esq.
Robert A. Bourque, Esq.
William M. Regan, Esq.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY  10017-3954

Brian C. Fournier