UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------------x
                                                       :

In re PE Corporation Securities Litigation    :   Master File No. 3:00 CV 705 (CFD)
                                                       :
                                                       :   August 10, 2005
----------------------------------------------------------------x

**DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

       Defendants PE Corporation, Tony L. White, Dennis L. Winger, and Vikram Jog (collectively, "Defendants") submit this memorandum of law in further support of their Motion for Summary Judgment. The testimony of Dr. Francis Collins, the Director of the National Human Genome Research Institute, the lead agency within the Human Genome Project ("HGP"), further confirms that this case is a frivolous cause of action based on nonexistent theories of recovery.

**PRELIMINARY STATEMENT**

       After months of discovery and putting Defendants to millions of dollars in costs to review documents and depose and defend witnesses, Plaintiffs have been unable to point to any evidence supporting the allegations in the Complaint. They therefore manufacture confusion, resorting to distortions and omissions designed to mislead this Court. Throughout this case, Plaintiffs have made representations to this Court regarding what information a document purportedly contains, or what a witness purportedly testified to, that bear no resemblance whatsoever to what the cited document or testimony actually states.

Plaintiffs' latest memorandum is no different. With Dr. Collins' testimony, Plaintiffs again present to the Court distortions and misrepresentations that leave anyone who actually examines the purported "evidence" cited in their memorandum dumbfounded.[1] Characterizations and misrepresentations without evidence supporting a legitimate cause of action, however, are insufficient to survive summary judgment.

The Court must grant summary judgment where there are no genuine issues as to any material fact. Despite ample opportunity, Plaintiffs have not presented any evidence showing a genuine issue for trial. Indeed, Plaintiffs have failed to identify any set of facts that – even if true – could possibly constitute a violation of Sections 11 and 12 of the Securities Act of 1933. Nonetheless, this memorandum will address Plaintiffs' latest target – the testimony of Dr. Collins – and establish that Dr. Collins' testimony cannot serve to defeat summary judgment.

## ARGUMENT

### I. Every Witness In This Case Has Now Testified That A Collaboration With The HGP Was Not A Component Of Celera's Business Plan.

Plaintiffs' "business plan theory" posits that the Secondary Offering Prospectus was false and misleading because it did not disclose that at the December 29, 1999 meeting, Celera failed to obtain the collaboration with the HGP that Celera desperately needed to successfully implement its business plan. Dr. Collins testified *unambiguously* that he was not aware of any facts suggesting that a collaboration with the HGP was a component of Celera's business plan. Indeed, *every witness in this case*, without exception, has testified that a

---

[1] It is particularly disingenuous for Plaintiffs to now cite Dr. Collins' testimony in an attempt to defeat summary judgment when Plaintiffs took the position in opposing Defendants' Motion for Summary Judgment that "Dr. Collins's [sic] view is irrelevant to the issue of whether defendants are liable under Section 11 of the Securities Act of 1933." (Plaintiffs' Rule 56 Statement at ¶ 30).

2

collaboration with the HGP was not a component of Celera's business plan.  The table below sets forth the sworn testimony of every HGP witness on the issue:

| **WITNESS** | **SWORN TESTIMONY** |
|---|---|
| Dr. Francis Collins (HGP) | Q. Did anyone at Celera ever say to you in sum or substance that a collaboration with the Human Genome Project was a component of Celera's business plan?<br><br>A. No.<br><br>Q. In the course of your negotiations or discussions regarding a possible collaboration, did you ever see any document that says in sum or substance a collaboration with the Human Genome Project was a component of Celera's business plan?<br><br>A. No.  (Collins Tr. at 98)[2] |
| Dr. Harold Varmus (HGP) | Q. In the course of your conversations regarding a potential collaboration between Celera and The Human Genome Project did anyone at Celera ever indicate to you that a collaboration with The Human Genome Project was a component of Celera's business plan?<br><br>A. No.  (DX 6 at 135)[3] |
| Dr. Robert Waterston (HGP) | Q. Did anyone affiliated with Celera ever convey to you that a collaboration with the human genome project was a component of the Celera's business plan?<br><br>A. Again, I don't have any communication with people from Celera.  (DX 7 at 179)<br><br>Q. Prior to the December 29th meeting, did you believe that an agreement on the terms outlined in the shared principles document would be beneficial to Celera's business?<br><br>A: I didn't.  I -- I -- I don't know enough about their business to know if it was beneficial or not.  That wasn't my concern.  (*Id.*) |

---

[2]     Dr. Francis Collins' deposition transcript is annexed as Exhibit A to the declaration of J. Daniel Sagarin.

