# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE PE CORPORATION SECURITIES LITIGATION | :  Master File No. 3:00-CV-705(CFD) |
| | : |

**COMPENDIUM OF PLAINTIFF'S COUNSEL'S AFFIDAVITS IN SUPPORT OF AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

| DOCUMENT | TAB |
|---|---|
| Summary of Lodestar and Expenses | A |
| Milberg LLP | B |
| Hurwitz, Sagarin, Slossberg & Knuff, LLC | C |
| Wolf Haldenstein Adler Freeman & Herz LLP | D |
| Izard Nobel LLP | E |



**A**

| FIRMS | LODESTAR | HOURS | EXPENSES |
|---|---|---|---|
| Milberg LLP | $2,020,758.25 | 4,740.20 | $300,199.43 |
| Hurwitz, Sagarin, Slossberg & Knuff, LLC | $140,061.25 | 316.15 | $5,237.44 |
| Wolf Haldenstein Adler Freeman & Herz LLP | $161,123.00 | 239.5 | $2,614.16 |
| Izard Nobel LLP | $48,350.00 | 77 | $732.15 |
| | | | |
| TOTALS | $2,370,292.50 | 5,372.85 | $308,783.18 |

**B**

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

IN RE PE CORPORATION SECURITIES    :   Master File No. 3:00-CV-705(CFD)
LITIGATION                         :

# AFFIDAVIT OF SANFORD P. DUMAIN
## IN SUPPORT OF JOINT PETITION FOR ATTORNEYS' FEES AND
## DISBURSEMENTS FILED ON BEHALF OF
## MILBERG LLP

STATE OF NEW YORK      )
                     ) ss.:
COUNTY OF NEW YORK   )

**SANFORD P. DUMAIN**, being first duly sworn, deposes and says:

1.     I am a member of the law firm of Milberg LLP. I submit this affidavit in support of my firm's application for an award of attorneys' fees in connection with services rendered in this case, as well as the reimbursement of expenses incurred by my firm in connection with this litigation.

2.     My firm acted as Lead Counsel in this securities class action. In that capacity, my firm has been actively involved in virtually all aspects of this litigation and has played a major role in every material aspect of this litigation.

3.     The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time, by category, spent by the partners, attorneys and professional support staff of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates.[1] For personnel who are no longer employed by my firm, the lodestar calculation is

---

[1] This application does not include time for anyone who spent fewer than 15 hours on this litigation.

based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

4.     The hourly rates for the partners, attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted and approved in other securities or shareholder litigation.

5.     The total number of hours expended on this litigation by my firm is 4740.20 hours. The total lodestar for my firm is $ 2,020,758.25, consisting of $ 1, 814,668.75 for attorneys' time and $ 206,089.50 for professional support staff time.

6.     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.     Milberg LLP has a fee sharing agreement with Wolf Haldenstein Adler Freeman & Herz LLP. Wolf Haldenstein is submitting a separate fee-expense affidavit containing its lodestar and expenses. Payment under this fee agreement would not increase the overall fees requested by Plaintiffs' Counsel and would not reduce the amount recovered by the Class. The details of this fee agreement can be provided to the Court at the Court's request.

2

8.      As detailed in Exhibit 2, my firm has incurred a total of $ 300,199.43 in un-reimbursed expenses in connection with the prosecution of this litigation.

9.      The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

10.     With respect to the standing of counsel in this case, attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in this litigation.

_____
**SANFORD P. DUMAIN**

Sworn to before me this
28th  day of June, 2010

_____
Notary Public

DEIRDRE KORNHISER
Notary Public, State of New York
No.01K06077107
Qualified in Kings County
Commission Expires July 1, 2010

3

# EXHIBIT 1

*In re PE Corporation Securities Litigation*, Master File No. 3:00-CV-705 (CFD)
Milberg LLP
TIME REPORT - Inception through June 29, 2010

| Name | A | B | C | D | E | F | G | Total Hours | Hourly Rate | Total Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|
| **PARTNERS:** | | | | | | | | | | |
| Andrejkovics, Paul J. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 213.50 | 213.50 | $560.00 | $119,560.00 |
| Bauer, George A. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 23.50 | 23.50 | $725.00 | $17,037.50 |
| Berdhed, David J. | 4.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38.75 | 43.50 | $795.00 | $34,582.50 |
| Dumain, Sanford P. | 6.25 | 149.75 | 70.50 | 234.75 | 80.00 | 45.25 | 110.75 | 697.25 | $825.00 | $575,231.25 |
| Rudman, Samuel H. | 71.25 | 0.00 | 8.50 | 0.00 | 0.00 | 1.25 | 0.00 | 81.00 | $395.00 | $31,995.00 |
| Weiss, Lee A. | 0.00 | 113.50 | 46.25 | 291.75 | 101.50 | 0.00 | 69.25 | 622.25 | $515.00 | $320,458.75 |
| **PARTNERS SUB-TOTAL** | 82.25 | 263.25 | 125.25 | 526.50 | 181.50 | 46.50 | 455.75 | 1,681.00 | | $1,098,865.00 |
| **ATTORNEYS:** | | | | | | | | | | |
| Czeisler, Jennifer S. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.50 | 20.50 | $470.00 | $9,635.00 |
| Hopkins, Shannon | 0.00 | 311.00 | 73.00 | 97.00 | 21.75 | 0.00 | 23.25 | 526.00 | $330.00 | $173,580.00 |
| Kwon, Julie | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 19.00 | 19.00 | $330.00 | $6,270.00 |
| Lee, Jean | 0.00 | 0.00 | 36.25 | 0.00 | 0.00 | 0.00 | 0.00 | 36.25 | $450.00 | $16,312.50 |
| Ramirez, Carlos F. | 0.00 | 233.75 | 191.00 | 1,104.25 | 5.50 | 34.00 | 0.75 | 1,569.25 | $325.00 | $510,006.25 |
| **ATTORNEYS SUB-TOTAL** | 0.00 | 544.75 | 300.25 | 1,201.25 | 27.25 | 34.00 | 63.50 | 2,171.00 | | $715,803.75 |
| **PROFESSIONAL SUPPORT STAFF:** | | | | | | | | | | |
| Aichi, Ejim | 0.00 | 20.50 | 0.00 | 33.00 | 0.00 | 0.00 | 0.00 | 53.50 | $185.00 | $9,897.50 |
| Gundersheim, Laura | 0.00 | 9.00 | 0.00 | 0.00 | 0.00 | 28.75 | 0.00 | 37.75 | $185.00 | $6,983.75 |
| Levin-Epstein, Joshua | 0.00 | 60.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 60.50 | $185.00 | $11,192.50 |
| Solon, Sarah | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 29.50 | 29.50 | $260.00 | $7,670.00 |
| Hutchison, Evan | 0.00 | 26.00 | 0.00 | 3.50 | 0.00 | 0.00 | 0.00 | 29.50 | $215.00 | $6,342.50 |
| Kernhire, Deirdre | 0.00 | 125.75 | 4.50 | 83.70 | 4.00 | 0.00 | 20.00 | 237.95 | $285.00 | $67,815.75 |
| Nikolova, Ekaterina | 0.00 | 0.00 | 0.00 | 70.75 | 0.00 | 0.00 | 0.00 | 70.75 | $235.00 | $16,626.25 |
| Rogers, Jason | 0.00 | 0.00 | 0.00 | 35.25 | 0.00 | 0.00 | 0.00 | 35.25 | $215.00 | $7,578.75 |
| Takhteyev, Andrei | 0.00 | 1.00 | 38.50 | 217.50 | 5.00 | 0.00 | 0.00 | 262.00 | $225.00 | $58,950.00 |
| Tayeb, Jle | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3.00 | 3.00 | $270.00 | $810.00 |
| Brooks, Richard O. | 0.00 | 0.00 | 0.00 | 38.50 | 0.00 | 0.00 | 0.00 | 38.50 | $185.00 | $7,122.50 |
| Eng, Benjamin | 27.00 | 0.00 | 3.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | $170.00 | $5,100.00 |
| **PROFESSIONAL SUPPORT STAFF SUB-TOTAL** | 27.00 | 242.75 | 46.00 | 482.20 | 9.00 | 28.75 | 52.50 | 888.20 | | $206,089.50 |
| **TOTAL LODESTAR** | 109.25 | 1,050.75 | 471.50 | 2,209.95 | 217.75 | 109.25 | 571.75 | 4,740.20 | | $2,020,758.25 |

**Categories:**

a.    Case Assessment, Pre-Filing Investigation, Initial Complaint, Client Outreach and Retention

b.    Briefs, Motions, Pleadings (after initial complaint), Legal Research

c.    Class (Briefing, Discovery, Class Representative/Class Member Contacts)

d.    Merits Discovery and Post-Filing Fact Investigation

e.    Experts/Consultants

f.    Court Appearances & Preparation

g.    Mediation & Settlement

# EXHIBIT 2

### EXHIBIT 2

*In re PE Corportation Securities Litigation,* Master File No. 3:00-CV-705 (CFD)

## Milberg LLP

### EXPENSE REPORT - Inception through June 29, 2010

| Catergories | Amount |
|---|---|
| Photocopies/Reproduction | $20,158.57 |
| Postage/Notice Costs | 687.56 |
| Telephone | 1,202.95 |
| Messengers/Express Services | 2,491.45 |
| Filing/Witness Fees | 2,031.71 |
| Court Reporters/Transcript/Video | 5,380.40 |
| Lexis/Westlaw/Legal Research | 23,278.90 |
| Experts/Consultants | 200,562.68 |
| Hotels & Transportation | 34,338.13 |
| Secretarial Overtime/Word Processing | 2,320.58 |
| Publication | 7.50 |
| Medition | 7,739.00 |
| **TOTAL EXPENSES:** | **$300,199.43** |

# EXHIBIT 3

# MILBERG LLP

## THE FIRM'S PRACTICE AND ACHIEVEMENTS

Milberg LLP, founded in 1965, was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The Firm pioneered this type of litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. The Firm's practice focuses on the prosecution of class and complex actions in many fields of commercial litigation, including securities, corporate fiduciary, ERISA, consumer, insurance, antitrust, bankruptcy, mass tort, and human rights litigation. The Firm has offices in New York City, Los Angeles, Tampa, and Detroit.