[3]     Exhibits to Defendants' Motion for Summary Judgment are cited herein as "DX __."

3

The table below sets forth the sworn testimony of every Celera witness on the very same issue:

| WITNESS | SWORN TESTIMONY |
| --- | --- |
| Tony White (Celera) | Q. Were [the terms of a collaboration discussed at the December 29 meeting] part of Celera's business model?<br><br>A. Not in any way. (DX 2 at 122) |
| Dr. Craig Venter (Celera) | Q. Had you ever discussed with Mr. White before [the December 29 meeting] a period of exclusivity for Celera to have the data, the exclusive rights to the data?<br><br>A. No. I think that was a notion that came up from Francis Collins or somebody. I don't remember where that came from. We didn't need a period of exclusivity. It wasn't part of our business model. (DX 3 118-19) |
| Dr. Arnold Levine (Celera) | Q. Was a collaboration on the terms set forth in Francis Collins' "Shared Principles" document a part of Celera's business plan at any time?<br><br>A. No, I don't believe so.<br><br>Q. Was a collaboration on the terms proposed by Tony White at the December 29th, 1999 meeting ever a part of Celera's business plan?<br><br>A. No.<br><br>Q. Was obtaining exclusive access to The Human Genome sequence ever a part of Celera's business plan?<br><br>A. No. (DX 4 at 167) |
| Dr. Paul Gilman (Celera) | [Celera's business plan] didn't anticipate that [sequencing the human genome] would be done as a collaborative effort of the shoulder-to-shoulder effort, if you will, of the researchers in the two different projects. (DX 5 at 35-36) |

The only documents suggesting in any way that a collaboration with the HGP was a component of Celera's business plan are the legal memoranda authored by Plaintiffs' counsel. These memoranda, however, are wholly unsupported by actual evidence and Defendants should not be responsible for Plaintiffs' imaginative distortions of the truth. The evidence – indeed all of the evidence – makes clear that Plaintiffs have no basis to proceed to trial on their "business plan" theory.

4

## II.     Dr. Collins Testified That The December 29, 1999 Discussion Of Collaboration Was A Hypothetical.

Dr. Collins testimony utterly destroys the allegation on which Plaintiffs' entire case rests – that Celera attempted to achieve a collaboration at the December 29 meeting. When asked how the December 29 meeting began, Dr. Collins testified that "there was *a reiteration* from Celera[] that we should . . . *only get into the idea of collaboration as a hypothetical*." Collins Tr. at 70 (emphasis added). It is, of course, self-evident that a hypothetical discussion cannot sustain a cause of action under the Securities Act.

In Defendants' moving papers, Defendants asserted that Celera did not need a collaboration with the HGP to implement its stated business plan. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("D. Mem.") at 16, 26, 30. Defendants cited uncontradicted evidence demonstrating that Celera already had access to the HGP's data as a result of the Bermuda Accord, the HGP's commitment to publicly release all of its sequencing data. *Id.* at 10. Dr. Collins further confirmed Defendants' assertions:

   Q.  Isn't it fair to say as a result of the Bermuda Accord Celera could create its own merged dataset without an agreement      with the HGP?

   A.  [Yes,] they were doing so and continue to do so.

Collins Tr. at 107.

In their moving papers, Defendants also cited sworn testimony that a collaboration was not a part of Celera's business plan. *See* D. Mem. at 30. Although Dr. Collins' personal opinions are irrelevant, as noted above, Dr. Collins similarly testified that he was aware of no facts suggesting that a collaboration was part of Celera's business plan. Collins Tr. at 98. In fact, Dr. Collins testified that at the December 29 meeting, Mr. White was skeptical about whether Celera's business had anything at all to gain from a collaboration with the HGP:

5

> A. The sense was that Mr. White was putting forward skepticism about whether there was any benefit to be realized by Celera by such a collaboration. I think those of us on the Human Genome Project, []side of this, kept emphasizing that a better product, a higher quality product would be bound to ensue if you merged the two datasets than if you worked with one alone. That would be the benefit.
>
> Q. What was Celera's reaction at the meeting when HGP members indicated that the collaboration would provide them . . . would yield a higher quality product?
>
> A. I would not say that Mr. White appeared very convinced of that and he certainly dominated that part of the conversation.

Collins Tr. at 73.