In the Firm's early years, its founding partners built a new area of legal practice in representing shareholder interests under the then recently amended Rule 23 of the Federal Rules of Civil Procedure, which allowed securities fraud cases, among others, to proceed as class actions. In the following decades, the Firm obtained decisions establishing important legal precedents in many of its areas of practice and prosecuted cases that set benchmarks in terms of case theories, organization, discovery, trial results, methods of settlement, and amounts recovered and distributed to clients and class members.

Important milestones in the Firm's early years include the Firm's involvement in the *U.S. Financial* litigation in the early 1970s, one of the earliest large class actions, which resulted in a $50 million recovery for purchasers of the securities of a failed real estate development company; the Ninth Circuit decision in *Blackie v. Barrack* in 1975, which established the fraud-on-the-market doctrine for securities fraud actions; the Firm's co-lead counsel position in the *In re Washington Public Power Supply System ("WPPSS") Securities Litigation*, a seminal securities fraud action in the 1980s in terms of complexity and amounts recovered; the representation of the Federal Deposit Insurance Corporation in a year-long trial to recover banking losses from a major accounting firm, leading to a precedent-setting global settlement; attacking the Drexel-Milken "daisy chain" of illicit junk-bond financing arrangements with numerous cases that resulted in substantial recoveries for investors; representing life insurance policyholders defrauded by "vanishing premium" and other improper sales tactics and obtaining large recoveries from industry participants; and ground-breaking roles in the multi-front attack on deception and other improper activities in the tobacco industry.

Milberg remains at the forefront in its areas of practice. Significant litigation results include: *Tyco International Ltd. Securities Litigation* ($3.2 billion settlement); *Nortel Networks Litigation* (settlement for cash and stock valued at $1.142 billion); *Lucent Technologies Securities Litigation* ($600 million recovery); *Raytheon Co. Securities Litigation* ($460 million recovery); *Managed Care Litigation* (recoveries over $1 billion and major changes in HMO practices); the *WPPSS Securities Litigation* (settlements totaling $775 million), and the *NASDAQ Market Makers Antitrust Litigation* ($1 billion in recoveries). Milberg has been responsible for recoveries valued at approximately $55 billion during the life of the Firm.

Milberg is consistently active in *pro bono* litigation, highlighted by its leadership role in the *Swiss Bank Litigation*, which led to the recovery of $1.25 billion from Swiss banks to benefit victims of the Holocaust, and the Firm's efforts representing claimants of the September 11 Victim Compensation Fund.

The Firm's lawyers come from many different professional backgrounds. They include former judges, professors, prosecutors, private defense attorneys, and government lawyers. The Firm's ability to pursue claims against defendants is augmented by its team of investigators, headed by a 27-year veteran of the Federal Bureau of Investigation, a full-time staff of forensic accountants and financial analysts, and an in-house litigation support department with data hosting capabilities, staffed by electronic discovery specialists.

For more information, please visit www.milberg.com.

# JUDICIAL COMMENDATIONS

Milberg has been commended by countless judges throughout the country for the quality of its representation. In approving a $3.2 billion securities fraud settlement, one of the largest in history, in *In re Tyco International, Ltd. Securities Litigation*, No. 02-1335 (D.N.H. Dec. 19, 2007), Judge Barbadoro lauded Milberg's efforts as co-lead counsel:

> This was an extraordinarily complex and hard-fought case. Co-Lead Counsel put massive resources and effort into the case for five long years, accumulating [millions of dollars in expenses] and expending [hundreds of thousands of hours] on a wholly contingent basis. But for Co-Lead Counsel's enormous expenditure of time, money, and effort, they would not have been able to negotiate an end result so favorable for the class. . . . Lead Counsel's continued, dogged effort over the past five years is a major reason for the magnitude of the recovery. . . .

In *Simon v. KPMG LLP*, No. 05-3189, 2006 U.S. Dist. LEXIS 35943, at *18, 30-31 (D.N.J. June 2, 2006), a case in which Milberg served as class counsel, Judge Cavanaugh, in approving the $153 million settlement, found that "Plaintiffs . . . retained highly competent and qualified attorneys" and that "[t]he Initial Complaint . . . demonstrates that [Milberg] expended considerable time and effort with the underlying factual and legal issues in this case before even filing this lawsuit. . . . Settlement discussions were conducted over a period of some fourteen months with the supervision and guidance of Judges Politan and Weinstein, and are evidence of [Milberg's] appreciation of the merits and complexity of this litigation."

In *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-621, slip op. at 14-15, 26 (D.N.J. Feb. 24, 2004), Judge Pisano issued an opinion approving the $600 million settlement and complimenting Milberg's work as co-lead counsel for the class as follows:

> [T]he attorneys representing the Plaintiffs are highly experienced in securities class action litigation and have successfully prosecuted numerous class actions throughout the United States. They are more than competent to conduct this action. Co-Lead Counsel diligently and aggressively represented the Plaintiffs before this Court and in the negotiations that resulted in the Settlement. . . . [T]he efforts and ingenuity of Lead Plaintiffs and Lead Counsel resulted in an extremely valuable Settlement for the Benefit of the Class.

In *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003), Judge Dalzell commented on the skill and efficiency of the Milberg attorneys litigating this complex case:

> At the risk of belaboring the obvious, we pause to say a specific word about . . . the skill and efficiency of the attorneys involved. [Milberg was] extraordinarily deft and efficient in handling this most complex matter. [T]hey were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write-down of over $1.6 billion in previously reported Rite Aid earnings. . . . In short, it would be hard to equal the skill class counsel demonstrated here.

In *In re IKON Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 195 (E.D. Pa. 2000), Judge Katz commented on Milberg's skill and professionalism as one of plaintiffs' co-lead counsel:

> First, class counsel is of high caliber and has extensive experience in similar class action litigation. . . . Each of the co-lead counsel firms has a national reputation for advocacy in securities class actions, and there is no doubt that this standing enhanced their ability both to prosecute the case effectively and to negotiate credibly. . . .

Of particular note in assessing the quality of representation is the professionalism with which all parties comported themselves. The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines. This professionalism was also displayed in class counsel's willingness to cooperate with other counsel when appropriate. . . . This cooperation enabled the parties to focus their disputes on the issues that mattered most and to avoid pointless bickering over more minor matters.

In *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), in an opinion approving settlements totaling over $1.027 billion, Judge Sweet commented:

Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

Judicial recognition of Milberg's excellence is not limited to courts within the United States. In *In re Flag Telecom Holdings, Ltd. Securities Litigation*, No. 02-3400 (S.D.N.Y. 2009), Milberg litigated a discovery dispute before the English Royal High Court of Justice, Queens Bench Division, which recognized the Milberg attorney handling the matter as a "Grade A" lawyer and a "vital cog in the machine." Likewise, in *Sharma v. Timminco Ltd.*, 09-378701 (Can. Ont. Sup. Ct. 2009), Canada's Ontario Superior Court of Justice recognized Milberg's "fine reputation and excellent credentials" in connection with Milberg's representation in a securities case pending in Canada.

Milberg has also been recognized for its commitment to public service. In lauding Milberg's work representing victims of the September 11th attack on the World Trade Center in connection with the September 11 Victims Compensation Fund, Special Master Kenneth R. Feinberg stated the following:

Once again, as I have learned over the years here in New York, the [Milberg] firm steps up to the plate in the public interest time and time again. The social conscience of the [Milberg] firm, acting through its excellent associates and partners, help deal with crises that confront the American people and others, and I am personally in the debt of Milberg . . . for the work that it is doing . . . . [T]hey are second among none in terms of the public interest, and I'm very, very grateful, not only to you guys for doing this, but . . . for the firm's willingness to help out. I wanted to let everybody know that.

*In re September 11 Victim Compensation Fund*, Preliminary Hearing, Claim No. 212-003658 (Dec. 9 2003).

## NOTEWORTHY RESULTS

The quality of Milberg's representation is further evidenced by the Firm's numerous significant recoveries, some of which are described below.

- In *In re Vivendi Universal, S.A. Securities Litigation*, No. 05-5571, 2003 U.S. Dist. LEXIS 19431 (S.D.N.Y. Nov. 3, 2003), Milberg lawyers were instrumental in obtaining a jury verdict for an international class of defrauded investors after a trial lasting nearly four months. The jury found Vivendi liable for 57 false or misleading class period statements. The claims procedure is pending and could potentially result in a judgment of over $9 billion. The district court had previously certified a class of purchasers from the U.S., France, England, and

the Netherlands. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76 (S.D.N.Y. 2007). At the conclusion of trial, the district court judge stated, "I can only say that this is by far the best tried case that I have had in my time on the bench. I don't think either side could have tried the case better than these counsel have."