Plaintiffs make much of the fact that Dr. Collins testified that Tony White mentioned the word "monopoly" at the December 29 meeting. *See* Plaintiffs' Supplemental Memorandum at 2-3. What Plaintiffs fail to bring to this Court's attention is Dr. Collins testimony that the idea of collaboration was discussed on December 29, 1999, in Dr. Collins' own words, as a hypothetical. Collins Tr. at 70. Thus, any mention of the word "monopoly" was done under the stated condition at the outset of the meeting that any discussion of collaboration was merely hypothetical.

Additionally, Defendants asserted that Mr. White's comments at the December 29 meeting related to what Celera would want *if* the parties reached an agreement on collaboration. "Absent such agreement, the HGP was free to use its version of the genome in any way it saw fit, and Celera was free to use its version of the genome as it desired." D. Mem. at 31. Dr. Collins confirmed that any discussions about a collaboration related to a merged version of the genome and that in the event a collaboration never happened, Celera could do what it wanted with its own version of the genome. Collins Tr. at 107.

6

### III. Plaintiffs Did Not Even Question Dr. Collins About The Government Retaliation Theory Or The Bad Science Theory

Nor did Dr. Collins provide support for Plaintiffs' other equally flawed theories – the "government retaliation theory" and the "bad science theory." Dr. Collins did not testify about either the "retaliation" theory or the "bad science" theory. Plaintiffs do not contend otherwise.

Plaintiffs' absurd "retaliation theory" posits that as a result of the meeting and alleged breakdown in negotiations, the government was going to take "aggressive and punitive" actions against Celera. Plaintiffs' similarly absurd "bad science" theory asserts that, despite the indisputable fact that Celera has received 149 gene-related patents (DX 56 at 13-14), Celera was incapable of producing patentable gene sequences due solely to its scientific methods.

It is unsurprising that Plaintiffs did not question Dr. Collins about the "retaliation" theory since they have already admitted this theory is wholly without merit. *See* Plaintiffs' Rule 56 Statement at ¶¶ 46, 47, 49-56. Similarly, Plaintiffs did not ask Dr. Collins a single question about Celera's sequencing method or Celera's ability to obtain patents on its genomic discoveries. Thus, Dr. Collins' testimony – or lack thereof –does not provide any basis for denying summary judgment on these theories.

## CONCLUSION

In their memorandum, Plaintiffs attempt to defeat summary judgment with nothing more than distortions and misrepresentations that this Court should identify as transparent. To deny this motion for summary judgment is to say that Plaintiffs have articulated an understandable cause of action supported by evidence. Because Plaintiffs have failed to do so, and for all the reasons set forth herein as well as in Defendants' memorandum of law and reply memorandum of law in support of their motion for summary judgment, we ask the Court to grant Defendants' motion for summary judgment and reinforce that manufactured distortions and confusion are not sufficient to sustain a cause of action.

| | |
|---|---|
| OF COUNSEL: | DEFENDANTS PE CORPORATION, TONY L. WHITE, DENNIS L. WINGER and VIKRAM JOG |
| Michael J. Chepiga (ct01173) Robert A. Bourque (ct05269) William M. Regan (ct25100) Simpson Thacher & Bartlett LLP 425 Lexington Avenue New York, NY 10017 (212) 455-2000 (212) 455 2502 (fax) mchepiga@stblaw.com (e-mail) | By: /s/ Stanley A. Twardy, Jr. Stanley A. Twardy, Jr. (ct05096) Thomas D. Goldberg (ct04836) Terence J. Gallagher (ct22415) Day, Berry & Howard LLP One Canterbury Green Stamford, CT 06901 (203) 977-7300 (203) 977-7301 (fax) tdgoldberg@dbh.com (e-mail) |

## **CERTIFICATION**

      This is to certify that a copy of the foregoing was sent by first class mail this 10th day of August, 2005, to:

| | |
|---|---|
| J. Daniel Sagarin, Esq.<br>Hurwitz, Sagarin & Slossberg, LLC<br>147 N. Broad Street<br>P.O. Box 112<br>Milford, CT 06460 | Sanford P. Dumain, Esq.<br>Carlos F. Ramirez, Esq.<br>Milberg Weiss Bershad & Schulman LLP<br>One Penn Plaza – 49th Floor<br>New York, NY 10119 |
|    Liaison Counsel |    Lead Counsel for Plaintiffs |

                                                                   /s/
                                                        Terence J. Gallagher