- *In re Initial Public Offering Securities Litigation*, No. 21-92 (S.D.N.Y.). Milberg represented investors in 310 consolidated securities actions arising from an alleged market manipulation scheme. Plaintiffs alleged, among other things, that approximately 55 defendant investment banks, in dealing with certain of their clients, conditioned certain allocations of shares in initial public offerings on the subsequent purchase of more shares in the aftermarket, thus artificially boosting the prices of the subject securities. This fraudulent scheme, plaintiffs alleged, was a major contributing factor in the now infamous technology "bubble" of the late 1990s and early 2000s. As a member of the court-appointed Plaintiffs' Executive Committee, and with certain partners appointed by the court as liaison counsel, Milberg oversaw the efforts of approximately 60 plaintiffs' firms in combating some of the most well-respected defense firms in the nation. In granting final approval to a $586 million settlement on October 6, 2009, the court described the law firms comprising the Plaintiffs' Executive Committee as the "cream of the crop."

- *Carlson v. Xerox*, No. 00-1621 (D. Conn). Milberg served as co-lead counsel in this lawsuit, which consolidated 21 related cases alleging violations of the federal securities laws. Plaintiffs alleged that Xerox and several of its top officers reported false financial results during the class period and failed to adhere to the standard accounting practices the company claimed to have followed. In the course of litigating plaintiffs' claims, Milberg engaged in arduous and exhaustive factual discovery, including review and analysis of more than four million pages of complex accounting and auditing documents and thousands of pages of SEC deposition transcripts. Plaintiffs' claims survived three motions to dismiss and a motion for summary judgment, ultimately resulting in a $750 million settlement, which received final approval on January 14, 2009.

- *In re Tyco International Ltd., Securities Litigation*, MDL Docket No. 02-1335 (D.N.H.). Milberg served as co-lead counsel in this litigation, which involved claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Tyco and its former CEO, CFO, general counsel, and certain former directors arising out of allegations of Tyco's $5.8 billion overstatement of income and $900 million in insider trading, plus hundreds of millions of dollars looted by insiders motivated to commit the fraud. Plaintiffs also asserted claims under the 1933 and 1934 Acts against PricewaterhouseCoopers LLP for allegedly publishing false audit opinions on Tyco's financial statements during the class period and failing to audit Tyco properly, despite knowledge of the fraud. On December 19, 2007, the court approved a $3.2 billion settlement of the plaintiffs' claims and praised the work of co-lead counsel.

- *In re Sears, Roebuck and Co. Securities Litigation*, No. 02-7527 (N.D. Ill.). This case involved allegations that Sears concealed material adverse information concerning the financial condition, performance, and prospects of Sears' credit card operations, resulting in an artificially inflated stock price. The approved settlement provided $215 million to compensate class members.

- *In re General Electric Co. ERISA Litigation*, No. 04-1398 (N.D.N.Y.). This ERISA class action was brought on behalf of current and former participants and beneficiaries of the General Electric ("G.E.") 401(k) Plan. Milberg, serving as co-lead counsel, achieved a $40 million settlement on behalf of current and former G.E. employees who claimed that the company's 401(k) Plan fiduciaries imprudently invested more than two-thirds of the Plan's assets in company stock. The settlement included important structural changes to G.E.'s 401(k) plan valued at more than $100 million.

- *In re Biovail Corp. Securities Litigation*, No. 03-8917 (S.D.N.Y.). Milberg, representing Local 282 Welfare Trust Fund and serving as co-lead counsel, litigated this complex securities class action brought on behalf of a class of defrauded investors, alleging that defendants made a series of materially false and misleading statements concerning Canadian company

Biovail's publicly reported financial results and the company's then new hypertension/blood pressure drug, Cardizem LA. This was a highly complex case in which counsel took numerous depositions across the U.S. and Canada and obtained documents from defendants and several third-parties, including, among others, UBS, McKinsey & Co., and Merrill Lynch. Milberg obtained a $138 million settlement for the class, and Biovail agreed to institute significant corporate governance changes.

- *In re Nortel Networks Corp. Securities Litigation*, No. 01-1855 (S.D.N.Y.). In this federal securities fraud class action, Milberg served as lead counsel for the class and the court-appointed lead plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund. In certifying the class, the court specifically rejected the defendants' argument that those who traded in Nortel securities on the Toronto Stock Exchange (and not the New York Stock Exchange) should be excluded from the class. The Second Circuit denied the defendants' attempted appeal. On January 29, 2007, the court approved a settlement valued at $1.142 billion.

- *In re American Express Financial Advisors Securities Litigation*, No. 04-1773 (S.D.N.Y.). This case involved allegations that American Express Financial Advisors violated securities laws by representing to class members that the company would provide tailored financial advice, when the company actually provided "canned" financial plans and advice designed to steer clients into American Express and certain nonproprietary mutual funds. The case settled for $100 million, with the settlement agreement requiring that the company institute remedial measures.

- *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-621 (D.N.J.). In this federal securities fraud action in which Milberg served as co-lead counsel, plaintiffs alleged, *inter alia*, that Lucent and its senior officers misrepresented the demand for Lucent's optical networking products and improperly recognized hundreds of millions of dollars in revenues. The settlement provided compensation of $600 million to aggrieved shareholders who

purchased Lucent stock between October 1999 and December 2000.

- *In re Raytheon Securities Litigation*, No. 99-12142 (D. Mass.). This case, in which Milberg served as lead counsel, concerned claims that a major defense contractor failed to write down assets adequately on long term construction contracts. In May 2004, Raytheon and its auditor, PricewaterhouseCoopers LLP, settled for a total of $460 million.

- In *In re Rite Aid Securities Litigation*, No. 99-1349 (E.D. Pa.), in which Milberg served as co-lead counsel, the plaintiffs asserted federal securities fraud claims arising out of allegations that Rite Aid failed to disclose material problems with its store expansion and modernization program, resulting in artificially inflated earnings. Judge Dalzell approved class action settlements totaling $334 million against Rite Aid ($207 million), KPMG ($125 million), and certain former executives of Rite Aid ($1.6 million).

- In *In re CMS Energy Corp. Securities Litigation*, No. 02-72004 (E.D. Mich.), a federal securities fraud case arising out of alleged round-trip trading practices by CMS Energy Corporation, Judge Steeh approved a cash settlement of more than $200 million. Milberg served as co-lead counsel in this litigation.

- *In re Deutsche Telekom AG Securities Litigation*, No. 00-9475 (S.D.N.Y.). Milberg served as co-lead counsel in this securities class action alleging that Deutsche Telekom issued a false and misleading registration statement, which improperly failed to disclose its plans to acquire VoiceStream Wireless Corporation and materially overstated the value of the company's real estate assets. On June 14, 2005, Judge Buchwald approved a $120 million cash settlement.

- *In re CVS Corp. Securities Litigation*, No. 01-11464 (D. Mass). Milberg served as co-lead counsel in this class action alleging that defendants engaged in a series of accounting improprieties and issued false and misleading statements which artificially inflated the price of CVS stock. On September 7, 2005, Judge Tauro approved a $110 million cash settlement for shareholders who acquired CVS stock

between February 6, 2001 and October 30, 2001.

- *Scheiner v. i2 Technologies, Inc.*, No. 01-418 (N.D. Tex.). Milberg served as lead counsel in this securities fraud case, filed on behalf of certain purchasers of i2 common stock. The plaintiffs alleged that certain of the company's senior executives made materially false and misleading statements and omissions in i2's public statements and other public documents regarding i2's software, thereby artificially inflating the price of i2's common stock. In May 2004, Milberg recovered a settlement of $84.85 million.

- *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 04-1398 (D.N.J.). This was an ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the companies' U.S. employee investment plan participants. Notably, the $90 million settlement included important provisions regarding the monitoring and training of individuals appointed to be ERISA fiduciaries.

- Milberg served as co-lead counsel in *Irvine v. ImClone Systems*, Inc., No. 02-0109 (S.D.N.Y.), in which a $75 million cash settlement was approved by the court in July 2005. Plaintiffs alleged that ImClone issued a number of misrepresentations and fraudulent statements to the market regarding the likelihood of approval of the drug Erbitux, thereby artificially inflating the price of ImClone stock.

- In *In re W.R. Grace & Co. (Official Committee of Asbestos Personal Injury Claimants v. Sealed Air. Corp. and Official Committee of Asbestos Personal Injury Claimants v. Fresenius Medical Care Holdings, Inc.)*, Nos. 02-2210 and 02-2211 (D. Del.), Milberg acted as lead counsel for the asbestos personal injury and property damage committees in two separate fraudulent conveyance actions within the W.R. Grace bankruptcy. The actions sought to return the assets of Sealed Air Corporation and Fresenius Medical Care Holdings (each of which had been Grace subsidiaries pre-bankruptcy) to the W.R. Grace bankruptcy estate. Complaints in both cases were filed in mid-March 2002, and agreements in principle in both cases were reached on November 27, 2002,

the last business day before trial was set to begin in the Sealed Air matter. The two settlements, which consisted of both cash and stock, were valued at approximately $1 billion.

- *Nelson v. Pacific Life Insurance Co.*, No. 03-131 (S.D. Ga.). Milberg served as lead counsel in this securities fraud class action arising from allegations of deceptive sales of deferred annuity tax shelters to investors for placement in retirement plans that are already tax-qualified. The court approved a $60 million settlement of claims arising from such deception.

- The Firm was lead counsel in *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.), a landmark securities case that resulted in a recovery exceeding $4 billion for certain Prudential policyholders. The settlement was approved in a comprehensive Third Circuit decision.

- In *In re NASDAQ Market-Makers Antitrust Litigation*, No. 94-3996 (S.D.N.Y.), Milberg served as co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After more than three years of intense litigation, the case settled for a total of $1.027 billion, one of the largest antitrust settlements at that time.

- *In re Washington Public Power Supply System Securities Litigation*, MDL 551 (D. Ariz.) was a massive securities fraud litigation in which Milberg served as co-lead counsel for a class that obtained settlements totaling $775 million, the largest-ever securities fraud settlement at that time, after several months of trial.

- *In re Exxon Valdez*, No. 89-095 (D. Ak.) and *In re Exxon Valdez Oil Spill Litigation*, 3 AN-89-2533 (Ak. Sup. Ct. 3d Jud. Dist.). Milberg was a member of the Plaintiffs' Coordinating Committee and co-chair of the Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. Plaintiffs obtained a jury verdict of $5 billion, which, after years of appeals by Exxon, was reduced to approximately $500 million by the United States Supreme Court. Recently the United States Court of Appeals for

the Ninth Circuit held that plaintiffs are entitled to post judgment interest on the award in the amount of approximately $470 million.

- In *In re Managed Care Litigation*, MDL 1334 (S.D. Fla.). Final approval of a settlement between a nationwide class of physicians and defendant CIGNA Healthcare, valued in excess of $500 million, was granted on April 22, 2004. A similar settlement valued in excess of $400 million involving a nationwide class of physicians and Aetna was approved by the court on November 6, 2003. The settlements stem from a series of lawsuits filed in both state and federal courts by physicians and medical associations against many of the nation's largest health insurers arising from allegations that the insurers engaged in a fraudulent scheme to systematically obstruct, reduce, delay, and deny payments and reimbursements to health care providers. These settlements brought sweeping changes to the health care industry and significant improvements to physician-related business practices.

- *In re Sunbeam Securities Litigation*, No. 98-8258 (S.D. Fla). Milberg acted as co-lead counsel for the class. Plaintiffs alleged that Sunbeam, its auditor, and its management engaged in a massive accounting fraud which led to a restatement of over three years of previously reported financial results. The court approved a combined settlement of more than $140 million, including a $110 million settlement with Arthur Andersen LLP, Sunbeam's auditor. At that time, the Andersen settlement was one of the largest amounts ever paid by a public accounting firm to settle federal securities claims. The settlement with the individuals was achieved on the eve of trial, and ended almost four years of litigation against Andersen and Sunbeam's insiders, including Albert Dunlap, Sunbeam's former Chairman and CEO. The settlement included a personal contribution from Dunlap of $15 million.

- *In re Triton Energy Limited Securities Litigation*, No. 98-256 (E.D. Tex.). Plaintiffs alleged that defendants misrepresented, among other things, the nature, quality, classification, and quantity of Triton's Southeast Asia oil and gas reserves during the period March 30, 1998 through July 17, 1998. The case settled for $42 million.

- In *In re Thomas & Betts Securities Litigation*, No. 00- 2127 (W.D. Tenn), the plaintiffs, represented by Milberg as co-lead counsel, alleged that Thomas & Betts engaged in a series of accounting improprieties while publicly representing that its financial statements were in compliance with GAAP, and failed to disclose known trends and uncertainties regarding its internal control system and computer and information systems. The case settled for $46.5 million dollars in cash from the company and $4.65 in cash from its outside auditor, KPMG.

- *In re MTC Electronic Technologies Shareholder Litigation*, No. 93-0876 (E.D.N.Y.). Plaintiffs alleged that defendants issued false and misleading statements concerning, among other things, purported joint venture agreements to establish telecommunications systems and manufacture telecommunications equipment in China. The court approved a settlement of $70 million, including $65 million in cash and $5 million worth of MTC Class A shares with "put" rights.

- In *In re PaineWebber Limited Partnerships Litigation*, No. 94-8547 (S.D.N.Y.). Milberg represented investors alleging that PaineWebber developed, marketed, and operated numerous investment partnerships as part of an ongoing conspiracy to defraud investors and enrich itself through excessive fees and commissions over a twelve-year period. On March 20, 1997, Judge Sidney Stein approved a $200 million settlement, consisting of $125 million in cash and $75 million worth of guarantees and fee waivers.

- In *Andrews v. AT&T*, No. 91-175 (S.D. Ga.) the Firm represented a class of persons who paid for premium-billed "900-number" calls that involved allegedly deceptive games of chance, starting in 1993. Defendants included major long-distance companies, which approved the call programs and billed for the calls. Defendant MCI settled for $60 million in benefits. The class against AT&T was decertified on appeal and the Firm prosecuted the individual plaintiffs' claims, obtaining a jury verdict in 2003 for compensatory and punitive damages.

In the context of shareholder derivative actions, Milberg has protected shareholder investments by effectuating important changes in

corporate governance as part of the global settlement of such cases. Cases in which such changes were made include:

- *In re Topps Co., Inc. Shareholder Litig.*, No. 600715/2007 (N.Y. Sup. Ct. N.Y. County Apr. 17, 2007). Milberg served as co-lead counsel in this transactional case, which led to a 2007 decision vindicating the rights of shareholders under the rules of comity and the doctrine of *forum non conveniens* to pursue claims in the most relevant forum, notwithstanding the fact that jurisdiction might also exist in the state of incorporation. This case was settled in late 2007 in exchange for a number of valuable disclosures for the class.

- *In re Marketspan Corporate Shareholder Litigation*, No. 98-15884 (N.Y. Sup. Ct.). The settlement agreement in this derivative case required modifications of corporate governance structure, changes to the audit committee, and changes in compensation awards and to the nominating committee.

- *In re Trump Hotels Shareholder Derivative Litigation*, No. 96-7820 (S.D.N.Y.). In this case, the plaintiff shareholders asserted various derivative claims on behalf of the company against certain Trump entities and senior Trump executives in connection with the self-serving sale of a failing casino to the company in which the plaintiffs held stock. Milberg negotiated a settlement on behalf of the plaintiffs that required Donald Trump to contribute a substantial portion of his personal interest in a pageant he co-owned. In addition, the settlement required the company to increase the number of directors on its board, and certain future transactions had to be reviewed by a special committee.

# PRECEDENT-SETTING DECISIONS

Milberg has consistently been a leader in developing the federal securities, antitrust, and consumer protection laws for the benefit of investors and consumers. The Firm has represented individual and institutional plaintiffs in hundreds of class action litigations in federal and state courts throughout the country. In most of those cases, Milberg has served as lead or co-lead counsel. The Firm has also been responsible for establishing many important precedents, including the following:

- *In re Lord Abbett Mutual Funds Fee Litigation*, 553 F.3d 248 (3d Cir. 2009). This important decision set significant precedent regarding the scope of preemption under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). In reversing the District Court's dismissal of the plaintiffs' claims, the Third Circuit held that "SLUSA does not mandate dismissal of an action in its entirety where the action includes only some pre-empted claims." In so holding, the court explained that "nothing in the language, legislative history, or relevant case law mandates the dismissal of an entire action that includes both claims that do not offend SLUSA's prohibition on state law securities class actions and claims that do . . . ."

- *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 170 (2d Cir. 2009). In this matter, the plaintiffs, Nigerian children and their families, asserted claims under the Alien Tort Statute ("ATS") in connection with Pfizer's clinical trial of the drug, Trovan, without their knowledge. In January 2009, the Second Circuit reversed the District Court's dismissal for lack of jurisdiction. The court held that the plaintiffs pled facts sufficient to state a cause of action under the ATS for a violation of international law prohibiting medical experimentation on human subjects without their consent. Pfizer's petition for review of the Second Circuit's ruling by the United States Supreme Court is currently pending.

- *In re Comverse Technology, Inc.*, 866 N.Y.S.2d 10 (App. Div. 1st Dep't 2008). In this derivative case in which Milberg serves as co-lead counsel, plaintiff shareholders sued certain of the company's officers and directors based on allegations of illegal options backdating. The lower court dismissed the plaintiffs' claims, holding that the plaintiffs failed to make a pre-suit demand on the company's board, and that

in any event, the board had already formed a special committee to investigate the misconduct. In this significant opinion reversing the lower court's dismissal, the Appellate Division clarified the standards of demand futility and held that a board of directors loses the protection of the business judgment rule where there is evidence of the directors' self-dealing and poor judgment. The court noted that the mere creation of a special committee did not justify a stay of the action and did not demonstrate that the board took appropriate steps. Rather, "the picture presented in the complaint is that of a special committee taking a tepid rather than a vigorous approach to the misconduct and the resultant harm. Under such circumstances, the board should not be provided with any special protection."

- *South Ferry LP #2 v. Killinger,* 542 F.3d 776 (9th Cir. 2008). The important opinion issued by the Ninth Circuit in this securities fraud class action clarified, in the post-*Tellabs* environment, whether a theory of scienter based on the "core operations" inference satisfies the PSLRA's heightened pleading standard. In siding with the plaintiffs, represented by Milberg, the Ninth Circuit held that "[a]llegations that rely on the core operations inference are among the allegations that may be considered in the complete PSLRA analysis." The court explained that under the "holistic" approach required by *Tellabs,* all allegations must be "read as a whole" in considering whether plaintiffs adequately plead scienter. After remand, the District Court found that the plaintiffs sufficiently alleged scienter under the Ninth Circuit's analysis.

- *In re Gilead Sciences Securities Litigation,* 536 F.3d 1049 (9th Cir. 2008). In this securities fraud class action in which Milberg represents the plaintiffs, the Ninth Circuit reversed the District Court's dismissal of the complaint in this opinion clarifying loss causation pleading requirements. In ruling that the plaintiffs adequately pled loss causation, the Ninth Circuit held that the plaintiffs' complaint identified a "specific economic loss" following the issuance of a specific press release, along with allegations of misrepresentations that were described in "abundant detail." The opinion established that plaintiffs in a securities fraud action adequately plead loss causation where

they provide sufficient detail of their loss causation theory and some assurance that the theory has a basis in fact. Based on this analysis, the dismissal was reversed, and the case was remanded to the District Court for further proceedings.

- In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007), in which Milberg is lead counsel for the class, the United States Supreme Court announced a uniform standard for evaluating the sufficiency of a complaint under the PSLRA. The court held that on a motion to dismiss, a court "must consider the complaint in its entirety," accepting "all factual allegations in the complaint as true," as well as "tak[ing] into account plausible opposing inferences." On remand, the Seventh Circuit concluded that "the plaintiffs have succeeded, with regard to the statements identified in our previous opinion as having been adequately alleged to be false and material, in pleading scienter in conformity with the requirements of the PSLRA. We therefore adhere to our decision to reverse the judgment of the district court dismissing the suit." The unanimous decision was written by Judge Richard A. Posner.

- *Asher v. Baxter International, Inc.,* 377 F.3d 727 (7th Cir. 2004). In reversing and remanding the District Court's dismissal, the Seventh Circuit resolved in plaintiffs' favor an important issue involving the PSLRA's "safe harbor" for forward-looking statements. The court held that whether a cautionary statement is meaningful is an issue of fact, because whether a statement is meaningful or not depends in part on what the defendant knew when the statement was made as well as other issues of fact. Thus, this issue is not appropriately resolved on a motion to dismiss.

- *Gebhardt v. ConAgra Foods, Inc.,* 335 F.3d 824 (8th Cir. 2003). This important decision strongly reaffirmed the principle that whether an undisclosed fact would have been material to investors cannot ordinarily be decided on a motion to dismiss. The Eighth Circuit, stressing that "[t]he question of materiality hinges on the particular circumstances of the company in question," observed that even relatively small errors in financial statements might be material if they concern areas of particular importance to

investors and raise questions about management integrity.

- *In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002). In this opinion, the First Circuit joined the Second Circuit in allowing a complaint to be based on confidential sources. The court also accepted the argument made by plaintiffs, represented by Milberg, that courts should consider the amount of discovery taken place prior to deciding a motion to dismiss, with a lack of discovery resulting in a correspondingly less stringent standard for pleading securities fraud claims with particularity.

- In *Puckett v. Sony Music Entertainment*, No. 108802/98 (N.Y. Sup. Ct. N.Y. Cty. 2002), a class action was certified against Sony Music Entertainment on behalf of a class of recording artists who were parties to standard Sony recording or production agreements entered into during the class period. The complaint alleged that Sony had a policy of treating the value added tax on foreign sales of recordings improperly thereby impermissibly reducing the royalties paid or credited to the class members. Justice DeGrasse of the New York State Supreme Court determined that class certification was appropriate and that Gary Puckett (of Gary Puckett & the Union Gap) and jazz musician and composer Robert Watson were appropriate class representatives to represent the class of artists and producers to whom Sony accounts for foreign record royalties.

- *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000). The Firm was lead counsel in this seminal securities fraud case in which the Second Circuit undertook an extensive analysis of the statutory text and the legislative history of the PSLRA and pre-existing Second Circuit case law. Among other things, the Second Circuit held that the PSLRA's pleading standard for scienter was largely equivalent to the pre-existing Second Circuit standard and vacated the District Court's dismissal which sought to impose a higher standard for pleading scienter under the PSLRA. The Second Circuit also rejected any general requirement that plaintiffs' confidential sources must be disclosed to satisfy the PSLRA's newly-enacted particularity requirements.

- *In re Advanta Corp. Securities Litigation*, 180 F.3d 525 (3d Cir. 1999). Here, the plaintiffs, represented by Milberg, successfully argued that under the PSLRA, scienter is sufficiently pled by making an adequate showing that the defendants acted knowingly or with reckless disregard for the consequences of their actions. The Third Circuit specifically adopted the Second Circuit's scienter pleading standard for pleading fraud under the PSLRA.

- In *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998), the Second Circuit reversed the District Court's ruling, which denied plaintiffs leave to amend to assert a cause of action against defendants for failing to disclose that the defendant Trust was unable to utilize proper "hedging" techniques to insure against risk of loss. In the court's view, taken together and in context, the Trust's representations would have misled a reasonable investor.

- In *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194 (1st Cir. 1996), the First Circuit remanded plaintiffs' action after affirming, in part, Milbergs' position that in association with the filing of a prospectus related to the issuance of securities, a corporate-issuer must disclose intra-quarter, materially adverse changes in its business, if such adverse changes constitute "material changes" the disclosure of which is required pursuant to the Securities Act of 1933.

- *In re Salomon, Inc. Shareholders Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). The Second Circuit affirmed the District Court's holding that derivative federal securities claims against defendants would not be referred to arbitration pursuant to the arbitration provisions of the Rules of the New York Stock Exchange, but would be tried in District Court. Shortly thereafter, the case settled for $40 million.

- *Kamen v. Kemper Financial Services*, 500 U.S. 90 (1991). The Supreme Court upheld the right of a stockholder of a mutual fund to bring a derivative suit without first making a pre-suit demand. Specifically, the Court held that "where a gap in the federal securities laws must be bridged by a rule that bears on the allocation of governing powers within the corporation, federal courts should incorporate state law into federal common law unless the particular state law in question is inconsistent with the policies

underlying the federal statute. . . . Because a futility exception to demand does not impede the regulatory objectives of the [Investment Company Act], a court that is entertaining a derivative action under that statute must apply the demand futility exception as it is defined by the law of the State of incorporation."

- *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir. 1984), *cert. denied*, 469 U.S. 932 (1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for Section 10(b) suits that are favorable to investors.

- *Hasan v. CleveTrust Realty Investors*, 729 F.2d 372 (6th Cir. 1984). The Sixth Circuit very strictly construed, and thus narrowed, the ability of a "special litigation committee" of the board of a public company to terminate a derivative action brought by a shareholder.

- *Fox v. Reich & Tang, Inc.*, 692 F.2d 250 (2d Cir. 1982), *aff'd sub nom, Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984). The court held that a Rule 23.1 demand is not required in a shareholder suit brought pursuant to Section 36(b) of the Investment Company Act.

- *Rifkin v. Crow*, 574 F.2d 256 (5th Cir. 1978). The Fifth Circuit reversed an order granting summary judgment for defendants in a Section 10(b) case, paving the way for future acceptance of the "fraud-on-the-market" rationale in the Fifth Circuit.

- *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). This is the seminal appellate decision on the use of the "fraud-on-the-market" theory of reliance, allowing investors who purchase stock at artificially inflated prices to recover even if they were personally unaware of the false and misleading statements reflected in the stock's price. In so holding, the court noted that class actions are necessary to protect the rights of defrauded purchasers of securities.

- *Bershad v. McDonough*, 300 F. Supp. 1051 (N.D. Ill. 1969), *aff'd*, 428 F.2d 693 (7th Cir. 1970). In this case, the plaintiff, represented by Milberg, obtained summary judgment on a claim for violation of Section 16(b) of the Securities Exchange Act, where the transaction at issue was structured by the defendants to look like a lawful option. The decision has been cited frequently in discussions as to the scope and purpose of Section 16(b).

- *Heit v. Weitzen*, 402 F.2d 909 (2d Cir. 1968). The court held that liability under Section 10(b) of the Securities Exchange Act extends to defendants, such as auditors, who were not in privity with the named plaintiffs or the class represented by the named plaintiffs.

*The Firm's Partners*

**GEORGE A. BAUER III** earned his B.B.A. degree *magna cum laude* in 1976 from Bernard M. Baruch College of the City University of New York, where he majored in accounting. He was awarded the Andrew J. Coppola prize in Law from Baruch College. Mr. Bauer attended New York University School of Law and graduated with a J.D. degree in 1979.

Mr. Bauer's practice concentrates on class action settlements and settlement administration. He has played a lead role in documenting and effectuating many of the largest and most complex securities litigations settlements ever obtained, notably including: the $3.2 billion cash settlement in *In re Tyco International Ltd., Securities Litigation, MDL 02-1335-PB (U.S.D.C., N.H.)*; the $1.14 billion settlement for cash and stock of the *In re Nortel Networks Corp. Securities Litigation* No. 01-1855 (S.D.N.Y.); the $1.027 billion settlement of the *In re NASDAQ Market-Makers Antitrust Litigation*, MDL No. 1023, (S.D.N.Y.); settlements relating to the $2 billion estate of Drexel Burnham Lambert, including *In re Drexel Burnham Lambert Group*, No. 90-6954 (S.D.N.Y.) and the $1.3 billion settlement of the *In re Michael Milken & Associates Securities Litigation*, MDL 924 (S.D.N.Y.); settlements worth over $775 million in *In re Washington Public Power Supply Systems Securities Litigation*, MDL 551 (D. Ariz.); settlements including cash and securities worth over $615 million in *In re Lucent Technologies Inc. Securities Litigation*, No. 00-621 (D. N.J.); the settlement for cash and securities worth over $460 million in *In re Raytheon Securities Litigation, No. 99-12142* (D. Mass.); the $334 million settlement in *In re Rite Aid, Securities Litigation, Master File No. 99-1349* (E.D.PA); the $300 million settlement in *In re Oxford Health Plans Inc., Securities Litigation, MDL No. 1222 (CLB)* (S.D.N.Y.; the $215 million settlement of *In re Sears Roebuck & Co., Securities Litigation, No. 02-7527* (N.D. Ill.); the $200 million settlement in *In re PaineWebber Limited Partnerships Litigation*, No. 94-8547 (S.D.N.Y.); the settlement for cash and securities worth over $137.5 million in *In re Microstrategy Inc. Securities Litigation*, No. 00-473 (E.D. Va, Alexandria Division); the settlements for securities worth over $133.5 million in *In re Computer Associates Class Action Securities Litigation*, No. 98-4839, and *In re Computer Associates 2002 Class Action Securities Litigation*, No. 02-1226 (E.D.N.Y.); and the $110 million settlement in *In re Prudential Securities Inc. Limited Partnerships Securities Litigation*, MDL 1005 (S.D.N.Y.).

Mr. Bauer was admitted as a member of the New York bar in January 1980 and is also admitted to the United States District Court for the Southern and Eastern Districts of New York. Mr. Bauer is admitted to practice before the United States Supreme Court and the United States Courts of Appeals for the Second and Fourth Circuits.

Mr. Bauer is a member of the Firm's Library Committee. He is also a member of the American Bar Association, the New York State Bar Association, the American Association for Justice, and the New York County Lawyers Association.

Mr. Bauer is a member of the Board of the Association for the Help of Retarded Citizens, Inc., a non-profit IRS 501(c)(3) qualified charitable organization, dedicated to the optimization of the prospectus for persons with developmental challenges.

**SANFORD P. DUMAIN** attended Columbia University where he received his B.A. degree in 1978. He graduated *cum laude* from Benjamin N. Cardozo School of Law of Yeshiva University in 1981.

Mr. Dumain represents plaintiffs in cases involving securities fraud, consumer fraud, insurance fraud, and violations of the antitrust laws.

Mr. Dumain was co-lead counsel in the *Tyco Securities Litigation* in which $3.2 billion was recovered for investors. Mr. Dumain also served as lead counsel in the securities class actions against Nortel and

Biovail, which are the highest and third highest recoveries ever in cases involving Canadian companies. The *Nortel* settlement was valued at over $1 billion and *Biovail* settled for over $138 million in cash. Mr. Dumain successfully represented the City of San Jose, California against 13 of the City's broker-dealers and its outside accountants in connection with major losses in unauthorized bond trading.

Mr. Dumain began his career as a law clerk to Judge Warren W. Eginton, United States District Court for the District of Connecticut 1981-1982. During the early years of his practice, he also served as an Adjunct Instructor in Legal Writing and Moot Court at Benjamin N. Cardozo School of Law.

Mr. Dumain has lectured for ALI-ABA concerning accountants' liability and has prosecuted several actions against accounting firms.

Judge Janet C. Hall of the District of Connecticut made the following comment in *In re Fine Host Securities Litigation* (No. 97-2619): "The court also finds that the plaintiff class received excellent counseling, particularly from the Chair of the Plaintiffs' Executive Committee, Attorney Dumain."

Mr. Dumain is admitted to practice in the State of New York, United States District Court for the Southern and Eastern Districts of New York, District of Colorado, and District of Connecticut, and United States Courts of Appeals for the First, Second, Third, Sixth, Seventh, and Eighth Circuits.

Mr. Dumain is the Chair of the Firm's Executive Committee.


**PAUL J. ANDREJKOVICS** graduated from Union College in 1992, Phi Beta Kappa, *magna cum laude*, with a B.A. degree in political science. In 1995, Mr. Andrejkovics received his J.D. degree from Albany Law School.

Mr. Andrejkovics' practice concentrates on class action settlements and settlement administration. He was admitted as a member of the New York bar in 1996 and is admitted to practice before the United States District Court for the Northern, Southern, and Eastern Districts of New York.


**LEE A. WEISS** earned his undergraduate degree from Emory University in 1988 and his J.D. degree, with honors, from The George Washington University in 1991.

Mr. Weiss focused his practice primarily on class actions on behalf of defrauded investors and consumers, as well as complex commercial litigation. His extensive securities fraud litigation experience includes significant settlements for class members in *In re IKON Office Solutions Securities Litigation* (E.D. Pa.) and *In re Computer Associates Securities Litigation* (E.D.N.Y.). Mr. Weiss represented investors in *In re PE Corporation Securities Litigation* (D. Conn.), *In re PMA Capital Corporation Securities Litigation* (E.D. Pa.) and *In re Atlas Air Worldwide Holdings Inc. Securities Litigation* (S.D.N.Y.). Additionally, Mr. Weiss represented purchasers of deferred variable annuities in several fraud class actions in which Milberg was lead counsel, including *Nelson v. Pacific Life Insurance Company* (S.D. Ga.).

Mr. Weiss was a member of the Firm's Hiring and Technology Committees, and served as a mentor to the Firm's associates. In addition to the New York State Bar, Mr. Weiss is admitted to the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Fourth and Eleventh Circuits.


*Associates*

JENNIFER S. CZEISLER graduated from Hofstra University in 1994 with a B.A. degree in psychology. After completing graduate degree work at Hunter School of Social Work (1994-95), she pursued a J.D. degree, which she earned in 1999 from the University of Miami School of Law, where she graduated *cum laude*. Ms. Czeisler was on the editorial board of the *Law Review of Psychology, Public Policy & Law* and earned numerous awards, including the CALI excellence for the Future Award, Dean's Certificate of Achievement Award, and membership in the Phi Delta Phi National Honor Society.

Ms. Czeisler is admitted to practice in the State of New York and is a member of the American Bar Association, where she is committed to her *pro bono* work with the American Bar Association Commission on Legal Problems of the Elderly.

SHANNON HOPKINS earned her B.A. degree from Bryant College in 1995, *cum laude*, and her J.D. degree from Suffolk University Law School in 2003, *magna cum laude*. Ms. Hopkins focuses her practice on class actions on behalf of defrauded investors. Prior to joining Milberg Weiss, she was associated with the Boston office of Berman DeValerio Pease Tabacco Burt & Pucillo, where she focused her practice on securities litigation. Ms. Hopkins is also a Certified Public Accountant and worked for a major public accounting firm before becoming an attorney. During law school, Ms. Hopkins was a member of the *Journal of High Technology* and authored a note entitled, "Cybercrime Convention: A Positive Beginning to a Long Road Ahead," 2 J. *High Tech.* L. 101. Ms. Hopkins also served on the executive board of Phi Delta Phi.

Ms. Hopkins is admitted to practice in the courts of the States of Massachusetts and New York, as well as the United States District for the District of Massachusetts.

JULIE KWON received her B.S. from Cornell University in 2003, and a J.D. from Brooklyn Law School in 2007. During law school, Ms. Kwon fulfilled an externship at MFY Legal Services, Inc., a non-profit legal services provider. Since joining Milberg LLP, she has helped establish the Firm's community service initiative.

Ms. Kwon focuses her practice primarily on securities class action litigation on behalf of defrauded individual and institutional investors.

She is admitted to the bars of New York and New Jersey, and is admitted to practice in the United States District Court of New Jersey. She is a member of the New York State Bar Association, New York County's Lawyers Association, and Asian American Bar Association of New York.

JEAN LEE graduated from New York University with a B.A. degree in Politics and Psychology and a M.S.W. in Social Work. Ms. Lee received her J.D. degree from Rutgers School of Law. Ms. Lee focuses her practice in the area of securities class action and false claims litigation. Prior to joining Milberg, Ms. Lee worked as an associate at a New York law firm concentrating in the area of securities fraud and antitrust litigation. Prior to private practice, Ms. Lee was the law clerk to the Honorable John J. Hughes, United States Magistrate Judge, in the District of New Jersey.

During law school, Ms. Lee was a Senior Editor of the Rutgers Law Record. She is currently the Co-Chair of the Diversity Subcommittee of the Litigation Section of the American Bar Association, the Co-Chair of the Women's Committee of the Asian American Bar Association of New York, and a member of the Asian American Bar Association's Board of Directors. She is also a member of the New York State Bar Association, the International Association of Korean Lawyers, and the Firm's Diversity Committee.

**CARLOS F. RAMIREZ** earned his B.S. degree in legal studies *cum laude* from John Jay College of Criminal Justice in 1994.  He earned his J.D. degree from Fordham University School of Law in 1997, where he was an articles and notes editor of the *Fordham Urban Law Journal* and the recipient of the Department of Justice Civil Rights Fellowship.  Mr. Ramirez is the author of "Administrative License Suspensions, Criminal Prosecution and the Double Jeopardy Clause," 23 *FORDHAM URB. L.J.* 923 (1996).  Upon graduation from law school, he served as an assistant district attorney in the Trial Division of the Manhattan District Attorney's Office for three years.

Mr. Ramirez was admitted to the bar of the State of New York in 1998, and is admitted to practice before the United States District Court for the Southern and Eastern Districts of New York.  He is a member of the Association of the Bar of the City of New York and the New York State Bar Association.

C

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE PE CORPORATION SECURITIES LITIGATION | : Master File No. 3:00-CV-705(CFD) |
| | : |

### AFFIDAVIT OF DAVID A. SLOSSBERG
### IN SUPPORT OF JOINT PETITION FOR ATTORNEYS' FEES AND
### DISBURSEMENTS FILED ON BEHALF OF
### HURWITZ, SAGARIN, SLOSSBERG & KNUFF, LLC

STATE OF CONNECTICUT      )
                               )  ss.: Milford

COUNTY OF NEW HAVEN     )

DAVID A. SLOSSBERG, being first duly sworn, deposes and says:

1.     I am a member of the law firm of Hurwitz, Sagarin, Slossberg & Knuff, LLC. I submit this affidavit in support of my firm's application for an award of attorneys' fees in connection with services rendered in this case, as well as the reimbursement of expenses incurred by my firm in connection with this litigation.

2.     My firm acted as Liaison Counsel for Lead Plaintiffs in this securities class action. The tasks undertaken by my firm can be summarized as follows:

Our firm drafted and filed complaints in the matters of David Berlin v. PE Corporation, et al., Daryl B. Davis v. PE Corporation, et al., Bernard J. Sussman v. PE Corporation, et al., and Edward J. Forstein v. PE Corporation, et al.; drafted and filed motions to reassign; drafted and filed motions for consolidation; reviewed defendants' Motion to Dismiss; reviewed, revised and prepared for filing opposition memoranda to defendants' Motion to Dismiss; prepared for and attended hearing on Motion to Dismiss; reviewed, revised and prepared for filing Lead Plaintiff application; reviewed defendants' response to lead plaintiff application; reviewed, revised and prepared for filing draft reply brief and supplemental submissions

regarding Lead Plaintiff application; reviewed and prepared for service of subpoenas, notices of deposition and document requests; reviewed and prepared for service of document requests relating to class issues; reviewed and prepared for filing Lead Plaintiff opposition and reply memoranda to defendant's Motion for Protective Order; reviewed, revised and prepared for filing Lead Plaintiff opposition to Motion for Summary Judgment, reviewed defendants' Reply Memorandum in Further Support of Motion for Summary Judgment; reviewed, revised and prepared for filing Plaintiff's supplemental Memorandum of Law in Further Support of Opposition to Motion for Summary Judgment; reviewed, revised and prepared for filing Plaintiff's opposition regarding Defendant's Motion to Strike Expert Report; reviewed, revised and prepared for filing Lead Plaintiff Motion for Class Certification and Memoranda in support; reviewed defendants' opposition to class certification; reviewed, revised and prepared for filing reply brief in further support of class certification; prepared for and attended hearing on Motion for Class Certification; reviewed, revised and prepared for filing Motion for Approval of Their Proposed Notice of Pendency of Class Action and Memorandum in Support; reviewed, revised and prepared for filing Plaintiff's reply memorandum in further support of their Motion for Approval of Proposed Notice of Pendency of Class Action; reviewed, revised and prepared for filing Lead Plaintiff application to withdraw and substitute lead plaintiff; reviewed, revised and prepared for filing Motion for Preliminary Approval of Settlement and Memorandum in Support; prepared for and participated in telephonic and in-person status conferences with court on an ongoing basis; and prepared and filed pro hac vice motions.

     3.     The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time, by category, spent by the partners, attorneys and professional support staff of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates. For personnel who are no longer employed by my firm, the lodestar calculation is

based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

4.      The hourly rates for the partners, attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in comparable matters and/or which have been accepted and approved in other securities, consumer, or shareholder litigation.

5.      The total number of hours expended on this litigation by my firm is 316.15 hours. The total lodestar for my firm is $140,061.25, consisting $139,308.75 for attorneys' time and $782.00 for professional support staff time.

6.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.      As detailed in Exhibit 2, my firm has incurred a total of $5,237.44 in un-reimbursed expenses in connection with the prosecution of this litigation.

8.      The expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

3

9.      With respect to the standing of counsel in this case, attached hereto as Exhibit 3 is

a brief biography of my firm and attorneys in my firm who were principally involved in this

litigation.


                                                DAVID A. SLOSSBERG

Sworn to before me this
___ day of June, 2010

_____
     Notary Public

# EXHIBIT 1

*In re PE Corporation Securities Litigation*, Master File No. 3:00-CV-705 (CFD)

HURWITZ, SAGARIN, SLOSSBERG & KNUFF, LLC

TIME REPORT — INCEPTION THROUGH MAY 15, 2010

| Name | A | B | C | D | E | F | G | Total Hrs. | Hourly Rate | Total Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|
| **PARTNERS:** | | | | | | | | | | |
| J. Daniel Sagarin | 6.80 | 34.55 | 14.70 | 4.35 | | 5.90 | 19.90 | 86.20 | $550 | $47,410.00 |
| David A. Slossberg | | 29.50 | .80 | 1.70 | | 12.80 | 20.90 | 65.7 | $525 | $34,492.50 |
| Elias A. Alexiades* | 14.30 | 19.30 | | 4.60 | | 9.80 | | 48 | $375 | $18,000.00 |
| Margaret E. Haering* | 2.0 | 17.85 | 2.50 | 1.0 | | 5.40 | | 28.75 | $375 | $10,781.25 |
| **ATTORNEYS:** | | | | | | | | | | |
| Andrew W. Skolnick | | 1.60 | | | | .70 | 5.70 | 8.0 | $425 | $3,400.00 |
| Brian J. Wheelin | | .60 | | | | | | .60 | $400 | $240.00 |
| Brian C. Fournier* | | 44.70 | 17 | 4.40 | | | 2.50 | 68.60 | $350 | $24,010.00 |
| Bradford M. Buchta* | | 3.0 | | | | | | 3.0 | $325 | $975.00 |
| **PROFESSIONAL SUPPORT STAFF:** | | | | | | | | | | |
| Barbara R. Fuller | | .30 | | | | | | .30 | $85 | $25.50 |
| Laura M. DiMcola* | | .40 | | | | | | .40 | $85 | $34.00 |
| Richard Costantini* | | 6.60 | | | | | | 6.60 | $105 | $693.00 |
| **TOTAL LODESTAR** | 23.10 | 158.40 | 35 | 16.05 | | 34.60 | 49.0 | 316.15 | | $140,061.25 |

CATEGORIES

a. Case Assessment, Pre-Filing Investigation, Initial Complaint, Client Outreach and Retention
b. Briefs, Motions, Pleadings (after initial complaint), Legal Research.
c. Class (Briefing, Discovery, Class Representative/Class Member Contacts)
d. Merits Discovery and Post-Filing Fact Investigation
e. Experts/Consultants
f. Court Appearances & Preparation
g. Mediation & Settlement

*No longer with firm

5

**EXHIBIT 2**

*In re PE Corporation Securities Litigation,* Master File No. 3:00-CV-705 (CFD)

**HURWITZ, SAGARIN, SLOSSBERG & KNUFF, LLC**

**EXPENSE REPORT — Inception through May 15, 2010**

| Categories: | Amount |
|---|---|
| Photocopies/Reproduction | $1,662.00 |
| Telephone | 166.45 |
| Messengers/Express Services | 602.26 |
| Filing/Witness Fees | 1,203.60 |
| Court Reporters/Transcript/Video | 102.60 |
| Lexis/Westlaw/Legal Research | 335.45 |
| Meals, Hotels & Transportation | 997.58 |
| Facsimile Charges | 167.50 |
| **TOTAL EXPENSES:** | **$5,237.44** |

6

**EXHIBIT 3**

**FIRM RESUME OF HURWITZ, SAGARIN, SLOSSBERG & KNUFF, LLC
AND BIOGRAPHIES**

## HURWITZ, SAGARIN, SLOSSBERG & KNUFF, LLC

For more than twenty-five years, Hurwitz, Sagarin, Slossberg & Knuff, LLC has practiced in the area of class actions in both the State and Federal courts, including Connecticut consumer cases.  A list of the firm's current and past class cases is attached hereto as Exhibit A. Hurwitz, Sagarin, Slossberg & Knuff, LLC has served as local/liaison counsel with other firms in numerous cases in the District of Connecticut.  Coordination with other firms in these cases has been efficient and effective resulting in significant benefits to class members.

## EXHIBIT A

Hurwitz, Sagarin, Slossberg & Knuff is currently involved with the following class actions either as liaison or lead counsel:

Artie's Auto Body, et al. v. Hartford Fire Insurance
(X08) CV 03 0196141S
Commercial Consumer Class Action - Business Dispute

In Re Xerox Securities Litigation
3:99cv2374 (AWT)
Securities Fraud Class Action

In Re PE Corporation Securities Litigation
3:00cv705 (CFD)
Securities Fraud Class Action

In Re Publication Paper Antitrust Litigation
3:04md1631 (SRU)
Sherman Antitrust Violations Class Action

Ruggeri v. Boehringer Ingelheim Corp.
3:06cv1985 (JBA)
Fair Labor Laws Class Action

A&R Body Specialty, et al. v. Progressive Casualty Insurance Company, et al.
3:07cv929 (WWE)
Commercial Consumer Class Action - Business Dispute

Kuzinski, et al. v. Schering Plough Corporation
3:07cv233 (JBA)
Fair Labor Laws Class Action

First New York Securities, LLC, et al. v. United Rentals, Inc., et al.
3:08cv00115 (VLB)
Securities Fraud Class Action

In Re Hartford Fin. Svc. Group, Inc. ERISA Litigation
3:08cv1708 (PCD)
ERISA Class Action

Courtney Jarrell v. Abbott Laboratories
(X02) CV 09-4018799S
Fair Labor Laws Class Action

Joseph Chalverus v. Stephen Bershad, et al. (Axsys Technologies)
CV 09-4044848S
Securities Fraud Class Action

Jeffrey Austen, et al. v. Catterton Partners, V, LP, et al.
3:09cv1257 (MRK)
WARN Act Class Action

<u>Former Class Cases</u>

In Re Savin Corporation Securities Litigation, B85-617 (RCZ)

Iomega Litigation, B86-257 (JAC)

In Re Ames Department Stores, Inc. - Debenture Litigation, H87-697 (AHN)

In Re Prudential Bache Securities Litigation, B88-100-1 (JAC)

Noble v. Baum and Citytrust Bancorp, CV 89-0265920S

Cohn v. Lone Star Industries, Inc., 2:89cv 617 (JAC)

Hwang v. Smith Corona Corporation, 2:89cv 450(TFGD)

Gateway Financial Corporation Securities Litigation, 2:90cv164 (TFGD)

Edward Prostic, et al. v. Xerox Corporation, B90-113 (EBB)

Leonard I. Schreiber v. Society for Savings Bancorp, H90-48 (DJS)

Gedalia Steinfink, et al v. Pitney Bowes, Inc., 5:90cv349(JAC)

In Re Northeast Bancorp. Securities Litigation, 3:90cv024 (RNC)

Maureen Rose v. Joan Cooney, et al, 5:92cv208 (TFGD)

In Re United States Surgical Corporation Securities Litigation, 3:92cv374 (AHN)

Germano v. Cognitronics, 3:93cv539 (DFM)

William G. Flanigan v. General Electric, et al. 3:93cv516 (JBA)

Hosea v. Managers Funds, 3:94cv1650 (JBA)

Ellen Petrilli v. William Gow, et al and USGI Holdings, Inc., 3:95cv01657 (PCD)

In Re Caldor's Securities Litigation, 3:95cv2564 (PCD)

Freedman v. Value Health, 3:95cv2038 (JBA)

Bruce Payne v. Micro Warehouse, et al, 3:96cv1920 (DJS)

In Re Fine Host Securities Litigation, 3:97cv2619 (JCH)

David Leventhal v. Leonard Tow, et al ("Citizens Utilities Company, 3:97cv1642 (DJS)

In Re Aetna Securities Litigation, 3:97 CV2492 (AHN)

In Re EIS International Inc. Securities Litigation, 3:97 CV01194 (RNC)

In Re Oxford Health Plans, Inc. Securities Litigation, MDL Docket No. 122 (CLB)

In Re Bridgestone/Firestone, Inc., ATX, ATX II and Wilderness Tires
Products Liability Litigation, Master File No. IP-00-9373-C-B/S
MDL No. 1373

Information Management Associates, Inc. Securities Litigation, 3:99cv2302 (PCD)

Carlson, et al v. Xerox Corporation, et al, 3:00cv1621 (AWT)

In Re Mercator Software, Inc. Securities Litigation, 3:00cv01610 (GLG)

In Re: Priceline.com Securities Litigation, 3:00cv1884 (AVC)

In Re SBC Communications Antitrust Litigation, 3:02 CV 1801 (DJS)

Josephine Agrella, et al. v. Ford Motor Company, (X01) CV 02 0184712S

In Re Allianz Dresdner Mutual Funds Fee Litigation, 3:04cv00280 (CFD)

In Re Star Gas Securities Litigation, 3:04 CV 1766 (JBA)

**J. Daniel Sagarin** is a high honors graduate of Lehigh University, class of 1962 and Yale Law School, class of 1965. Mr. Sagarin clerked for U. S. District Judge Robert C. Zampano.  After practicing in Boston, he served as an Assistant United States Attorney between 1967 and 1970. During that time he was responsible for many major federal prosecutions and secured convictions of major crime figures in Connecticut and federal tax violators. He has served as an adjunct professor of trial practice at Yale Law School.  He is a Fellow of the American College of Trial Lawyers, a national organization, and recently served as Connecticut Chair of the College.  He has been included in both the business litigation and criminal law categories by the Best Lawyers in America.  He has lectured for the American Bar Association, as well as the American and Connecticut Trial Lawyers Associations and Northeastern Association of Forensic Scientists.

Mr. Sagarin's practice includes class action work in antitrust, securities fraud, and ERISA matters.  In addition, he has litigated personal injury, professional malpractice cases, and federal and state criminal defense.  Mr. Sagarin serves as a Special Master in the United States District Court.  He is a member of the American Bar Association and the Connecticut Bar Association Litigation sections, as well as the American and Connecticut Trial Lawyers Associations.

Mr. Sagarin is AV Peer Review Rated, Martindale-Hubbell's highest peer recognition for ethical standards and legal ability.  Mr. Sagarin was selected by the The Connecticut Bar Foundation as a James W. Cooper Charter Life Fellow (1995).  Selection as a Cooper Fellow requires demonstrated superior legal ability and devotion to the welfare of the community, state, nation and the advancement of the legal profession.

Mr. Sagarin was selected to the *Connecticut Super Lawyers* list as published in the February, 2006, 2007, 2008 and 2009 issues of *Connecticut Magazine* and *Connecticut Super Lawyers Magazine* and November, 2007 and 2008 issues of the *New England Super Lawyers Magazine*, in the area of General Litigation; and in the 2008 Edition of *The New York Area's Best Lawyers Magazine* in the areas of White-Collar Criminal and Non-White-Collar Criminal Defense.

Email Me

 AV™  Super Lawyers

**David A. Slossberg** is a graduate of Columbia University class of 1985. He earned his law degree in 1988 from New York University School of Law. Mr. Slossberg practices in the areas of complex business litigation, class actions and employment law. He litigates unfair trade practices, Uniform Commercial Code, antitrust, commercial contract disputes, land use and reinsurance matters in the state and federal courts. He represents clients seeking to recover losses arising from fraud and embezzlement, and to resolve disputes involving antique artifacts and rare automobiles. He pursues class action litigation on behalf of consumers and small businesses victimized by unlawful business practices, misleading advertising, and defective products. He has tried jury cases to verdict in fraud, negligence and medical malpractice actions. Mr. Slossberg appears before the courts and the Commission On Human Rights & Opportunities on behalf of the firm's employment clients, litigating sexual harassment, racial, gender, age, and disability discrimination claims. He advises business clients on employee policy and compliance issues in the workplace. He represents business executives and employers in litigation involving wrongful termination, non-compete, trade secrets, whistleblower, and severance issues.

Mr. Slossberg is admitted to the bars of Connecticut, New York and Massachusetts. He is a member of the Federal District Courts for the District of Connecticut, Southern, Eastern and Northern Districts Of New York, Second Circuit Court Of Appeals, and United States Supreme Court. He serves as Chairman of the Connecticut Section of the Federal Bar Council, on the Board of Directors of the Federal Bar Foundation, on the Board of Directors of the Milford Chamber of Commerce, and on the Board of the Devon Rotary Foundation. Mr. Slossberg recently served on the Connecticut Class Action Rules Committee, and co-authored "Class Actions In Connecticut Are Alive And Well," published in the *Fall 2007 CTLA Forum* (Vol 25/No. 2). Mr. Slossberg has served as a special master in the Connecticut Federal Court and as past President of the Devon Rotary Club.

Mr. Slossberg is AV Peer Review Rated, Martindale-Hubbell's highest peer recognition for ethical standards and legal ability. Mr. Slossberg was selected to the Connecticut Super Lawyers list as published in the February, 2007, 2008 and 2009 issues of *Connecticut Magazine* and *Connecticut Super Lawyers Magazine* and November, 2007 and 2008 issues of the *New England Super Lawyers Magazine*, in the area of Business Litigation.

Email Me



**Andrew W. Skolnick** received his undergraduate degree from Trinity College in 1989 and obtained his law degree from Syracuse University College of Law in 1992. Mr. Skolnick's practice includes all aspects of federal and state civil litigation in matters involving professional malpractice, commercial litigation, property loss and damage, insurance coverage disputes, personal injury, catastrophic loss, product liability, probate disputes, and consumer and workplace related class actions. Mr. Skolnick also represents clients before the workers' compensation commission and other administrative agencies.

Prior to joining Hurwitz, Sagarin, Slossberg & Knuff, Mr. Skolnick represented litigants in civil cases for more than thirteen years. Mr. Skolnick has represented clients involved in a wide range of complex commercial litigation, including victims of employee theft, wage and hour disputes, international trade and significant loss of assets. He has tried numerous jury cases to verdict on behalf of both individuals and businesses.

Mr. Skolnick is admitted to practice in the Connecticut state courts as well as the Federal District Court for the District of Connecticut. His professional affiliations include long standing memberships and participation in the Connecticut Bar Association, New Haven County Bar Association, Milford Bar Association, Connecticut Trial Lawyers Association, and American Bar Association. Mr. Skolnick is active in a number of community and charitable organizations and serves on the boards of the Woodbridge Connecticut Rotary Club and the Woodbridge Fathers' Baseball League.

Email Me

Brian J. Wheelin received his Bachelor of Arts Degree in 2001 from Stonehill College. He graduated, *magna cum laude*, from Quinnipiac University School of Law in 2004. While in law school, Mr. Wheelin served as Lead Articles Editor for the Quinnipiac Law Review and coordinated the Volunteer Income Tax Assistance Program, which provides tax assistance to low income families throughout Connecticut. Mr. Wheelin also received several law school awards, including the Anna Provorny Scholarship Award, awarded to the student who best exemplifies academic excellence and dedication to their community. In addition, Mr. Wheelin completed internships with the United States District Court in New York and the Department of Justice in Washington, D.C.

Prior to joining Hurwitz, Sagarin, Slossberg & Knuff, Mr. Wheelin counseled and represented management for a labor and employment firm in Stamford, Connecticut. Mr. Wheelin practices in the areas of complex commercial and probate litigation and consumer class actions.

Mr. Wheelin is admitted to the bars of Connecticut and New York and the Federal District Court for the District of Connecticut. Mr. Wheelin's professional affiliations include membership in the New Haven County Bar Association, the American Bar Association, and the Young Lawyers Section of the Connecticut Bar Association. Mr. Wheelin is also actively involved in the Make a Wish Foundation of Connecticut.

Email Me